**Kelly Simon**, OSB No. 154213
ksimon@aclu-or.org
**Eri Andriola**, OSB No. 246500
eandriola@aclu-or.org
ACLU FOUNDATION OF OREGON
PO Box 40585
Portland, OR 97240

**J. Ashlee Albies**, OSB No. 051846
ashlee@albiesstark.com
ALBIES & STARK LLC
1500 SW First Ave., Ste. 1000
Portland OR 97201
Facsimile: 503.427.9292

**Jane L Moisan**, OSB No. 181864
jane@pdxplp.com
PEOPLE'S LAW PROJECT
1500 SW First Ave., Ste. 1000
Portland OR 97201
Facsimile: 503.558.2025

**Matthew Borden\***
borden@braunhagey.com
**Hadley Rood\***
hrood@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

**Marissa R. Benavides\***
Benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Ave., 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403
Facsimile: (646) 403-4089

\**Pro hac vice* application pending

   *Of Counsel for Plaintiffs*


PAGE 1 – DECLARATION OF KELLY SIMON

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(PORTLAND DIVISION)

| | |
|---|---|
| JACK DICKINSON (a.k.a. "the Portland Chicken"), LAURIE ECKMAN, RICHARD ECKMAN, MASON LAKE, HUGO RIOS, *on behalf of themselves and those similarly situated*<br><br>          Plaintiffs,<br><br>     v.<br><br>DONALD J. TRUMP, President of the United States, *in his official capacity*; KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS), *in her official capacity*; U.S. Department of Homeland Security<br><br>          Defendants. | Civil No. 3:25-cv-02170-SI<br><br>**DECLARATION OF KELLY SIMON** |

I, Kelly Simon, hereby declare under penalty of perjury as follows:

1.      I am over the age of 18 and current counsel in this case.

2.      Attached hereto as Exhibit A is a true and correct copy of an email thread between counsel for parties documenting communications that took place between January 30, 2026, and February 1, 2026.

3.      Attached hereto as Exhibit B is a true and correct copy of Document 11-1, Declaration of Gregory K. Bovino, as filed on June 19, 2025, in *L.A. Press Club et al v. Noem et*

PAGE 2 – DECLARATION OF KELLY SIMON

*al*, Case No. 2:25-cv-05563 (C.D. Cal.).

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**

DATED:  February 1, 2026.

*s/ Kelly Simon*
Kelly Simon, OSB No. 051846
Of Attorneys for Plaintiffs

PAGE 3 – DECLARATION OF KELLY SIMON

# SIMON EXHIBIT A

 Outlook

## RE: Conferral: Dickinson et al. v. Trump et al., 3:25-cv-01270

**From** Warden, Andrew (CIV) <Andrew.Warden@usdoj.gov>

**Date** Sun 2/1/2026 6:17 PM

**To** Matt Borden <borden@braunhagey.com>; Kelly Simon <KSimon@aclu-or.org>; Bailey, John (CIV) <John.Bailey@usdoj.gov>; Rosenberg, Brad (CIV) <Brad.Rosenberg@usdoj.gov>

**Cc** Eri Andriola <EAndriola@aclu-or.org>; ashlee@albiesstark.com <ashlee@albiesstark.com>; jane@pdxplp.com <jane@pdxplp.com>; benavides <benavides@braunhagey.com>; Hadley Rood <hrood@braunhagey.com>; Kimberly Hutchison <khutchison@singletonschreiber.com>

**This Message Is From an External Sender**
This message came from outside your organization.

Matt:

I think the gulf is fairly wide at this point and I don't expect we'll be able to reach an agreement this evening. I'm still in the process of conferring with folks at DHS and I'll let you know anything changes on our end, but I don't anticipate movement from our original proposal.

As for discovery, we started looking into your questions over the weekend. I anticipate we'll be in position to discuss on Tuesday after conferring with our clients tomorrow. We're also reviewing your proposed protective order and since Judge Simon gave us until Friday to submit proposals, we'll aim to send our suggestions in the next day or so.

