**Kelly Simon**, OSB No. 154213
ksimon@aclu-or.org
**Eri Andriola**, OSB No. 246500
eandriola@aclu-or.org
ACLU FOUNDATION OF OREGON
PO Box 40585
Portland, OR 97240

**J. Ashlee Albies**, OSB No. 051846
ashlee@albiesstark.com
ALBIES & STARK LLC
1500 SW First Ave., Ste. 1000
Portland OR 97201
Facsimile: 503.427.9292

**Jane L Moisan**, OSB No. 181864
jane@pdxplp.com
PEOPLE'S LAW PROJECT
1500 SW First Ave., Ste. 1000
Portland OR 97201
Facsimile: 503.558.2025

**Matthew Borden (*Pro hac vice*)**
borden@braunhagey.com
**Hadley Rood**
hrood@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

**Marissa R. Benavides (*Pro hac vice*)**
Benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Ave., 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403
Facsimile: (646) 403-4089

PAGE 1 – JOINT STATUS REPORT REGARDING DISCOVERY

**Kimberly S. Hutchison (*Pro hac vice*)**
khutchison@singletonschreiber.com
SINGLETON SCHREIBER LLP
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Telephone: (619) 771-3473
Facsimile: (619) 255-1515

**Zach Pangares**
zpangares@singletonschreiber.com
SINGLETON SCHREIBER LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Telephone: (619) 486-1608
Facsimile: (619) 255-1515


*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(PORTLAND DIVISION)

| | |
|---|---|
| JACK DICKINSON (a.k.a. "the Portland Chicken"), LAURIE ECKMAN, RICHARD ECKMAN, MASON LAKE, HUGO RIOS, *on behalf of themselves and those similarly situated*<br><br>        Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, President of the United States, *in his official capacity*; KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS), *in her official capacity*; U.S. Department of Homeland Security<br><br>        Defendants. | Civil No. 3:25-cv-02170-SI<br><br>**JOINT STATUS REPORT REGARDING DISCOVERY** |

Plaintiffs Jack Dickinson, Laurie Eckman, Richard Eckman, Mason Lake, and Hugo Rios

("Plaintiffs") and Defendants the U.S. Department of Homeland Security and Federal Officials

Sued in Their Official Capacities (collectively, "the United States" [1]) respectfully submit this

---

[1] Claims nominally pled against federal officials in their official capacities are actually claims against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

joint status report regarding discovery as directed in this Court's case management order (ECF No. 44). In that order, the Court directed Plaintiffs and the United States (collectively, "the Parties") to meet and confer regarding discovery needs and timeframes and to file a joint status report stating "what expedited discovery has been agreed upon and the nature of any unresolved discovery disputes, with each side's respective positions." ECF No. 44.

## PLAINTIFFS' POSITION

Plaintiffs' section addresses two topics: (1) the protective order, (2) the status of discovery.

The parties have worked out terms for the protective order but have one area of dispute, which is that Defendants seek to restrict the use of information produced in a manner that would be contrary to Ninth Circuit law and unduly hinder Plaintiffs.

As to discovery, Defendants have not produced any documents other than the Use-of-Force Policies the Court has already seen, and they have not produced any witnesses for deposition. They also have not identified their command structure. They have agreed to produce some limited documents identified below and to produce witnesses for depositions on future dates—*after* the deadline for Plaintiffs to file their motion for a preliminary injunction—that are not yet confirmed. At the status conference, Plaintiffs would like to discuss the timing for certain responses so that they have the materials that they need for their planned motion for a preliminary injunction (due February 12) and motion for class certification.

### PROTECTIVE ORDER

The parties have agreed upon the terms of a protective order with one dispute. Defendants seek to preclude the use of documents produced in this case in any other proceeding.

Plaintiffs propose allowing the limited use of information to other attorneys who agree to be bound by the terms of the Protective Order. Plaintiffs seek this ability for four reasons:

First, as the Court is aware, some of Plaintiffs' counsel are involved in other similar proceedings against DHS and do not want to be accused of violating the Protective Order for their work on other matters.

Second, it would be difficult for counsel to refrain from discussing information gained from this case with counsel in other proceedings and to not use such information to zealously advocate for other clients.

