**Kelly Simon**, OSB No. 154213
ksimon@aclu-or.org
**Eri Andriola**, OSB No. 246500
eandriola@aclu-or.org
ACLU FOUNDATION OF OREGON
PO Box 40585
Portland, OR 97240

**J. Ashlee Albies**, OSB No. 051846
ashlee@albiesstark.com
ALBIES & STARK LLC
1500 SW First Ave., Ste. 1000
Portland OR 97201
Facsimile: 503.427.9292

**Jane L Moisan**, OSB No. 181864
jane@pdxplp.com
PEOPLE'S LAW PROJECT
1500 SW First Ave., Ste. 1000
Portland OR 97201
Facsimile: 503.558.2025

**Matthew Borden**
borden@braunhagey.com
**Hadley Rood**
hrood@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

**Marissa R. Benavides**
Benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Ave., 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403
Facsimile: (646) 403-4089

**Kimberly S. Hutchison**
khutchison@singletonschreiber.com
**Liam Barrett**
lbarrett@singletonschreiber.com
**Taylor Marrinan**
tmarrinan@singletonschreiber.com
SINGLETON SCHREIBER LLP
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Telephone: (619) 771-3473
Facsimile: (619) 255-1515

**Zach Pangares**
zpangares@singletonschreiber.com
SINGLETON SCHREIBER LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Telephone: (619) 486-1608
Facsimile: (619) 255-1515
    *Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(PORTLAND DIVISION)

| | |
|---|---|
| Jack Dickinson, a.k.a. "the Portland Chicken," Laurie Eckman, Richard Eckman, Mason Lake, and Hugo Rios, *on behalf of themselves and those similarly situated,*<br><br>                Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity; KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; U.S. Department of Homeland Security.<br><br>                Defendants. | Civil No. 3:25-cv-02170-SI<br><br><br>**PLAINTIFFS' MOTION TO EXTEND TEMPORARY RESTRAINING ORDER (DKT. 68)** |

**CERTIFICATE PURSUANT TO LOCAL RULE 7-1**

Plaintiffs' counsel certifies that they emailed Defendants on February 15, 2026 asking whether Defendants would stipulate to an extension of the Temporary Restraining Order. Defendants did not agree to an extension at this time and are opposed to this Motion.

**<u>MOTION</u>**

Plaintiffs respectfully move the Court to extend the existing Temporary Restraining Order ("TRO") for fourteen (14) days. Federal Rule of Civil Procedure 65(b)(2) permits such an extension for "good cause." Good cause exists here for the reasons the Court already found when it issued the TRO, *see* Dkt. 68, for the additional reasons detailed in Plaintiffs' pending Motion for a Preliminary Injunction (Dkt. 94), and because Defendant has not disclaimed any of the conduct that gave rise to the TRO. *See Oregon v. Trump*, Case No. 3:25-cv-01756, Dkt. 85 (D. Or. 10/15/2025) (extending TRO based on TRO record). Good cause to extend the TRO also exists because such an extension will maintain the status quo. *Western Watersheds Project v. Bernhardt*, 391 F. Supp. 3d 1002, 1008-09 (D. Or. 2020) (One purpose of a temporary restraining order is to preserve the status quo until the motion for a preliminary injunction is decided.).

Absent an extension of the TRO, Plaintiffs will face significant harm. The Court has set a three-day evidentiary hearing on Plaintiffs' motion for a preliminary injunction to begin March 2, 2026. Under FRCP 65, the TRO will expire on February 17, 2026, before Plaintiffs motion for a preliminary injunction will be heard.

While Plaintiffs' TRO Motion was pending, Defendants used chemical and projectile munitions against large crowds at the Portland ICE building, which included children, senior citizens, families, and other peaceful protestors. Defendants have a policy of using "crowd control chemical munitions to disperse crowds that refuse to comply with dispersal orders"[1]

---

[1] *See Reach Community Development et al. v. U.S. Dep't of Homeland Security et al.*, Case No. 3:25-cv-02257, Dkt. 50-1 at ¶ 6 (D. Or.) (Declaration of Roberto Cantu) ("In conjunction with its

(Exhibit 1 – Cantu Decl. ¶ 6), using force against non-threatening people such as Plaintiff Laurie Eckman, and engaging in the other retaliatory conduct already documented in the record. Because Defendants are admittedly operating under an unlawful policy, there is an overwhelming likelihood that they will resume such actions absent an extension of the TRO.

To date, despite having multiple opportunities, Defendants have not submitted any evidence in opposition to the TRO. Nor have they made any effort to dissolve the TRO despite having the right to do. *See* Fed. R. Civ. Pro. 65(b)(4) (permitting Defendants to move to dissolve the TRO with two days' notice). Nor have they provided any proof that their operations have abated or offered to change their conduct in any way.

To the contrary, Defendants' public response to the TRO has been to assert that "our law enforcement has followed their training and used the minimum amount of force necessary to protect themselves, the public, and federal property" and that "DHS is taking appropriate and constitutional measures to uphold the rule of law and protect our officers and the public from dangerous rioters. We remind the public that rioting is dangerous …."[2] Consistent with its conduct in many other instances (such as claiming that Alex Pretti had "attacked" DHS officers and was "brandishing" a gun at DHS agents when they killed him),[3] DHS offered a narrative about the events at issue that has little relationship to the reality documented in numerous unrefuted declarations now in the record, and alluded to using violence on those who "disobey its commands."[4] Also, DHS's spokesperson called a largely peaceful assembly "250 rioters" and

---

public order policing operations at the Portland ICE building, FPS uses crowd control chemical munitions to disperse crowds that refuse to comply with dispersal orders.").

[2] Adrian Thomas, "Judge restricts use of pepper balls, tear gas by federal agents at the Portland ICE building," Fox 12 (Feb. 3, 2026), https://www.kptv.com/2026/02/03/judge-restricts-use-pepper-balls-tear-gas-by-federal-agents-portland-ice-building/.

[3] Daniel Dale, "What Trump officials claimed about Alex Pretti – and what the evidence actually shows," CNN (Jan. 25, 2026), https://www.cnn.com/2026/01/25/politics/trump-officials-shifting-rhetoric-alex-pretti.

[4] *See* footnote 2*, supra*.

stated: "Mayor Wilson should be grateful to our brave law enforcement officers for cleaning up the streets of Portland by arresting criminal illegal aliens—not bashing them online and peddling false narratives about them. This garbage is contributing to ICE officers facing a 1300% increase in assaults against them as they put their lives on the line every day to defend the lives of American citizens."[5]

Under these circumstances, the TRO is serving its purpose, and there is good cause to extend it for a like period of fourteen (14) days until March 3, 2026.[6]

DATED: February 16, 2026.

ACLU FOUNDATION OF OREGON

*s/ Kelly Simon*

Kelly Simon, OSB No. 154213
Email: ksimon@aclu-or.org

*Of Counsel for Plaintiffs*

---

[5] Tanvi Varma, "Judge issues restraining order limiting DHS chemical munitions outside Portland ICE site, KATU (Feb. 3, 2026), https://katu.com/news/local/judge-weighs-whether-dhs-force-at-ice-facility-in-s-portland-crossed-legal-line-homeland-security-immigration-customs-enforcement-customs-border-patrol-protests-kristi-noem-lawsuit-donadl-trump.

[6] During the meet and confer process, Defendants stated that if the Court granted Plaintiffs' motion to extend the TRO, they would be open to discussing an additional short extension to give the Court additional time to prepare a written opinion after the evidentiary hearing.