Thanks,
Andrew

Andrew I. Warden
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch
Tel: 202-616-5084

**From:** Matt Borden <borden@braunhagey.com>
**Sent:** Sunday, February 1, 2026 4:53 PM
**To:** Warden, Andrew (CIV) <Andrew.Warden@usdoj.gov>; KSimon <KSimon@aclu-or.org>; Bailey, John (CIV) <John.Bailey@usdoj.gov>; Rosenberg, Brad (CIV) <Brad.Rosenberg@usdoj.gov>
**Cc:** EAndriola <EAndriola@aclu-or.org>; ashlee@albiesstark.com; jane@pdxplp.com; Marissa Benavides <Benavides@braunhagey.com>; Hadley Rood <hrood@braunhagey.com>; Kimberly Hutchison <khutchison@singletonschreiber.com>
**Subject:** [EXTERNAL] RE: Conferral: Dickinson et al. v. Trump et al., 3:25-cv-01270

Andrew,

Thanks for the note. We have reviewed Defendants' stipulation. A few points in response:

1. We are concerned that the policy you state DHS is following is inconsistent with its own rules. At minimum, it is inconsistent with Ninth Circuit law, which provides "failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force. We have so held even when the extent of the resistance was substantially greater than Nelson and his friends' simple failure to disperse." *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012). So for that reason, we think the second bullet point should be changed to reflect that federal agents will not use force in the manners stated in our TRO brief.

2. Defendants' proposal eliminates other terms that protect non-violent protesters that were in our TRO brief, in the injunction issued by Judge Vera in LA Press Club, and not stayed by the Ninth Circuit, including the prohibition against firing less lethals into crowds if that would endanger people in the crowd, except as to address an imminent threat.

3. The third bullet is a bit hard to understand and seems to allow firing less lethals at people's heads or torsos even if deadly force is not required. I would just use the language from LA Press Club.

4. The last bullet should say that the officers do not violate the TRO if Defendants otherwise comply with all the terms of the TRO and someone incidentally gets subjected to force. We were not offering to waive liability; it was intended to create a safe harbor from contempt for good faith behavior.

We would be happy to try to workshop these some more, but given how far apart we are and how little time we have, we are also willing to take the dispute to Judge Simon, if you believe there's no more runway today. Please respond as soon as possible with your availability, if you think a call might be fruitful.

We should also alert you, to the extent that you are not aware, that there were more incidents yesterday. We intend to alert the Court ahead of tomorrow's conference and will provide you with details as soon as we have them compiled.

Finally, we want to circle back on our questions from yesterday.  Items # 3 and 4 are facts that Defendants should have at their fingertips, as is the identification of the officer in the photo. We are raising these issues now because the schedule that is currently in place, largely at Defendants' request, will leave us little time to take important discovery for both the preliminary injunction and our motion for class certification. We are trying to boil down the materials attached to our motion for expedited discovery to make it fast and workable. But we need your cooperation with things like answering our questions below. We only got very truncated discovery in Index Newspapers, and I would like to avoid that happening this time around.

Please let me know your thoughts.

Regards,

Matt

Matthew Borden
**BRAUNHAGEY & BORDEN** LLP
Office:  (415) 599-0212

---

**From:** Warden, Andrew (CIV) <Andrew.Warden@usdoj.gov>
**Sent:** Sunday, February 1, 2026 7:01 AM
**To:** Matt Borden <borden@braunhagey.com>; KSimon <KSimon@aclu-or.org>; Bailey, John (CIV) <John.Bailey@usdoj.gov>; Rosenberg, Brad (CIV) <Brad.Rosenberg@usdoj.gov>
**Cc:** EAndriola <EAndriola@aclu-or.org>; ashlee@albiesstark.com; jane@pdxplp.com; Marissa Benavides <Benavides@braunhagey.com>; Hadley Rood <hrood@braunhagey.com>; Kimberly Hutchison

<khutchison@singletonschreiber.com>
**Subject:** RE: Conferral: Dickinson et al. v. Trump et al., 3:25-cv-01270


**\*\*\* EXTERNAL MESSAGE \*\*\***

Matt & Kelly:

DHS is willing to agree to the stipulated terms below.   The proposed language more closely tracks the language of DHS's current policies and uses terminology more familiar to the officers on the ground.   Our consent to this stipulation would be without prejudice to opposing the PI and should not be understood as an admission that a stipulation is necessary or legally required.  We have endeavored in good faith to offer a proposal in response to Judge Simon's order that we think would eliminate the need for TRO litigation and place the parties in a reasonable temporary position while we litigate the expedited PI.