Third, the Ninth Circuit recently affirmed that counsel who represent individuals in similar matters should be allowed to obtain such information from a common defendant. In *Cordero v. Stemilt AG Servs., LLC*, 142 F.4th 1201 (9th Cir. 2025), an advocacy group called Columbia brought and settled a class action on behalf of laborers against the defendant. The district court in that case had issued a protective order that prohibited Columbia from using materials from the class action in other litigation absent leave of Court. After the case settled, Columbia sought to modify the protective order so that it could use the documents in another proceeding. Finding no good cause for the prohibition, the Ninth Circuit vacated "the portion of the district court's order requiring Columbia to seek court leave before using in other advocacy information obtained in discovery in the class action." *Id.* at 1207-08.

Fourth, Defendants have taken the position that facts from other cases are relevant in these types of proceedings. For example, in *LA Press Club*, the following colloquy occurred:

> THE COURT: Oh, but, Counsel, I don't know that I need to go there, but why should this Court be compelled to put its head in the sand essentially and ignore everything that's happened in Chicago, Judge Ellis and the reams of evidence by

the same agency. Now, obviously, it's in different district, but it's the same types of allegations. And I know that the injunction has been put on hold. I'm aware of that. But in terms of your argument, "Look, nothing to see here. It's all in the past," we're talking about just weeks ago, days ago, this activity continues. So why can't I take note of that and say, "No, the problem still exists. There hasn't been any change," right? If there was a press conference, if there's something saying, "Look, we're -- we have new policies, here they are," I could see your argument, "Look, we've changed -- we've made a decision to change our policies," but I don't see that at all.

MR. SKEDZIELEWSKI: I think the Court should consider the Chicago case. I think it's relevant here. …

THE COURT: Okay. So you're essentially inviting me to look at the –

MR. SKEDZIELEWSKI: Yes.

THE COURT: -- the Seventh Circuit record.

MR. SKEDZIELEWSKI: Yes, your Honor. I think – I don't think that the facts in that case are very helpful here because, you know, that operation -- it's a different operation, different Plaintiffs, right? So it -- it's not dispositive on the merits. But as far as standing goes, I think it's helpful. Yeah.

12/4/25 Hearing Tr. at 14-16.


**DISCOVERY**

At this point, Plaintiffs have both made informal requests and propounded formal Requests for Production of Documents, Interrogatories and deposition notices. The areas of agreement are listed first, followed by the areas that still need work and a proposed schedule.

A.  **Areas of Agreement**

**Specific Events**. During a meet and confer that was held on February 3, 2026, the Parties agreed that, instead of taking discovery focused on the entire period between June 1, 2025 and the present, certain requests would focus on the events of September 1, 2025; September 13, 2025; October 4, 2025; October 18, 2025; November 14, 2025; January 19, 2026; January 24, 2026; January 25, 2026; and January 31, 2026.

**Camera footage**. Plaintiffs agreed with Defendants' proposal about producing video evidence from body cameras and buildings.

**Training materials**. Defendants represent that they have no responsive documents other than the FPS Written Training Materials for Operation Skipjack and the Region 10 Use of Force Overview. If this is the case, they have nothing to produce.

**Briefings**. Defendants represent that they have no briefings. If this is the case, they have nothing to produce.

## B. Areas of Disagreement

**Investigations**. Defendants appear to assert that any information they have related to any investigations is privileged. They should provide a privilege log of such materials so that Plaintiffs may evaluate these claims. They should also disclose: (1) the nature of the incident under investigation, (2) the date, (3) the investigative body that performed the investigation, (4) whether any discipline has been imposed, (5) if so, how many times this has occurred and (6) for each time, if any, discipline was imposed, what the nature of the discipline was. None of this information is arguably privileged. Nor do Defendants assert that it is voluminous.

**Interrogatories**. Defendants have indicated that they will respond by February 10, 2026 (two days before Plaintiffs' opening brief is due), but that they plan to object to the interrogatories about discipline and training on the grounds of privilege. As discussed above, at least some of the information is not privileged and could be disclosed to counsel pursuant to the Protective Order without jeopardizing any legitimate law enforcement need.