Thanks,
Andrew

## DHS's Proposal:

- When feasible, prior to the application of force, a CBP, ICE or FPS officer/agent must attempt to issue a verbal warning to comply with the officer/agent's instructions.  If an officer/agent issues such a warning, the officer/agent should afford the individual a reasonable opportunity to voluntarily comply before applying force.

- DHS officers/agents may deploy less-lethal munitions, when objectively reasonable and necessary, as defined by DHS, CBP, ICE, and/or FPS policy, and after providing verbal warning(s), if feasible, to carry out their law enforcement duties, including but not limited to trespassing, refusal to move, or refusal to obey an otherwise lawful dispersal order.  The less-lethal munitions/devices will not be deliberately deployed/targeted for kinetic impact on specific individuals unless there exists an assaultive threat from that individual to law enforcement officers/agents or others.

- DHS will deploy less-lethal munitions/devices, as defined in DHS , CBP, ICE and/or FPS policy, appropriately, and will not deliberately deploy at the head, neck or torso of any person, with any device in a manner likely to cause significant injury or death, unless the officer/agent would be legally justified in using deadly force against that individual;

- Nothing in this Order prevents DHS from making an arrest if they have probable cause to believe that a crime has been committed;

- Nothing in this Order prevents DHS from using objectively reasonable force, including less lethal munitions, on individuals who pose an imminent threat of physical harm; and

- The Defendants shall not be liable for any incidental exposure of individuals to crowd-control devices.


Andrew I. Warden
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch
Tel: 202-616-5084

**From:** Warden, Andrew (CIV)
**Sent:** Saturday, January 31, 2026 2:22 PM
**To:** Matt Borden <borden@braunhagey.com>; KSimon <KSimon@aclu-or.org>; Bailey, John (CIV) <John.Bailey@usdoj.gov>; Rosenberg, Brad (CIV) <Brad.Rosenberg@usdoj.gov>
**Cc:** EAndriola <EAndriola@aclu-or.org>; ashlee@albiesstark.com; jane@pdxplp.com; Marissa Benavides <Benavides@braunhagey.com>; Hadley Rood <hrood@braunhagey.com>; Kimberly Hutchison <khutchison@singletonschreiber.com>
**Subject:** RE: Conferral: Dickinson et al. v. Trump et al., 3:25-cv-01270

Matt:

I'm adding Brad Rosenberg from my office to the email chain.  We're focused now on the proposed stipulation and will respond as soon as we are able.  As for the discovery questions below, we'll confer with the folks at DHS and circle back after the weekend.

Thanks,
Andrew

Andrew I. Warden
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch
Tel: 202-616-5084

**From:** Matt Borden <borden@braunhagey.com>
**Sent:** Saturday, January 31, 2026 2:12 PM
**To:** KSimon <KSimon@aclu-or.org>; Warden, Andrew (CIV) <Andrew.Warden@usdoj.gov>; Bailey, John (CIV) <John.Bailey@usdoj.gov>
**Cc:** EAndriola <EAndriola@aclu-or.org>; ashlee@albiesstark.com; jane@pdxplp.com; Marissa Benavides <Benavides@braunhagey.com>; Hadley Rood <hrood@braunhagey.com>; Kimberly Hutchison <khutchison@singletonschreiber.com>
**Subject:** [EXTERNAL] RE: Conferral: Dickinson et al. v. Trump et al., 3:25-cv-01270

Hi Andrew, sorry for intruding on your weekend, but I wanted to add a couple discussion points for tomorrow.