**Command Structure**. Defendants stated that three DHS agency subcomponents are present at the Portland ICE building: ICE, CBP, and FPS. Defendants stated that each subcomponent has their own chain of command and there is frequent change due to individuals

coming in and out on temporary assignments. Defendants proposed providing the incident reports generated on each of the dates agreed to by the Parties and indicating who the senior official was at the facility on each of those days. Plaintiffs agreed to receiving this information but requested that Defendants also provide the names of individuals in the chain of command at least one level above the Portland area. Defendants did not agree to this request, but agreed to look into who this would be. Defendants also agreed to attempt to identify the highest-ranking FPS official at the Portland ICE facility.

**Document Requests**. Plaintiffs served narrow document requests earlier today, attached as **Exhibit 2**. Defendants have not indicated their position about them, beyond agreeing to produce the Use-of-Force reports and body camera and building footage.

**Depositions**. Defendants suggested that Robert Cantu may be a possible deponent rather than Plaintiffs' taking a Rule 30(b)(6) deposition. Given the compressed circumstances, a Rule 30(b)(6) witness is better because the rule imposes an obligation on Defendants to produce a knowledgeable person. Plaintiffs would like to take Mr. Cantu's deposition in his individual capacity in addition to a Rule 30(b)(6) deposition on specific topics.

Plaintiffs have asked for a deposition pursuant to Fed. R. Civ. P. 30(b)(6), in the form attached as **Exhibit 1**. The topics generally include: the chain of command, use of force policies, training on use of force, use of force investigations and discipline, policies and plans for crowd management/crowd control/protest policing, federal agents' duties, obligations, and rights when members of the public record their activities, policies and training that apply to treatment and interaction with journalists, policies and training that apply to treatment of individuals expressing/engaging in religious practices. Defendants have not agreed to produce anyone.

Defendants provided the name of the officer photographed using pepper spray during the Martin Luther King, Jr. Day protest ("MLK Day Officer") and Defendants agreed to make him available for a two-hour virtual deposition. Plaintiffs believe four hours is a more appropriate time limit given the limited number of deponents in the expedited schedule.

On February 6, 2026, Plaintiffs also sent Defendants videos capturing incidents on January 31, 2026, asking to depose individuals depicted in those videos who were on the roof and deployed munitions that day. Defendants agreed to schedule those depositions.

### C. Proposed Schedule

Plaintiffs' deadline to file the Preliminary Injunction motion is February 12, 2026. Incorporation of these responses is vital to Plaintiffs' Preliminary Injunction motion and vital for Plaintiffs' understanding of Defendants' policies and procedures at the Portland ICE facility. Plaintiffs acknowledge that certain requests may take longer to respond to than others. With that in mind, Plaintiffs propose the following:

**Command structure**—Defendants disclose this by no later than February 9, 2026. Plaintiffs have been asking for this for more than a week, and this fact is easily known to Defendants.

**MLK Day Officer Deposition**—Defendants produce the witness for a four-hour deposition by no later than February 10, 2026. Plaintiffs have been asking for this deposition for more than a week and have been willing to do it remotely for convenience and speed.

**Interrogatory response on investigations (Nos. 7 and 8)**—Defendants to answer without privilege objections providing information at least on the narrow categories identified

above by no later than February 9, 2026. Defendants have already searched for these materials as indicated in their responses, so this should not be difficult or burdensome.[2]

**Use-of-Force reports**—Defendants produce by no later than February 9, 2026. Our understanding is that these are on Defendants' computer system and can be easily extracted.

**Interrogatories Nos. 1-2**—Defendants to respond by no later than February 10, 2026. Again, this is information that Defendants should readily know.

**Other officer depositions**— February 9, 10, 2026, and/or February 12, 2026

**Rule 30(b)(6) deposition**—February 10 and/or 12, 2026, as needed to cover all matters

**Video evidence and responses to RFP Nos. 2-6**—Parties to meet and confer by no later than February 9, 2026, and to submit a joint schedule to the Court on February 9, 2026.