1. In terms of a stipulated TRO, we are open to linguistic edits and counterproposals to the relief listed in our TRO.
2. As I mentioned at the status conference, we are also wondering if Defendants would stipulate to injunctive terms that track the relief against DHS that Judge Simon issued in Index Newspapers. I think that agreeing to that should be relatively uncontroversial and obviously safe.
3. We have some initial questions for purposes of discovery, which I hope will help streamline things and decrease the burden on Defendants:
   a. Who is or are the commander officer(s) responsible for policing any protest activity at the ICE Building in Portland
   b. Who are the immediate superiors of the people above
   c. Do defendants have any body worn camera or building footage from 6/1/25 to present. If so, what is the nature of this evidence
   d. Have there been any briefings or trainings about how to manage/police protests at the Portland ICE Building

e. Have their been any investigations into uses of force at protest events at the ICE Building in Portland since 6/1/25

4. We would like to take the deposition of the person depicted in the photo below, which was taken on MLK Day, next week and arrange scheduling with you



Also, by way of this email, I'm introducing you to our co-counsel Kim Hutchinson.

I look forward to working together again and proceeding cooperatively with you and your team on our compressed schedule.

Regards,

Matt

Matthew Borden
**BRAUNHAGEY & BORDEN** LLP
Office:  (415) 599-0212

---

**From:** Kelly Simon <KSimon@aclu-or.org>
**Sent:** Friday, January 30, 2026 12:31 PM
**To:** Warden, Andrew (CIV) <Andrew.Warden@usdoj.gov>; Bailey, John (CIV) <John.Bailey@usdoj.gov>
**Cc:** EAndriola <EAndriola@aclu-or.org>; ashlee@albiesstark.com; jane@pdxplp.com; Matt Borden <borden@braunhagey.com>; Marissa Benavides <benavides@braunhagey.com>; Hadley Rood <hrood@braunhagey.com>
**Subject:** Re: Conferral: Dickinson et al. v. Trump et al., 3:25-cv-01270

*** EXTERNAL MESSAGE ***

Thanks, Andrew.


**Kelly Simon**
Pronouns: she/her

**Legal Director**
American Civil Liberties Union of Oregon
PO Box 40585, Portland, OR 97240

971-322-0869 | ksimon@aclu-or.org

aclu-or.org ✖ f



***This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.***

---

**From:** Warden, Andrew (CIV) <Andrew.Warden@usdoj.gov>
**Sent:** Friday, January 30, 2026 12:23 PM
**To:** Kelly Simon <KSimon@aclu-or.org>; Bailey, John (CIV) <John.Bailey@usdoj.gov>
**Cc:** Eri Andriola <EAndriola@aclu-or.org>; J. Ashlee Albies <ashlee@albiesstark.com>; Jane Moisan <jane@pdxplp.com>; Matt Borden <borden@braunhagey.com>; benavides <benavides@braunhagey.com>; Hadley Rood <hrood@braunhagey.com>
**Subject:** RE: Conferral: Dickinson et al. v. Trump et al., 3:25-cv-01270

---

Kelly:

Thanks for sending this stipulation proposal. We will need to confer with various folks at the agencies and I expect to have a response for you on Saturday. We are also working on preparing a draft protective order and we'll send that to you for review by Sunday.

Thanks,
Andrew

Andrew I. Warden
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch
Tel: 202-616-5084

---

**From:** Kelly Simon <KSimon@aclu-or.org>
**Sent:** Friday, January 30, 2026 2:22 PM
**To:** Warden, Andrew (CIV) <Andrew.Warden@usdoj.gov>; Bailey, John (CIV) <John.Bailey@usdoj.gov>

**Cc:** Eri Andriola <EAndriola@aclu-or.org>; J. Ashlee Albies <ashlee@albiesstark.com>; Jane Moisan <jane@pdxplp.com>; Matt Borden <borden@braunhagey.com>; benavides <benavides@braunhagey.com>; Hadley Rood <hrood@braunhagey.com>
**Subject:** [EXTERNAL] Conferral: Dickinson et al. v. Trump et al., 3:25-cv-01270

Hi Andrew and John,

As the court instructed in this morning's hearing, the parties are to confer about whether there is a stipulated agreement that we could reach that would obviate the need for a TRO while we litigate a motion for preliminary injunction. Plaintiffs will stress, as they did in today's hearing, that we are deeply concerned about DHS officers using unlawful force in dangerous, and potentially lethal ways, against our clients and putative class members at the protests that we anticipate will happen at the Portland ICE Building this weekend. Given the urgency, we would like to try to reach a possible agreement today.