## DEFENDANTS' POSITION

### I. STATEMENT OF THE CASE

Plaintiffs bring this putative class action lawsuit against the United States, asserting First Amendment retaliation, First Amendment viewpoint discrimination, First Amendment right-of-access, Fourth Amendment excessive force, Fifth Amendment due process, Administrative Procedure Act, and declaratory relief claims. The claims arise primarily from allegations that, from June 2025 to present, federal agents working for components of the U.S. Department of Homeland Security ("DHS") engaged in a pattern and practice of using less-lethal munitions against peaceful protestors who gathered at an Immigration and Customs Enforcement ("ICE") facility located at the corner of South Bancroft Street and South Macadam Avenue in Portland, Oregon ("Portland ICE Building"). Plaintiffs allege that DHS agents unlawfully used less-lethal

---

[2] Plaintiffs' First Set of Interrogatories is attached as **Exhibit 3**.

munitions and other forms of force on them during protests at the Portland ICE Building. Plaintiffs seek injunctive relief, declaratory relief, an order vacating the United States' allegedly unlawful policies and actions, and attorneys' fees (ECF No. 1; ECF No. 5). Plaintiffs also seek to pursue this relief on behalf of a class of "all persons who do or will in the future report on, document, observe, or protest against Defendants outside the Portland ICE building" and a subclass of all persons who do or will in the future reporting on, documenting, or recording Defendants and their official conduct at protests at the Portland Ice Building." ECF No. 5 ¶¶ 135-136.

On January 27, 2026, Plaintiffs filed a motion for a temporary restraining order (ECF No. 11), which has since been granted (ECF No. 68). On January 29, 2026, Plaintiffs filed a motion for expedited discovery to support their planned motion for a preliminary injunction. On January 30, 2026, the Court issued a case management order which, among other things: set a February 12, 2026 deadline for Plaintiffs' motion for a preliminary injunction; granted Plaintiffs' motion for expedited discovery; and ordered the United States to promptly disclose, under the terms of a protective order and/or seal, current or recent use-of-force policies applicable to DHS, ICE, U.S. Customs and Border Patrol ("CBP") U.S. Border Patrol Tactical Unit ("BORTAC"), within the Special Operations Group ("SOG") of the U.S. Border Patrol ("USBP"), the U.S. Federal Protective Service ("FPS"), and the Portland ICE Building. ECF No. 44. The Court directed the Parties to meet and confer on expedited discovery and file this joint status report by February 6, 2026, setting forth "what expedited discovery has been agreed upon and the nature of any unresolved discovery disputes, with each side's respective positions." ECF No. 44. On the same deadline, the Court also ordered the Parties to file proposed protective orders.

## II. EXPEDITED DISCOVERY

1. <u>Clawback Agreement and Protective Order</u>

The parties have agreed on the form of a Clawback Agreement and Rule 502(d) Order, which is attached as **Exhibit 4.**

As noted above, the parties have agreed in substantial part regarding a Protective Order, but there is a substantial disagreement on whether Plaintiffs should be permitted to use Confidential or Attorneys' Eyes Only information in matters other than this lawsuit.  The Protective Order that Defendants proposed is modeled off this Court's Tier 2 Protective Order to the extent Confidential and Attorneys' Eyes Only information "shall be restricted solely to the litigation of this case."  Plaintiffs indicate that it would be difficult for counsel to refrain from discussing information gained from this case with counsel in other proceedings in order to zealously advocate for other clients, but do not indicate *why* it would be difficult for them to refrain from using Confidential information from this case in another case, or *why* their desire to zealously advocate for other clients should allow them to use Confidential information they've gained here in other proceedings, other than their desire to do so. Nor is *Cordero v. Stemilt AG Servs.,* LLC, 142 F.4th 1201 (9th Cir. 2025), relevant, where the Ninth Circuit vacated a portion of a protective order after the fact, and in a factually different context in that none of the information there involved sensitive law enforcement information.  Finally, and notwithstanding Plaintiffs' quotation of the *LA Press Club* hearing transcript regarding the preliminary injunction record in another case—a record for which a court can take judicial notice—the United States has not conceded that discovery from one case is applicable in another.  Indeed, the United States expressly objected in *LA Press Club* to Plaintiffs' attempt to expand the scope of that case to

other states.  To the extent Plaintiffs believe any discovery produced in this case is required for

use in another case, the proper procedure is for Plaintiffs to seek discovery in that other case

pursuant to the rules and procedures governing that other action.