From Plaintiffs' perspective, it should not be controversial for DHS to agree to the following:

An order limited to Defendant DHS's conduct at or around the Portland ICE Building that:

- Prohibits DHS from directing or using chemical or projectile munitions—including but not limited to KIPs, pepper ball or paintball guns, pepper or oleoresin capsicum spray, tear gas or other chemical irritants, soft nose rounds, 40 or 37mm launchers, less lethal shotguns, and flashbang, Stinger, or rubber ball grenades—unless the target poses an imminent threat of physical harm to law enforcement or others present;
- Prohibits Defendant DHS from firing munitions or deploying weapons (including those described above) at the head, neck or torso of any person, unless the officer would be legally justified in using deadly force against that person;
- Targeting an individual with a less lethal munition if doing so would endanger individuals who do not pose an imminent threat to law enforcement or others. For purposes of illustration, DHS may not use chemical or projectile munitions in response to trespassing, refusal to move, or refusal to obey a dispersal order; and
- Nothing in this Order prevents DHS from making an arrest if they have probable cause to believe that a crime has been committed.
- Nothing in this Order prevents DHS from using proportional force, including less lethal weapons, on individuals who pose an imminent threat of physical harm

Mr. Warden, I know you indicated you thought the term "non-trivial amounts of force" was vague, but you will note that the language in the order we lay out in the conclusion of our motion (and above) does not use this term. We would also emphasize that both in 2020 and recently, DHS has been subject to orders consistent with and even broader than the language above, and that such orders have been workable and safe. *See Index Newspapers, LA Press Club, etc.* This is, of course, also supported by the expert statements that Mr. Kerlikowske has made both in this case and in *Index Newspapers*, which Judge Simon found persuasive in 2020.

Please let us know as expeditiously as possible if this is agreeable. We look forward to receiving a response today.

Thank you,

**Kelly Simon**
Pronouns: she/her

**Legal Director**
American Civil Liberties Union of Oregon
PO Box 40585, Portland, OR 97240
971-322-0869 | ksimon@aclu-or.org
aclu-or.org



***This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.***

# SIMON EXHIBIT B

## DECLARATION OF GREGORY K. BOVINO

I, Gregory K. Bovino, declare and affirm as follows:

1.     I am the Chief Patrol Agent, El Centro Sector. In this role, I drive Border Patrol Operations for the El Centro Sector, comprised of 70 miles of land border, three Border Patrol Stations, and two permanent traffic checkpoints, overseeing 1,100 employees, an 850-vehicle fleet, and a budget of $10.2 million. I have been in this position since 2020.

2.     I entered on duty with the U.S. Border Patrol on November 17, 1996, with my first duty assignment in the El Centro Sector. I have served as the Chief Patrol Agent of the New Orleans Sector, directing operations spanning 694 miles of coastal border across seven states. I also served as Associate Chief of the U.S. Border Patrol Strategic Planning and Analysis Directorate & Chief of Staff Division.

3.     I have a Bachelor's degree, Magna Cum Laude, in Natural Resources Management and Forestry from Western Carolina University. I also hold two master's degrees: one in National Security Strategy from the National War College, and one in Public Administration from Appalachian State University.

4.     I served as the Lead Field Coordinator in Los Angeles beginning on June 8, 2025.

5.     On June 6, 2025, in support of U.S. Immigration and Customs Enforcement, CBP officers and agents were sent to Los Angeles, California. Since their arrival, CBP officers and agents reported repeated assaults against them, and responded with appropriate use of force, and arrests. There have been injuries to officers and agents during CBP operations in the Los Angeles area. The injuries arise from launched or thrown projectiles and even alleged purposeful vehicle accidents directed at CBP personnel.

6.     I did not witness, nor am I aware of, any CBP employee knowingly targeting journalists, legal observers, or peaceful protestors with less lethal munitions and/or crowd control devices.

1

7.      While protecting federal officers and property in Paramount, California on Saturday June 7, 2025, the violent crowd continually assaulted agents and officers with prohibited, high explosive fireworks, as well as numerous thrown projectiles, such as rocks, concrete, and frozen water bottles. Despite repeated verbal warnings and directions to not attack federal officers, rioters continued to attack CBP officers and agents, who were forced to protect themselves.