Plaintiffs' proposed edits to the Protective Order would also preclude the United States

from using its own law enforcement information for law enforcement purposes merely because it

has been disclosed in this case.

The parties are attaching, as **Exhibit 5**, a copy of Defendants' proposed protective order,

with redlines reflecting the changes that Plaintiffs would like to make to Defendants' proposed

protective order.

2.  Use of Force Policy

The United States has disclosed the following use-of-force policies to Plaintiffs, some of

which have been designated as Attorneys' Eyes Only:

i.  ICE Firearms and Use of Force Handbook Excerpt, Effective Date 8/2/2021 (Bates

    Dickinson_00000001-00000037)

ii.  ICE Directive 19009.3: Firearms and Use of Force, Effective Date 5/26/2023 (Bates

    Dickinson_00000038-00000050)

iii.  CBP Use of Force Policy, Effective Date January 2021 (Bates Dickinson_00000051-

    00000114)

iv.  DHS Policy Statement 044-05 Revision 01: Update to the Department Policy on the Use

    of Force, Issue Date 2/6/2023 (Bates Dickinson_00000115-00000127)

v. FPS Directive 15.5.4.7: Public Order Policing, Issue Date 12/2/2021 (Bates
   Dickinson_00000128-00000144)

vi. FPS Manual 15.5.1.2-01 Revision 1: Weapons and Use of Force, Issue Date 9/20/2022
    (Bates Dickinson_00000145-00000291)

vii. ICE Use of Force Handbook, Issue Date 10/11/2023 (Bates Dickinson_00000292-
     00000401)

3. <u>Agreed-Upon Expedited Discovery</u>

    The parties held a meet-and-confer on Tuesday, February 3 and, based on that conference, Defendants thought that they had reached an agreement regarding the scope of expedited discovery. While Plaintiffs indicated that they were planning to serve interrogatories, they did not indicate that they planned to serve formal document requests. In fact, Plaintiffs did not serve those document requests until earlier today, February 6, 2026. Accordingly, much of the discussion of discovery below does not take into account those document requests, which would be disproportionate to the needs of this case in a normal discovery context, much less the mere weeks, if not days, that Plaintiffs have proposed for responding.

    Take, for one example, Request No. 2, which seeks "All Documents describing or explaining the reasons for the use of Munitions at or surrounding the Portland ICE Building from June 1, 2025 to the date of your response." Responding to that request will require the collection and processing of ESI across multiple DHS components, a search for documents that anywhere "describe[e]" or "explain[ ]" why munitions were used across a six-month time period, a review

of documents for responsiveness, a review of documents for privilege, and finally the processing and production of those documents.

Or, for another example, Request No. 6 seeks all communications by commanding officers or documents about ten different topics. Request No. 8 is literally indecipherable, requesting "All on any individual phone, tablet, and computer device of every Federal Agent who was performing official duties at the Portland ICE building" on nine separate dates. That may require the physical collection of those phones, tablets, and computers, the extraction and processing of information, and the running of search terms, followed by a review for privilege.

Having only been served with these Document Requests today, Defendants have not yet had a chance to thoroughly review them. But it is clear that it would be impossible for Defendants to comply with these requests on the timeline contemplated by the Court for expedited discovery, which needs to be narrow, focused, and tailored to the key and targeted information relevant to Plaintiffs' forthcoming preliminary injunction motion. Defendants also note that, while they anticipate rolling the production of documents that were discussed on Tuesday, February 3, Plaintiffs will have opportunities to use documents produced after they file their preliminary injunction motion when they file a reply, or during the preliminary injunction hearing itself.