8.      Beginning June 9th, 2025, protestors in downtown Los Angeles engaged in violence towards officers and agents, both federal and state. Los Angeles Police Department, and California Highway Patrol officers deployed to a protest in the vicinity of the Roybal Federal Complex. The U.S. Army National Guard was deployed for additional support to protect federal facilities throughout the Los Angeles area.

9.      The presence of Department of Defense (DoD) personnel, including the California National Guard assisted in de-escalation and allowed CBP officers and agents to concentrate on joint federal law enforcement operations throughout the Los Angeles area. This included operations in support of ICE-ERO, and the Drug Enforcement Administration.

10.      The CBP Use of Force Policy is directly derived from constitutional law, and federal statutes and regulations. Pursuant to the CBP Use of Force Policy, officer and agents may use objectively reasonable force only when it is necessary to carry out their law enforcement duties. The "reasonableness" of a particular use of force is based on the totality of circumstances known by the officer or agent at the time of the use of force, and weighs the actions of the officer or agent against the rights of the subject, considering the circumstances surrounding the event. Reasonableness will be judged from the perspective of a reasonable law enforcement officer or agent. A use of force is "necessary" when it is reasonably required to carry out the authorized officer's or agent's law enforcement duties in each situation, considering the totality of facts and circumstances of the situation.

2

11.   CBP policy addresses the deployment of less lethal devices and outlines the circumstances in which they may be utilized. Again, the use of less-lethal force must be both objectively reasonable and necessary to carry out the officer or agent's law enforcement duties. Crowd control devices and less lethal munitions are only utilized after events have become unlawful, and the appropriate warnings and time have been satisfied. Under CBP policy, chemical irritants may be utilized as a compliance tool on a subject offering, at a minimum, active resistance. Active resistance is a type of resistance where a subject physically opposes an officer or agent's control efforts. Kinetic impact can be used on a subject in response to assaultive resistance. Assaultive resistance under CBP policy is a physically manifested attempt or threat to inflict injury on CBP personnel, whether successful or not, which causes a reasonable apprehension of imminent bodily harm.

12.   No CBP officer or agent is allowed to carry a less-lethal device until they have successfully completed CBP-approved initial course of instruction for such device and have been certified in its use.

13.   Additionally, officers and agents receive training, at a minimum, four times per year on the legal application of force consistent with CBP Policy Guidance. All CBP employees have a duty to intervene in and/or report improper use of force by law enforcement personnel.

14.   Any use of force incident involving CBP personnel may be reviewed or investigated both criminally, to ensure compliance with applicable law, as well as administratively, to ensure compliance with DHS and CBP policy. Any use of force incident involving CBP employees may be subject to an administrative review by the Office of Professional Responsibility (OPR) or local CBP management. By policy, each use of force event is reported to OPR, and OPR is currently physically present here at our Incident Command Post to ensure integrity and accountability of our use of force events.

3

15. CBP officers and agents are already required to, when feasible, and prior to the application of force, identify themselves and issue a verbal warning to comply with officers' or agents' instructions. In determining whether a warning is feasible under the circumstances, an officer or agent may be guided by a variety of considerations. These considerations may include whether a delay in issuing the warning is likely to increase the danger to the officer, agent, or others (including any victims or bystanders), or if a delay would result in a crime, including the commission of a crime, such as assault on a federal officer or agent. When an officer or agent does issue a verbal warning, the officer or agent should afford the subject a reasonable opportunity to voluntarily comply before applying force.

16. When officers and agents must make judgements in hostile situations, having a supervisor approve each application of force is impractical. After a protest has been deemed unlawful and warnings have been administered, the line of effort is protection of life and property. In all applications of force incidents, the calculus of "reasonableness" includes an allowance for the fact that law enforcement officers and agents are often forced to make split-second decisions. Officers and agents must make decisions about the amount of force that is necessary in a particular situation in circumstances that are tense, uncertain, and rapidly evolving. These principals are outlined distinctly in the CBP Use of Force Policy.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this 19th day of June, 2025, at __Santa Monica, California.

_____
GREGORY K. BOVINO

4

SIMON EXHIBIT B
Page 4 of 4