*A. Depositions*

Plaintiffs may take the deposition of the person depicted in the photograph attached to Plaintiffs' counsel's email of January 31 whom the United States has identified AEO for Plaintiffs. The deposition of that person may last for up to two hours. While Plaintiffs have

PAGE 15 –  JOINT STATUS REPORT REGARDING DISCOVERY

noticed that deposition for February 9, the parties are negotiating alternative dates, and Defendants have offered to make him available on February 12. Plaintiffs' deposition notice also included a request for the production of documents, which the United States has not yet had an opportunity to fully evaluate. Plaintiffs have also indicated they intend to notice the depositions of one or two additional field agents, and have requested the deposition of Robert Cantu, who Defendants have offered to make available on February 12 or 13. Finally, Plaintiffs have sent the United States notice that they seek a Rule 30(b)(6) deposition. Defendants' position regarding that deposition is discussed in the Expedited Discovery Disputes section below.

B. *Interrogatories*

Plaintiffs have served their First Set of Interrogatories on the United States and requested a response by February 10. The United States currently anticipates serving objections and responses to Plaintiffs' First Set of Interrogatories by February 10, but reserves the right to confer with Plaintiffs regarding an extension if one becomes needed.

Plaintiffs have requested that Defendants answer the Interrogatories "without privilege objections." It would be error for this Court to require Defendants to waive their privilege objections before they have even had an opportunity to assert them in the context of specific interrogatory answers, especially given that Defendants will endeavor to respond in seven days rather than the normal 30.

C. *Identifications*

Plaintiffs are seeking the identity of commanding officers responsible for policing protest activity at the Portland ICE Building, and their immediate supervisors, for the following dates

("Incident Dates"): September 1, 2025; September 13, 2025; October 4, 2025; October 18, 2025;

November 14, 2025; January 19, 2026; January 24, 2026; January 25, 2026; and January 31,

2026. The United States anticipates providing that information to plaintiffs for FPS, ICE, and

CBP, though the scope of information to be provided depends on each entity's command

structure.

### D. Documents

The United States will disclose to Plaintiffs, to the extent such documents exist and are

not privileged, the following documents relating to the Incident Dates:

i.   FPS Incident Reports (Form 3155), FPS Use of Force Reports (Form 10), FPS Incident

     Command System Reports (Form 209), and FPS Spot Reports (email notification of

     incidents)

ii.  ICE Use of Force Reports (SIR Reports)

iii. CBP Use of Force Reports (E-Star Reports)

iv.  Plaintiffs are seeking written daily briefings regarding the law enforcement response to

     protests at the Portland ICE Building from CBP, ICE, and FPS for the Incident Dates.

     However, the United States has not identified anything to produce in this category

     because CBP, ICE, and FPS do not prepare written daily briefings in general, and did not

     prepare written daily briefings to personnel at the Portland ICE Building regarding the

     use of force and the law enforcement response to protests at the Portland ICE Building

v.   Plaintiffs are seeking written training materials provided to personnel at the Portland ICE

     Building regarding the use of force, protests, and the law enforcement response to

protests at the Portland ICE Building from September 2024 to present. Defendants do not understand Plaintiffs to be seeking generalized law enforcement training materials. The United States objects to the timeframe reaching back to September, 2024 as beyond the scope of the allegations in this lawsuit. In response to Plaintiffs' request, the United States will produce FPS Written Training Materials for Operation Skipjack and the Region 10 Use of Force Overview. Aside from the aforementioned FPS materials and routine annual or semi-annual training provided to agents in general (which the United States does not interpret to be within the scope of what Plaintiffs are seeking, even if provided to individuals in the Portland ICE Building), FPS, CBP, and ICE have not identified other written training materials in this category.

E. *Videos*

The United States has informed Plaintiffs that FPS and ICE agents are generally not equipped with body-worn cameras and were not equipped with such cameras at the times relevant to the complaint in this matter. CBP agents are generally equipped with body-worn cameras, and the United States has informed Plaintiffs that CBP E-Star reports as a matter of course include a record of the body-worn camera assigned to the agent who prepared the report. Therefore, the United States will produce to Plaintiffs body-worn camera footage recorded on the Incident Dates by the cameras identified in any CBP E-Star reports for those dates. Due to the need to pull the identified footage and review and redact potentially privileged information from that footage, CBP anticipates that it will not be able to produce these materials before February 20, 2026.

In addition, the United States will attempt to produce to Plaintiffs any footage recorded on the Incident Dates by security cameras mounted on the Portland ICE Building. However, and based on a preliminary assessment, the volume of the footage appears to be high.  The United States is working diligently to produce this footage to Plaintiffs as soon as is reasonably feasible but is not yet in a position to identify when it will be able to do so.  Nonetheless, the United States hopes to produce copies of any building footage for the times of specific incidents for which FPS use-of-force reports were completed on the Incident Dates next week.

*F.  Investigations*

The United States is willing to produce to Plaintiffs any non-privileged portion of any FPS Office of Professional Responsibility investigative file for use of force incidents occurring on the Incident Dates. However, FPS has no non-privileged Office of Professional Responsibility investigative files to disclose at this time.  The United States notes that any open investigations will likely raise privilege issues that may preclude their production to Plaintiffs.

4.  <u>Expedited Discovery Disputes</u>

*A.  Training*

Regarding disclosure of the training materials identified in items 3(D)(v) above, the Parties dispute whether trainings given or prepared by government attorneys are privileged and not subject to disclosure. The United States' position is that, where government attorneys provide legal advice to government employees in connection with the employees' work for the government, including trainings on the law in relation to their jobs, that legal advice to the government and its employees is attorney-client privileged and constitutes protected attorney

work product not subject to disclosure. Defendants also object to this request going back to September, 2024.

### B. Investigations

The United States objects to disclosures of any documents created or collected as part of an open investigation about the conduct of officers on the Incident Dates. Disclosure of information from or related to any open investigation raises privilege issues, including law enforcement and investigatory privileges, that precludes their production to Plaintiffs.

### C. Rule 30(b)(6) Deposition

On February 6, Plaintiffs noticed a deposition of DHS pursuant to Federal Rule of Civil Procedure 30(b)(6) for February 10, 2026. This deposition is unreasonable. Two business days to prepare for an extraordinarily broad deposition is not compatible with the expedited nature of these proceedings and will impose undue burdens on DHS. The United States is in the process of exploring less burdensome alternatives and reserves the right to oppose Plaintiffs' requested deposition and will be prepared to discuss these burdens during the status conference.

### D. Plaintiffs' Timing Proposal

Plaintiffs have proposed a schedule that will be impossible for Defendants to meet. While Defendants will be prepared to discuss these issues in more detail at the status conference (having only learned of Plaintiffs' proposed schedule late at night on the day this status report is due), they note that requiring the production of materials the same day as this Court's status conference, or depositions mere days thereafter, will create logistical difficulties that may be impossible to resolve. For just one example, preparing witnesses for a Rule 30(b)(6) deposition

requires substantial preparation and coordination with DOJ counsel, agency counsel, and the

witness; without that preparation, the deposition will not be a productive use of anyone's time.


Dated: February 6, 2026                          Respectfully submitted,

                                                 SINGLETON SCHREIBER, LLP

                                                 By:     */s/ Kimberly S. Hutchison*
                                                 Kimberly S. Hutchison
                                                 Attorneys for Plaintiff

                                                 ACLU FOUNDATION OF OREGON

                                                 By: */s/ Kelly Simon*
                                                 Kelly Simon

                                                 BRAUNHAGEY & BORDEN LLP

                                                 By: */s/ Matthew Borden*
                                                 Kelly Simon

                                                 *Attorneys for Plaintiffs*

                                                 BRETT A. SHUMATE
                                                 Assistant Attorney General
                                                 Civil Division

                                                 JOHN BAILEY
                                                 Counsel to the Assistant Attorney General
                                                 Civil Division

                                                 ANDREW I. WARDEN
                                                 Assistant Director
                                                 Federal Programs Branch

                                                 *s/ Brad P. Rosenberg*
                                                 BRAD P. ROSENBERG
                                                 (DC Bar No. 467513)
                                                 Special Counsel
                                                 U.S. Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 1100 L Street, N.W.
                                                 Washington, D.C. 20005

PAGE 21 –  JOINT STATUS REPORT REGARDING DISCOVERY

Telephone: (202) 514-3374
brad.rosenberg@usdoj.gov

*Attorneys for Defendants*