**Kelly Simon**, OSB No. 154213
ksimon@aclu-or.org
**Eri Andriola**, OSB No. 246500
eandriola@aclu-or.org
ACLU FOUNDATION OF OREGON
PO Box 40585
Portland, OR 97240

**J. Ashlee Albies**, OSB No. 051846
ashlee@albiesstark.com
ALBIES & STARK LLC
1500 SW First Ave., Ste. 1000
Portland OR 97201
Facsimile: 503.427.9292

**Jane L Moisan**, OSB No. 181864
jane@pdxplp.com
PEOPLE'S LAW PROJECT
1500 SW First Ave., Ste. 1000
Portland OR 97201
Facsimile: 503.558.2025

**Matthew Borden**
borden@braunhagey.com
**Hadley Rood**
hrood@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

**Marissa R. Benavides**
Benavides@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Ave., 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403
Facsimile: (646) 403-4089

1

**Kimberly S. Hutchison**
khutchison@singletonschreiber.com
**Liam Barrett**
lbarrett@singletonschreiber.com
**Taylor Marrinan**
tmarrinan@singletonschreiber.com
SINGLETON SCHREIBER LLP
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
Telephone: (619) 771-3473
Facsimile: (619) 255-1515

**Zach Pangares**
zpangares@singletonschreiber.com
SINGLETON SCHREIBER LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Telephone: (619) 486-1608
Facsimile: (619) 255-1515

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(PORTLAND DIVISION)

| | |
|---|---|
| JACK DICKINSON (a.k.a. "the Portland Chicken"), LAURIE ECKMAN, RICHARD ECKMAN, MASON LAKE, HUGO RIOS, *on behalf of themselves and those similarly situated*<br><br>        Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, President of the United States, *in his official capacity*; KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS), *in her official capacity*; U.S. Department of Homeland Security<br>        Defendants. | Civil No. 3:25-cv-02170-SI<br><br>**PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION**<br><br>EXPEDITED ORAL ARGUMENT REQUESTED |

3

**TABLE OF CONTENTS**

# CONTENTS

MOTION .................................................................................................................... 11

introduction ............................................................................................................. 11

THE PROPOSED CLASS DEFINITION ................................................................. 13

factual background .................................................................................................. 13

    A.   Class Plaintiffs ............................................................................................... 14

    B.   Defendants ...................................................................................................... 15

    C.   ███████████ ........................................................................................ 17

    D.   Defendants' Track Record of Animus Directed at Portland and Protests at the Portland ICE Building .......................................................................................................... 18

argument ................................................................................................................. 21

I.    Plaintiffs have standing to bring this action for themselves and the class ........... 23

II.   The class Plaintiffs Satisfy Rule 23(a) ............................................................... 23

    A.   The Class is Sufficiently Numerous ............................................................. 23

    B.   The Proposed Class Meets the Commonality Requirement ........................... 24

        1.   All Class Members Are at Risk from Defendants' Pattern of Retaliation, which Is Uniformly Chilling Them ............................................................................................ 26

        2.   Class Members' Injuries Result from a Pattern, Practice and Policy of Excessive Force Against Protesters ................................................................................................... 27

        3.   Common Questions of Law Permeate the Class's Claims ............................ 36

    E.   Class Plaintiffs Satisfy Typicality ............................................................... 37

    F.   Plaintiffs and Counsel Are Adequate ........................................................... 38

III.  THE CLASS PLAINTIFFS SATISFY Rule 23(b)(2) ......................................... 39

IV.  plaintiffs' counsel should be appointed class counsel under rule 23(g) ............. 40

V.   FPS REGIONAL DIRECTOR ERIK JOHNSON'S TESTIMONY IN HIS DEPOSITION TAKEN ON FEBRUARY 27, 2026 FURTHER SUPPORTS this MOTION ............. 41

CONCLUSION ....................................................................................................... 42

# TABLE OF AUTHORITIES

Page(s)

Cases

3:25-cv-1756-IM,
    2025 WL 2823653 (D. Or. Oct. 5, 2025) ................................................................... 17

163 F.4th 1198 (9th Cir. 2025) ........................................................................................ 20

977 F.3d 817 (9th Cir. 2020) ...................................................................................... 29, 34

*Abdullah v. U.S. Sec. Assoc., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ..................................................................................... 23

*Al Otro Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020) ..................................................................................... 20

*Al Otro Lado, Inc. v. McAleenan*,
    394 F. Supp. 3d 1168 (S.D. Cal. 2019) ...................................................................... 27

*Anthony v. Rise Servs. Inc.*,
    No. CV-22-00268-PHX-GMS, 2023 WL 8828241 (D. Ariz. Dec. 21, 2023).......................... 36

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ................................................................................. 23, 35

*B.K. by next friend Tinsley v. Snyder*,
    922 F.3d 957 (9th Cir. 2019) ..................................................................................... 25

*Breathe v. City of Detroit*,
    484 F. Supp. 3d 511 (E.D. Mich. 2020) ..................................................................... 27

*Chicago Headline Club v. Noem*,
    No. 1:25-cv-12173, 2025 WL 3240782 (N.D. Ill. Nov. 20, 2025) ............................ 29

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
    317 F.R.D. 91 (N.D. Cal. 2016) ................................................................................ 22

*County of Riverside v. McLaughlin*,
    500 U.S. 44 (1991)..................................................................................................... 23

*Easter v. Am. West Fin.*,
    381 F.3d 948 (9th Cir. 2004) ..................................................................................... 21

*Ellis*,
   657 F.3d ................................................................................................ 35, 36

*Garcia*,
   150 F.4th ..................................................................................................... 34

*Garro Pinchi v. Noem*,
   No. 25-cv-5632-PCP, 2025 WL 3691938 (N.D. Cal. Dec. 19, 2025) ....................... 20

*Gomez v. USF Reddaway Inc.*,
   No. LACV1605572JAKFFMX, 2020 WL 10964592 (C.D. Cal. Mar. 30, 2020) ................. 36

*Gomez v. Vernon*,
   255 F.3d 1118 (9th Cir. 2001) ........................................................................ 31

*Gonzalez v. United States Immigr. & Customs Enf't*,
   975 F.3d 788 (9th Cir. 2020) .................................................................... 23, 24

*Gonzalez*,
   965 F.3d ...................................................................................................... 23

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................ 22

*Harper v. City of Los Angeles*,
   533 F.3d 1010 (9th Cir. 2008) ........................................................................ 27

*Hernandez v. Cnty. of Monterey*,
   305 F.R.D. 132 (N.D. Cal. 2015) ........................................................ 23, 26, 35

*In re Cooper Companies Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) .................................................................... 21

*In re Whirlpool Corp. Front–Loading Washer Products Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ........................................................................ 34

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ........................................................................ 34

*Johnson v. California*,
   543 U.S. 499 (2005) ...................................................................................... 23

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ........................................................................ 35

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ............................................................ 22, 23

*Kidd v. Mayorkas*,
    343 F.R.D. 428 (C.D. Cal. 2023) ..................................................................... 24

*LaDuke v. Nelson*,
    762 F.2d 1318 (9th Cir. 1985) ........................................................................ 21

*Lerwill v. Inflight Motion Pictures*,
    582 F.2d 507 (9th Cir. 1978) .......................................................................... 36

*Long v. Cnty. Of Los Angeles*,
    442 F.3d 1178 (9th Cir. 2006) ........................................................................ 31

*Los Angeles Press Club v. Noem*,
    799 F.Supp.3d 1036 (C.D. Cal. 2025) ............................................................ 29

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) .......................................................................... 35

*Lyon v. U.S. Immigr. & Customs Enf't*,
    308 F.R.D. 203 (N.D. Cal. 2015) .................................................................... 38

*Menotti v. City of Seattle*,
    409 F.3d 1113 (9th Cir. 2005) ................................................................... 28, 35

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ................................................................... 20, 23

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
    246 F.R.D. 621 (C.D. Cal. 2007) .................................................................... 38

*Nelson v. City of Davis*,
    685 F.3d 867 (9th Cir. 2012) .......................................................................... 30

*O'Brien v. Welty*,
    818 F.3d 920 (9th Cir. 2016) .......................................................................... 34

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC*,
    31 F.4th 651 (9th Cir. 2022) ........................................................................... 19

*Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*,
    188 F.R.D. 365 (D. Or. 1998) ......................................................................... 21

*Owino v. CoreCivic, Inc.*,
   60 F.4th 437 (9th Cir. 2022) ............................................................................ 23

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ........................................................ 23, 24, 25, 37

*Powers v. McDonough*,
   163 F.4th 1162 (9th Cir. 2025) ........................................................................ 36

*R.I.L-R v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) .................................................................. 21

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ......................................................................... 35

*Ruiz v. U.S. Immigr. & Customs Enf't*,
   No. 3:25-cv-9757-MMC, 2026 WL 391924 (N.D. Cal. Feb. 10, 2026) ................................. 20

*Saravia v. Sessions*,
   280 F. Supp. 3d 1168 (N.D. Cal. 2017) ........................................................... 21

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ........................................................................................ 19

*Shakhnes ex rel. Shakhnes v. Eggleston*,
   740 F. Supp. 2d 602 (S.D.N.Y. 2010) ............................................................. 38

*Smith v. City of Chicago*,
   340 F.R.D. 262 (N.D. Ill. 2021) ...................................................................... 26

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) .................................................................... 34

*Thakur v. Trump*,
   787 F. Supp. 3d 955 (N.D. Cal. 2025) ....................................................... 20, 21

*United Farm Workers v. Noem*,
   785 F. Supp. 3d 672 (E.D. Cal. 2025) ........................................................ 20, 28

*Walker v. Life Ins. Co. of the Sw.*,
   953 F.3d 624 (9th Cir. 2020) ........................................................................... 20

*Wal-Mart Stores v. Dukes*,
   564 U.S. 338 (2011) ........................................................... 21, 23, 29, 37

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ........................................................................ 37

Statutes

10 U.S.C. § 12406 .............................................................................................. 17

Rules

Fed. R. Civ. P. 23(a)(1) ................................................................................. 21, 22

Fed. R. Civ. P. 23(a)(1)-(4), (b)(2), and (g) ......................................................... 9

Fed. R. Civ. P. 23(a)(2) ................................................................................. 22, 23

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 35

Fed. R. Civ. P. 23(a)(4) ................................................................................. 36, 37

Fed. R. Civ. P. 23(c)(1)(A), (C) ......................................................................... 20

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ..................................................................... 38

Federal Rule of Civil Procedure ("Rule") 23 ..................................................... 19

Rule 23(a) ...................................................................................................... 19, 21

Rule 23(b) ........................................................................................................... 19

Rule 23(b)(2) ................................................................................................. passim

Rule 23(b)(3) ....................................................................................................... 23

RULE 23(G) ........................................................................................................ 38

Other Authorities

3 *Newberg on Class Actions* §7:27 (5th ed.) ................................................... 20

7A Fed. Prac. & Proc. Civ. § 1763 (3d ed. 2022) ............................................. 22

Newberg on Class Actions § 3:12 ...................................................................... 37

Newberg on Class Actions, § 4.11 (4th ed.2002) .............................................. 38

## CERTIFICATE PURSUANT TO LOCAL RULE 7-1

On February 18, 2026, Plaintiffs offered to Defendants that if they stipulated to class certification it would remove the need to conduct as many depositions as being sought pursuant to this Court's Order granting of Plaintiffs' Motion for Expedited Discovery. In an email dated February 19, 2026, Defendants rejected Plaintiffs' proposed stipulations and stated that they would oppose this motion.

## MOTION

Plaintiffs Jack Dickinson, Laurie Eckman, Richard Eckman, Masan Lake, and Hugo Rios ("Class Plaintiffs") will and hereby do move the Court for an Order certifying the proposed Protester Class and appointing Plaintiffs and their counsel to represent the Class, pursuant to Fed. R. Civ. P. 23(a)(1)-(4), (b)(2), and (g). Plaintiffs respectfully request that this Motion be heard in conjunction with their Motion for a Preliminary Injunction.

## INTRODUCTION

Plaintiffs are nonviolent protesters and journalists who have been attending the ongoing protests at the Portland ICE Building. They respectfully seek to provisionally certify the following class under Rule 23(b)(2): "All people who have or will nonviolently protest against, or report on DHS activities at the Portland ICE Building," and to have their counsel appointed to represent the class. Defendant Department of Homeland Security ("DHS") has violently retaliated against Plaintiffs and class members—some multiple times—for exercising their First Amendment rights. These assaults are not random. DHS has engaged in a pattern of committing hundreds of acts of unnecessary, excessive and collective violence against people who dare to protest against DHS and try to report on its activities.

Defendants' retaliation is directed, encouraged and endorsed from the top of the agency on down. To date, Defendants cannot point to any officer who was disciplined for the hundreds of instances of unnecessary violence now in the record and offer no explanation for why they attacked Plaintiffs or class members. Their use-of-force reports are reviewed by an agency board, which has found no incident of wrongdoing since June 2025. In response to tear gassing

11

children, senior citizens and families, Defendants asserted that "our law enforcement has followed their training and used the minimum amount of force necessary to protect themselves, the public, and federal property" and that "DHS is taking appropriate and constitutional measures to uphold the rule of law and protect our officers and the public from dangerous rioters. We remind the public that rioting is dangerous…"[1] ███████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████ This is consistent with agency policy of telling agents that they have "full immunity" for attacking protesters,[2] putting a falsified video about protests at the Portland ICE Building on DHS's social media account to support violently retaliating against protesters,[3] calling a largely peaceful assembly outside the Portland ICE Building "250 rioters,"[4] falsely claiming that Alex Pretti had "attacked" DHS officers and was "brandishing" a gun at DHS agents when they killed him,[5] and many other false accounts and failed prosecutions seeking to justify assaulting and arresting protesters.[6] Defendants' agents

---

[1] KPTV (FOX 12 Staff & Adrian Thomas), *Judge Restricts Use of Pepper Balls, Tear Gas by Federal Agents at Portland ICE Building*, KPTV (Feb. 3, 2026), https://www.kptv.com/2026/02/03/judge-restricts-use-pepper-balls-tear-gas-by-federal-agents-portland-ice-building/.

[2] Ailsa Chang & Kathryn Fink, *Do Federal Agents Have "Absolute Immunity?"*, NPR (Jan. 15, 2026), https://www.npr.org/2026/01/15/nx-s1-5678520/do-federal-agents-have-absolute-immunity.

[3] Drew Harwell & Joyce Sohyun Lee, *We Checked DHS's Videos of Chaos and Protests. Here's What They Leave Out*, The Washington Post (Oct. 29, 2025),https://www.washingtonpost.com/investigations/2025/10/29/trump-administration-misleading-videos/.

[4] Tanvi Varma, *Judge Weighs Whether DHS Force at ICE Facility in S. Portland Crossed Legal Line*, KATU (Feb. 3, 2026), https://katu.com/news/local/judge-weighs-whether-dhs-force-at-ice-facility-in-s-portland-crossed-legal-line-homeland-security-immigration-customs-enforcement-customs-border-patrol-protests-kristi-noem-lawsuit-donadl-trump.

[5] Daniel Dale, *The Trump Administration's False Claims and Shifting Rhetoric About the Killing of Alex Pretti*, CNN (Jan. 25, 2026), https://www.cnn.com/2026/01/25/politics/trump-officials-shifting-rhetoric-alex-pretti.

[6] *See, e.g.*, *DOJ Cases Against Protesters Keep Collapsing as Officers' Lies Are Exposed in Court*, The Guardian, https://www.theguardian.com/us-news/2026/feb/21/doj-protesters-federal-agents-cases ("In several high-profile cases, the prosecutions fell apart because they relied on statements by Department of Homeland Security (DHS) officers that had no supporting evidence or in some instances were proven by video footage to be blatantly false."); N. Santana Jr., *Santa Ana Police Dispute Federal Account of ICE Protest*, Voice of OC (Feb. 18, 2026)  (Santa Ana Police did not respond to DHS requests for assistance at protest based on claims that protesters were attacking them because drone surveillance showed they were "not under attack"), https://voiceofoc.org/2026/02/santa-ana-police-dispute-dhs/; *ICE says 2 of its officers may have lied under oath about shooting migrant in Minnesota*, ABC News (Feb 13, 2026), https://abcnews.com/US/prosecutor-moves-dismiss-charges-migrant-shot-minneapolis-citing/story?id=130131578; *Police body cameras capture federal agents fabricating attack by local activist in October*, News Channel (Feb. 12, 2026) https://keyt.com/news/ventura-county/2026/02/12/police-body-cameras-

have testified that conduct,  ( As intended, Defendants' pattern of officially-sanctioned violence against people who speak out against them or merely want to report on what they are doing is uniformly chilling Plaintiffs and Class members from exercising their First Amendment rights.

The standard for certifying an injunctive relief class under Rule 23(b)(2) is easily met. DHS has engaged in a common course of retaliation against those who want to protest or bear witness against DHS agents at the Portland ICE Building. Defendants have "acted or refused to act on grounds that generally apply to the class," such that injunctive relief prohibiting Defendants from continuing in this course of conduct is appropriate with respect to the class as a whole under Fed. R. Civ. P. 23(b)(2). DHS's pattern and practice of retaliation means that every protester and reporter attending a protest at the Portland ICE Building is subject to the same chilling conduct—the risk of being assaulted or killed for exercising their important legal right to criticize the government and hold it accountable. The Class has thousands of members, and Plaintiffs and their counsel have already shown that they are dedicated to pursuing these claims.

## THE PROPOSED CLASS DEFINITION

Plaintiffs seek certification of a provisional class defined as and consisting of:

All people who, since the beginning of Operation Skip Jack, have, desire to, or will nonviolently protest against, or report on DHS activities at the Portland ICE Building.

## FACTUAL BACKGROUND

Since June 2025, protests have been ongoing at the ICE Building located at 4310 SW Macadam Ave in the Southwest Waterfront Neighborhood of Portland, Oregon ("Portland ICE

capture-federal-agents-fabricating-attack-by-local-activist-in-october/; *When Trump Officials' Claims About Shootings Unravel in Court,* NY Times (Feb. 10, 2026)  https://www.nytimes.com/2026/02/10/us/politics/homeland-security-shootings.html?campaign_id=190&emc=edit_ufn_20260217&instance_id=171185&nl=from-the-times&regi_id=63306647&segment_id=215388&user_id=f5ffcd0bc515ef00c1c15e9368966aab; *Trump officials' loss of credibility in ICE cases seen in court defeats*, LA Times (Jan. 31, 2026), https://www.latimes.com/california/story/2026-01-31/ice-shootings-trump-officials-statements-court-cases.

Building"). As shown in Plaintiffs' Motion for a Temporary Restraining Order and Plaintiffs' Motion for Preliminary Injunction, both of which are incorporated by reference, Defendants have engaged in a pattern of retaliating against people protesting and reporting at the Portland ICE Building since the protests began.

See also First Amended Complaint ¶¶ 19-148 (describing in detail the violent and unconstitutional conduct of Defendants Trump, Noem, and DHS Defendants in directing, ratifying, and carrying out the retaliatory use of force against Class members in an effort to prevent them from exercising their First Amendment rights). *See, generally*, FAC ¶¶ 19-148.

### A.     Class Plaintiffs

Class Plaintiffs are nonviolent protesters and journalists who have attended the ongoing protests at the Portland ICE Building.

**Plaintiff Laurie Eckman** is an 84-year-old woman who lives with her husband, Plaintiff Richard Eckman, in Portland, Oregon. (Declaration of Laurie Eckman, ECF 13 ("L. Eckman Decl.") ¶ 2.)  When Ms. Eckman spontaneously decided to attend a protest that marched to the ICE Building, federal agents gassed her and shot her in the face with an impact munition covered in chemical irritant. (*Id.* ¶¶ 10-19.) When Ms. Eckman finally regained enough courage to attend another protest with her church group, she stood back from the Portland ICE Building in fear of Defendants. (Supplemental Declaration of Laurie Eckman, ECF 50 ("Supp. L. Eckman Decl.") ¶¶ 4-5.) They nonetheless teargassed her and numerous others by lobbing chemical munitions on all sides of the crowd, so that nobody could avoid the choking fumes. (*Id.* ¶¶ 6-8.)

**Plaintiff Jack Dickinson** is a Portland resident who has engaged, and continues to regularly engage, in nonviolent protest at the Portland ICE Building. (Declaration of Jack Dickinson, ECF 26 ("Dickinson Decl.") ¶¶ 2, 3.) He has come to be known as "the Portland Chicken" after he started regularly attending protests in a yellow fleece chicken costume with an American flag draped over his shoulders like a cape. Defendants have assaulted him directly and attacked him with crowd-control weapons on multiple occasions, including shooting him in the back as he walked away from agents. (*Id.* ¶¶ 4-19.)

14

Plaintiff **Richard Eckman** is an 83-year-old Vietnam War Veteran from the United States Navy and a retired Major in the U.S. Army Reserve. (Declaration of Richard Eckman, ECF 14 ("R. Eckman Decl.") ¶¶ 1, 4, 5.) Mr. Eckman spontaneously decided to attend a protest that marched to the ICE Building. (*Id.* ¶¶ 9-13.) Federal agents tear gassed him, hit his walker with a munition, rammed him, and shot his wife in the face. (*Id.* ¶¶ 17, 18, 20-22.)

Plaintiff **Mason Lake** is Portland resident. He is a freelance video journalist and filmmaker, who has covered protests in Portland since approximately 2020. (Declaration of Mason Lake, ECF 30 ("Lake Decl.") ¶ 1.) Defendants repeatedly attacked Mr. Lake even though his vest and helmet stated that he was "Press," and he consistently kept a distance from the ICE Building driveway and protesters engaging with officers. (*Id.* ¶¶ 3, 12, 18, 19, 24.) DHS officers have fired munitions at him and his camera, microphone, and gear, intentionally obstructed his filming with floodlights, tear gassed him on many occasions and shot him in the groin. (*E.g.*, Lake Decl. ¶¶ 8, 11, 16-18.)

Plaintiff **Hugo Rios** is a freelance photojournalist who lives in Portland. On September 1, 2025, Mr. Rios went to Elizabeth Caruthers Park at the South Waterfront to document protest activity. Mr. Rios clearly marked himself as press by wearing a black helmet, goggles, and a Velcro tag labeled "PRESS" across his chest. (Declaration of Hugo Rios, ECF 20 ("Rios Decl.") ¶ 3.) He carried his professional camera—a Canon EOS R5 with a 24-105 mm lens—as well as an external battery pack, external monitor, microphone, iPhone mount, and aluminum frame to protect the cameras. (*Id.* ¶ 13.) While Rios was trying to film protesters from a distance, DHS officers shoved him, teargassed him, then riddled his body with around 20 pepper balls, many of which hit him in the back. (*Id.* ¶ 9.)

### B.    Defendants

Defendant **Donald Trump** is the current President of the United States since January 20, 2025. He also served a term as President from January 20, 2017 until January 20, 2021. He was President during the Black Lives Matter protests in 2020. Then and now he establishes the

priorities and can direct policies of executive agencies through the agency heads that he appoints, including Kristi Noem and DHS. President Trump is sued in his official capacity.

**Defendant Kristi Noem** is Secretary of U.S. Department of Homeland Security (DHS) and a member of Defendant Trump's Cabinet. Since at least the beginning of June 2025, Noem has directed ICE, CBP, FPS, and their subordinate agencies and subcomponents, to collectively carry out or support the ongoing DHS operation at the Portland ICE Building. Noem has sanctioned, ratified, and encouraged DHS agents' sweeping use of chemical and projectile weapons and flash-bang grenades against protesters and journalists assembled at protests against DHS immigration actions and accompanying military support. Noem has also established, sanctioned, and ratified an agency policy of treating videorecording of DHS agents in public as a threat that may be responded to with force and addressed as a crime.[7] Defendant Noem is sued in her official capacity.

**Defendant Department of Homeland Security ("DHS")** is a cabinet-level department of the executive branch of the United States Government, responsible for border security, anti-terrorism, immigration, and customs. It was created in 2002, combining 22 different federal departments and agencies into a single Cabinet agency. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), and the DHS Management Directorate are component agencies within the Department of Homeland Security. Homeland Security Investigations ("HSI") and Enforcement and Removal Operations ("ERO"), including their respective Special Response Teams, are component subagencies within ICE. Border Patrol and the Office of Field Operations (including its Special Response Team ("CBPSRT")) are components of CBP. The Federal Protective Service ("FPS") is a subordinate agency housed within the DHS Management Directorate. DHS and its sub-components carry out their mission through federal agents employed by DHS, and sometimes other agencies, that are assigned to, act

---

[7] Maria Ramirez Uribe, *Here's What to Know About the Constitutional Right to Record Immigration Agents in Public*, PBS (Feb. 7, 2026), https://www.pbs.org/newshour/nation/heres-what-to-know-about-the-constitutional-right-to-record-immigration-agents-in-public.

16

at the direction of, with the authority of, or with the deputization of DHS and/or its components ("DHS officers"). Since at least the beginning of June 2025, DHS has coordinated a multi-agency operation that integrates various DHS components, including ERO, HSI, Border Patrol, CBP-SRT, and FPS, as well as officers from other federal agencies to engage in law enforcement and building security at the Portland ICE Building.

**C.** ██████████████████

████████████████████████████████████████████████████

████████████████████████████  Defendants called this ██████████████████ ██

Three DHS components are involved in the operation: FPS, ICE, and CPB. Because the Portland ICE Building is the primary responsibility of FPS, FPS is at the top of the command structure, and it ████████████████████████████████. (████████████████████ ██)[8]



---

[8] ICE has provided agents to FPS from several of its subcomponents, including Enforcement and Removal Operations (ICE-ERO), Homeland Security Investigations (ICE-HSI), and Special Response Team (ICE-SRT). CBP has provided agents to FPS from its subcomponents, including Office of Field Operations (CBP-OFO) and the Border Patrol Special Operations Group (BP-SOG) components like Border Patrol Tactical Unit (BORTAC), Border Patrol Search Trauma and Rescue (BORSTAR), and Mobile Response Team (CBP-MRT).

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

### D. Defendants' Track Record of Animus Directed at Portland and Protests at the Portland ICE Building

On September 4, 2025, Fox News aired a report about protests in Portland which included clips from the 2020 Portland protests near the federal courthouse. The next day, President Trump appeared to refer to this misleading news report, relying on reporting from 2020 rather than current circumstances, when telling a reporter that he was considering troop deployment in Portland.[9]

On September 19, 2025, President Trump, invoking images he saw on "television" of the "destruction of the city," described a plan to insert troops into cities he wanted to "save," such as Portland, Memphis, and Chicago, by stopping people who are "out of control."[10]

On September 22, 2025, the White House published a fact sheet which included a quote from President Trump saying he was "pleased to inform our many U.S.A. Patriots that I am designating ANTIFA, A SICK, DANGEROUS, RADICAL LEFT DISASTER, AS A MAJOR TERRORIST ORGANIZATION."[11] The fact sheet stated "A journalist was violently assaulted by Antifa protestors while reporting on a protest in Portland."[12]

On September 25, 2025, President Trump issued a national security presidential memorandum, "NSPM-7," which specifically claimed, "Riots in Los Angeles and Portland

---

[9] The Oregonian, "*It Is Like Living in Hell": Trump Discusses Portland as He Considers Sending the National Guard*, YouTube, (Sept. 5, 2025) https://www.youtube.com/watch?v=6tP9QqDmu74.

[10] *Id.*; Jamie Parfitt, *Trump vows to stop 'out of control and crazy' people in Portland, but he has other priorities first*, MSN, (Sept. 19, 2025) https://www.msn.com/en-us/news/politics/trump-vows-to-stop-out-of-control-and-crazy-people-in-portland-but-he-has-other-priorities-first/ar-AA1MVQ28.

[11] The White House, *Fact Sheet: President Donald J. Trump Designates Antifa as a Domestic Terrorist Organization*, Fact Sheets, (Sept. 22, 2025) https://www.whitehouse.gov/fact-sheets/2025/09/fact-sheet-president-donald-j-trump-designates-antifa-as-a-domestic-terrorist-organization/#:~:text=Antifa%20has%20engaged,must%20be%20stopped.

[12] *Id.*

reflect a more than 1,000 percent increase in attacks on U.S. Immigration and Customs Enforcement (ICE) officers since January 21, 2025."[13]

On September 27, 2025, President Trump, purportedly acting at the request of Defendant Noem, sent the National Guard to Portland, in his words, "to protect War ravaged Portland, and any of our ICE facilities under siege from attack by Antifa, and other domestic terrorists. I am also authorizing Full Force, if necessary."[14] As Judge Immergut found on November 7, 2025, however, "since that brief span of a few days in June, the protests outside the Portland ICE facility have been predominately peaceful, with only isolated and sporadic instances of relatively low-level violence, largely between protesters and counter-protesters. When considering these conditions that persisted for months before the President's federalization of the National Guard, this Court concludes that even giving great deference to the President's determination, the President did not have a lawful basis to federalize the National Guard under 10 U.S.C. § 12406." *State of Oregon et al v. Trump et al*, No. 3:25-cv-1756-IM, 2025 WL 2823653 (D. Or. Oct. 5, 2025), Dkt. 146 at 2.

On September 29, 2025, Attorney General Pamela Bondi issued her own memorandum to sub-components of the U.S. Department of Justice, with the subject of "Ending Political Violence Against ICE." Attorney General Bondi stated that "rioters" in Portland have "laid siege" to the ICE building.[15] In the memo, Attorney General Bondi directed federal agents to "suppress all unlawful rioting" in Portland and Chicago. Attorney General Bondi additionally charged U.S. Attorneys Offices in the District of Oregon and the Northern District of Illinois to escalate charging practices.

---

[13] The White House, Presidential Actions, *Countering Domestic Terrorism and Organized Political Violence*, (Sept. 25, 2025)
https://www.whitehouse.gov/presidential-actions/2025/09/countering-domestic-terrorism-and-organized-political-violence/.
[14] Donald J. Trump (@realDonaldTrump), TruthSocial, (Sept. 27, 2025 10:19 AM)
https://truthsocial.com/@realDonaldTrump/posts/115276694936263266.
[15] United States Department of Justice, *Attorney General's Memorandum Ending Political Violence Against ICE*, (Sept. 29, 2025) https://www.justice.gov/ag/media/1415691/dl.

On October 7, 2025, Defendant Noem travelled to Portland and visited the Portland ICE building. She observed the scene from the roof. She invited well-known right-aligned live streamers to join her inside, including Nick Sortor, who days before had been arrested by the Portland Police Bureau for disorderly conduct after an altercation with a protester at the Portland ICE Building, an act which the Trump Administration railed against as viewpoint discrimination.[16]

Before leaving Portland, Defendant Noem met with Portland Mayor Keith Wilson. During that meeting she threatened to send "four times the amount of federal officers" to Portland if the city did not acquiesce to her demands for how they policed around the Portland ICE building.[17]

On October 8, 2025, Mayor Wilson responded with his own statement, emphasizing his concern that Defendants were "increasingly using tear gas and force against protesters—the majority of whom are peaceful."[18] Mayor Wilson told at least one news outlet that he "continue[s] to maintain that the tactics used by federal agencies at the ICE facility are troubling and likely unconstitutional."[19]

After Mayor Wilson's statement, Defendant Noem committed to "double down" in Portland, including by seeking additional facilities and federal officers in the city. Defendant Noem called Oregon officials "lying and disingenuous and dishonest people."[20]

---

[16] Letter from Harmeet K. Dhillon and R. Jonas Geissler to Robert Taylor and Bob Day, (Oct. 3, 2025), https://www.portland.gov/federal/documents/letter-us-dept-justice-portland-re-viewpoint-discrimination/download.

[17] John Tanet and Katherine Cook, *DHS Secretary Kristi Noem ends Portland visit threatening to send 'four times' as many federal officers if mayor doesn't make changes*, KGW, (Oct. 8, 2025 10:46 AM) https://www.kgw.com/article/news/politics/national-politics/dhs-secretary-kristi-noem-ends-portland-visit-threatening-to-send-four-times-as-many-federal-officers/283-373c3761-70cc-42b8-a92e-0a2db5c5e63a.

[18] City of Portland, Oregon, *Mayor Wilson to feds: Your actions are 'deeply disturbing'*, (Oct. 8, 2025 1:31 PM) https://www.portland.gov/mayor/keith-wilson/news/2025/10/8/mayor-wilson-feds-your-actions-are-deeply-disturbing.

[19] Tanet and Cook, *supra* note 17.

[20] Shane Dixon Kavanaugh, *Kristi Noem calls Oregon leaders liars, says feds will 'double down' in Portland*, The Oregonian, (Oct. 9, 2025 1:18 PM, updated Oct. 10, 2025 10:44 AM) https://www.oregonlive.com/politics/2025/10/kristi-noem-calls-oregon-leaders-liars-says-feds-will-double-down-in-portland.html.

The White House put out a press release on October 8, 2025, stating: "For years, an Antifa-led hellfire has turned Portland into a wasteland of firebombs, beatings, and brazen attacks on federal officers and property—yet the Fake News remains in shameful denial about the Radical Left's reign of terror."[21]

On October 23, 2025, President Trump, said about the October 18, 2025 scene in Portland, "The whole place is burning to the ground. . . . So we'll take care of that one. That's like an insurrection more than it is anything else. That's crazy. Portland's crazy."[22]

After November, when a court ruled that the President could not deploy the National Guard in Portland, Defendants' rhetoric temporarily abated. However, after DHS killed Renee Good and Alex Pretti in Minnesota, protests increased, and Defendants' violence once again escalated. (Motion for TRO, ECF 11, at 9-10.)

## ARGUMENT

A plaintiff whose suit satisfies the requirements of Federal Rule of Civil Procedure ("Rule") 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). To obtain certification, a proposed class must satisfy the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and must fall within one of the three categories described in Rule 23(b). *Id.*; *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651, 653-54 (9th Cir. 2022) (en banc). A party seeking class certification must show compliance with Rule 23 by a preponderance of the evidence. *Id.* at 664. If the proposed class should not be certified as defined, but could be certified with modifications, the Court "should alter the class definition in lieu of rejecting class certification, if possible") (original

---

[21] The White House, *Portland: Fake news Ignores Antifa Violence, Residents' Please for Help*, (Oct. 8, 2025) https://www.whitehouse.gov/articles/2025/10/portland-fake-news-ignores-antifa-violence-residents-pleas-for-help/ (emphasis omitted).
[22] Betsy Hammond, *Trump vows to 'take care' of Portland, calls protests 'insurrection'*, The Oregonian, (Oct. 23, 2025 4:57 PM updated Oct. 24, 2025 10:00 AM) https://www.oregonlive.com/politics/2025/10/trump-vows-to-take-care-of-portland-calls-protests-insurrection.html.

emphasis) 3 *Newberg on Class Actions* §7:27 (5th ed.) (collecting cases); *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 633–34 (9th Cir. 2020).

Plaintiffs move for class certification contemporaneously with their motion for a preliminary injunction to ensure that all affected class members may benefit from interim relief. Class certification is appropriate "[a]t an early practicable time" and "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(A), (C). The Ninth Circuit has expressly approved the use of what is sometimes called "provisional class certification" so that courts may grant the appropriate scope of relief in response to a motion for preliminary injunction. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020) ("We have approved provisional class certification for purposes of preliminary injunction proceedings."); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (affirming class certification under Fed. R. Civ. P. 23(b)(2) in granting motion for preliminary injunction). Numerous courts in this Circuit have granted provisional class certification as part of preliminary injunctions, including policies that violate the First Amendment. *See Thakur v. Trump*, 787 F. Supp. 3d 955, 998 (N.D. Cal. 2025), *stayed in part*, 163 F.4th 1198 (9th Cir. 2025) (provisionally certifying class of plaintiffs "who are likely to succeed on their claims that termination of their funding" pursuant to Executive Orders); *Ruiz v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-9757-MMC, 2026 WL 391924, *2 (N.D. Cal. Feb. 10, 2026) (provisionally certifying class of "[a]ll persons who are now, or in the future will be, in the legal custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at California City Detention Facility"); *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 742 (E.D. Cal. 2025) (certifying classes of persons "who have been or will be subjected to a detentive stop by Border Patrol in this district without [an] individualized assessment of reasonable suspicion" and "who have been arrested or will be arrested in this district by Border Patrol without a warrant" or pre-arrest individualized assessment of flight risk and granting preliminary injunctive relief as to both); *Garro Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 3691938, at *34 (N.D. Cal. Dec. 19, 2025) (certifying class of noncitizens within the jurisdiction of the San Francisco ICE Office with certain characteristics and granting

preliminary injunction preventing re-detention of members of that class); *M-J-M-A and Victor C.G. v. Hermosillo et al.*, No. 6:25-cv-02011-MTK (D. Or. Feb. 27, 2026) (provisionally certifying class of "all persons who…have been or will be arrested in the District of Oregon for alleged immigration violations without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses an escape risk").

## I.    PLAINTIFFS HAVE STANDING TO BRING THIS ACTION FOR THEMSELVES AND THE CLASS

Plaintiffs must establish standing prior to class certification. *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985); *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004). Plaintiffs have already met this requirement for the reasons set forth in their Motion for a Temporary Restraining Order and described in this Court's Order granting that Motion. (ECF 68.)

## II.    THE CLASS PLAINTIFFS SATISFY RULE 23(A)

A party seeking provisional class certification must satisfy the four requirements of Rule 23(a). *Thakur at* 997–98. However, this requirement "is tempered … by the understanding that 'such certifications may be altered or amended before the decision on the merits.'" *Id.* at 998 (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179–80 (D.D.C. 2015)). Rule 23(a) has four requirements: "numerosity," "commonality," "typicality," and "adequacy." *See, e.g., Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349 (2011). Those requirements are easily met.

### A.    The Class is Sufficiently Numerous

Numerosity is satisfied if the class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumptively satisfied when a proposed class comprises forty or more members. *See, e.g., Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372 (D. Or. 1998); *In re Cooper Companies Inc. Sec. Litig.,* 254 F.R.D. 628, 634 (C.D. Cal. 2009). Where, as here, the plaintiff seeks "only injunctive and declaratory relief, the numerosity requirement is relaxed" and plaintiffs need only establish a "reasonable inference[]" from the record that the "number of unknown and future members" makes joinder impractical. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal.

Case 3:25-cv-02170-SI    Document 131    Filed 03/01/26    Page 23 of 41

2017) (quoting *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016)), *aff'd*, 867 F.3d 1093 (9th Cir. 2017).

This element is easily satisfied. On January 31, alone, when Defendants last subjected Class Plaintiffs Jack Dickinson, Laurie Eckman, and Richard Eckman to heavy gassing, there were thousands of other nonviolent protesters present, including families with young children. (*See, e.g.*, Declaration of Mindan Ocon, ECF 59 ("Ocon Decl."), Ex. A (depicting birds eye view of part of a mass crowd on January 31, 2026); *see also* Joni Auden Land et al., *Federal officers use crowd control munitions as demonstrators protest outside Portland ICE building*, OPB (Jan. 31, 2026 9:00 AM updated Feb. 1, 2026 12:48 AM),

https://www.opb.org/article/2026/01/31/labor-against-ice-portland-oregon-immigration-protest/ (estimating crowd in the thousands).) On October 4, when Defendants shot Laurie Eckman in the head with a projectile and hit Richard Eckman's walker while he was trying to get out of harm's way, ████████████████████████████████████████████████ ████████████████████████ Protests at the Portland ICE Building have been sustained for eight months with crowd sizes ranging from 10 to over 1000. *See, e.g.* Defendants' Opposition to Plaintiffs Motion for PI at 7 ("Crowds as large as several thousand have gathered outside the facility."). Evidence in the record, including Defendants' own admissions, establish the number of members of the proposed class far exceeds forty, and thus satisfies Rule 23(a)(1).

**B.    The Proposed Class Meets the Commonality Requirement**

Defendants' conduct with respect to protests at the Portland ICE Building raises "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs seek injunctive and declaratory relief, which "by their very nature often present common questions satisfying Rule 23(a)(2)." Charles Alan Wright & Arthur R. Miller, 7A Fed. Prac. & Proc. Civ. § 1763 (3d ed. 2022).

The commonality requirement is "construed permissively." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). "[T]he existence of shared legal issues with divergent factual predicates is

sufficient." *Id.* at 807 (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012)). In particular, the commonality requirement is "less demanding" than Rule 23(b)(3)'s predominance requirement. *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020). Indeed, Rule 23(a)(2) requires only a single significant issue of law or fact common to a class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (For purposes of Rule 23(a)(2) "[e]ven a single [common] question" will do.) (quotation marks and citation omitted)); *Abdullah v. U.S. Sec. Assoc., Inc*., 731 F.3d 952, 957 (9th Cir. 2013) ("[A]ll that Rule 23(a)(2) requires is 'a single significant question of law or fact.'") (quotation omitted).

Plaintiffs can easily show Defendants' conduct gives rise to common questions of law and fact applicable to all members of the Proposed Class. Substantial evidence shows that under unified command, Defendants have engaged in a pattern and practice of violence directed at nonviolent protesters at the Portland ICE Building that DHS spokespeople have articulated, which DHS agents follow, and DHS has ratified. All Proposed Class members have been subject to this pattern. The existence, legality and chilling effect of that pattern and practice presents questions of fact and law common to all class members that Plaintiffs will prove through common evidence. Resolving this case will thus require the Court to answer at least one common issue of law, namely, whether DHS's "policies, practices or procedures" of excessive force was retaliation against protesters and reporters for the exercise of their First Amendment rights, a question that is "plainly suitable for classwide resolution." *See Gonzalez*, 965 F.3d at 808 (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 47, 58–59 (1991)).

The "'glue' that holds" the class together is Defendants' policy of using excessive force to retaliate against protesters and press at the Portland ICE facility. *See Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). That the specific circumstances surrounding the deployment of this force against individual class members varies does "not preclude a finding of commonality." *See Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 153–54 (N.D. Cal. 2015) (citing *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005); *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (9th

25

Cir. 2022) ("Commonality is necessarily established where there is a class-wide policy to which all class members are subjected.") (citation omitted). Indeed, the Ninth Circuit has held that even where the constitutional validity of a particular law enforcement interaction "is pre-eminently the sort of question which can only be decided in the concrete factual context of [an] individual case"—in that case, a warrantless search—constitutional claims "concerning government policies, practices, or procedures" for determining when to engage in such an interaction "are plainly suitable for classwide resolution." *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020).

The Proposed Class consists of those persons who nonviolently protest and news gather about Defendants outside the Portland ICE Building. DHS's policy and practice of retaliation and concomitant chilling effects therefore "affect all putative class members because the classes themselves are defined as those who have experienced or will experience the effects of the practices and policies." *See Kidd v. Mayorkas*, 343 F.R.D. 428, 439 (C.D. Cal. 2023) (granting certification to class of individuals who have been or will be subject to unconstitutional ICE operations within the Los Angeles Area of Responsibility). Specifically, Proposed Class members share a common injury (chilling of their protest activity due to the risk of physical injury), resulting from a common pattern or practice (violence against Portland ICE Building protesters directed or ratified by a unified command structure), giving rise to at least one common question of law, namely, whether this pattern of violence constitutes unconstitutional retaliation against Class members for the exercise of their First Amendment right to protest at the Portland ICE Building.

### 1.     All Class Members Are at Risk from Defendants' Pattern of Retaliation, which Is Uniformly Chilling Them

Defendants' pattern of officially-sanctioned violence against people who speak out against them places all class members at risk and is uniformly chilling Plaintiffs and Class members from exercising their First Amendment rights. In *Parsons v. Ryan*, the plaintiffs alleged a pattern of deliberate indifference by prison authorities in the form of lack of medical care,

mental health care and inhumane conditions of confinement. 754 F.3d. In rejecting Defendant's argument that plaintiffs failed to satisfy commonality because they had alleged a series of individualized violations, the Ninth Circuit explained that the commonality requirement was satisfied because all plaintiffs were at risk of injuries resulting from defendants' pattern of indifference:

> Here, a proper understanding of the nature of the plaintiffs' claims clarifies the issue of commonality. What all members of the putative class and subclass have in common is their alleged exposure, as a result of specified statewide ADC [Arizona Department of Correction] policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent. As the district court recognized, although a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm.

*Id*. at 678. Although the precise harm experienced by class members may vary depending on whether DHS deploys tear gas, pepper balls, or other types of force, all class members face the same risk of being subjected to Defendants' practice of deploying unnecessary and excessive violence in retaliation to protests and to prevent members of the press from recording or observing those protests. It does not matter whether each individual protester or reporter has "already been harmed by" DHS's policy of retaliation; every class member, "solely by virtue of" seeking to protest at the Portland ICE facility, is "at *substantial risk* of future harm." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 969 (9th Cir. 2019) (emphasis in original).

## 2.     Class Members' Injuries Result from a Pattern, Practice and Policy of Excessive Force Against Protesters

Plaintiffs' injuries were the product of a common practice. The use of excessive force against protesters was directed by a unified command structure that inadequately or improperly trained its officers, then ratified their conduct and offered pretextual justifications for that force. There is "substantial evidence" that the excessive force deployed against class members is

"centralized," and that the animus, lack of training, and ratification of repeated First Amendment violations proceeded from the top of the command structure in Portland. *See Smith v. City of Chicago*, 340 F.R.D. 262, 283 (N.D. Ill. 2021) (granting class certification of persons subject to an investigatory stop by the Chicago Police Department).

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
██████████████████████

      **a.**    **Defendants' Conduct Results from a Unified Command Structure**

████████████████████████████████████████
████████████████████████████████████████
██████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████

b.   **From the Highest Levels of the Command Structure to the Line Agents, Defendants Have Declared Animus**

DHS has exhibited animus toward protesters from the very top of this unified command structure. As discussed above, both Defendant Noem, in her September 29, 2025 memo and onward, asserted a policy of animus against protesters premised in false claims that nonviolent protesters are "anarchists" running the City.[23] ███████████████████████████ ███████████████████████████████████████████████ ███████████████████████████ ███████████████████████████ This includes an extended history of making such false statements about the City of Portland and the protests at the Portland ICE Building itself. *See* Factual Background, *section* D*., above*.

In expedited discovery, Defendants refused to produce evidence related to one of their false social media posts about Portland. In that post on the DHS official social media page, they doctored the video with footage from other jurisdictions, falsely branded Plaintiff Dickinson as a violent offender, and used it to justify their violence against protesters at the Portland ICE Building.[24] Defendants should not be permitted to deny this official endorsement.

These statements evince a policy of repression against protesters at the Portland ICE Building, specifically. *See, e.g.*, *Breathe v. City of Detroit*, 484 F. Supp. 3d 511, 519 (E.D. Mich. 2020), order clarified, No. 20-12363, 2020 WL 8575150 (E.D. Mich. Sept. 16, 2020) (considering public officials' statements in determining whether officers were acting pursuant to a policy or custom); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1025 (9th Cir. 2008) (police chief's statements expressing confidence in individual officer were "indicative of an official policy" that city 'impliedly or tacitly authorized, approved, or encouraged illegal conduct by its police officers'" (citation omitted)); *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168,

---

[23] Shaanth Nanguneri, *ICE promised doxing cases against Portland 'anarchists.' Months later, no charges filed*, Oregon Capital Chronicle, (Oct. 16, 2025 6:00 AM) https://oregoncapitalchronicle.com/2025/10/16/ice-vowed-doxing-charges-against-portland-anarchists-months-later-no-cases-filed/.

[24] Drew Harwell & Joyce Sohyun Lee, *We Checked DHS's Videos of Chaos and Protests. Here's What They Leave Out*, The Washington Post (Oct. 29, 2025),https://www.washingtonpost.com/investigations/2025/10/29/trump-administration-misleading-videos/

1207 (S.D. Cal. 2019) (finding that "alleged instances of government officials' acknowledgement of policy," including statements from President Trump, then-DHS Secretary, and then-Commissioner, combined with "extensive anecdotal allegations" support the existence of an agency policy).

Supervisors at the Portland ICE Building adopted the same characterization of protesters as high-ranked DHS officials in justifying the use of force against members of the proposed class. ████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

### c.    Defendants Have Engaged in a Pattern of Conduct Consistent with Animus

The Defendants' agents' conduct provides further evidence of this top-down policy of animus playing out on the ground. The Ninth Circuit has held that "a policy or custom … may be inferred [from] 'widespread practices or evidence of repeated constitutional violations' and the absence of evidence that [] officers were discharged or reprimanded" for retaliatory actions. *Menotti v. City of Seattle*, 409 F.3d 1113, 1147-48 (9th Cir. 2005) (reversing denial of class certification). Class members' anecdotal experience may suffice to establish such practices and, thus, commonality. *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 719 (E.D. Cal. 2025)

(citing *Wal-Mart*, 564 U.S. at 358) (granting class certification after finding commonality satisfied where Plaintiffs presented anecdotal evidence from class members).

There is extensive evidence of behavior consistent with DHS officials' stated policy of retaliation. As detailed in Plaintiffs' TRO and preliminary injunction papers, Defendants have deployed excessive force, including the use of tear gas, pepper balls, and other projectiles against hundreds of people, including multiple incidents against many of the Class Plaintiffs. Indeed, in *Index Newspapers LLC v. United States Marshals Serv.*, the Ninth Circuit—affirming this Court—held that DHS's pattern of constitutional violations was "exceptionally strong" evidence of retaliatory animus by the agency itself. 977 F.3d 817, 829 (9th Cir. 2020). Further, at least three other Courts have found that Defendants engaged in a pattern of retaliation and repeated constitutional violations. *See Tincher v. Noem*, No. 0:25-cv-04669-KMM-DTS, 2026WL125375, at *19 (D. Minn. Jan. 16, 2026) ("Plaintiffs have established an ongoing, persistent pattern of Defendants' chilling conduct."); *Los Angeles Press Club v. Noem*, 799 F.Supp.3d 1036, 1059-60 (C.D. Cal. 2025) (finding a pattern of conduct that "persisted for weeks and was ongoing") (citation omitted); *Chicago Headline Club v. Noem*, No. 1:25-cv-12173, 2025 WL 3240782, at *73 (N.D. Ill. Nov. 20, 2025) (Plaintiffs' "risk of future injury is not speculative, given the ongoing, sustained pattern of conduct that they have documented over the previous two months, even after the Court entered a TRO, with no sign of stopping.").

        **d.**      **Defendants Train Their Agents to Engage in Excessive Force**

Defendants train their line agents to deploy excessive force in ways that violate their own policies and ratify this conduct by failing to discipline officers who deploy excessive force against protesters.

31



Such training is contrary to Ninth Circuit law, which has held that "a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012). ▮

▮

▮

▮

▮

▮, that lack of training is itself sufficient to establish a common issue of law. "The existence of a pattern of tortious conduct by inadequately trained employees" itself may establish an unlawful policy, even absent the type of top-down animus

established here. *See Long v. Cnty. Of Los Angeles,* 442 F.3d 1178, 1186 (9th Cir. 2006). █████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██

            ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████

                **e.**       **DHS Ratified Its Line Agents' Retaliatory Conduct**

DHS ratified its line agents' unconstitutional conduct by ██████████████████████

████████████████████████████████████████████████████████

██████████████████ This failure itself was a policy or custom. *See Gomez v. Vernon*, 255

F.3d 1118, 1127 (9th Cir. 2001) ("A policy or custom may be found either in an affirmative

proclamation of policy or in the failure of an official to take any remedial steps after the

violations.") (internal quotation omitted). As noted in Plaintiffs' Reply in support of its motion

for a preliminary injunction, Defendants cannot point to any officer who was disciplined for the

hundreds of instances of unnecessary violence now in the record and offer no explanation for

why they attacked Plaintiffs or class members. █████████████████████████

████████████████████████████████████████████████████████

████████████████████████



This conduct, however, violated the written policy Defendants claim to follow. For example, FPS's ████████████████████████████████ ████████████████████████████████████ It provides that "████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████

Defendants' written policies further prohibit virtually all the violence documented in Plaintiffs' preliminary injunction briefing. ████████████████████████

████████████████████████████████████████

[25] ████████████████████████████████████████



Notwithstanding these restrictions, Defendants have repeatedly shot people who were not engaged in active resistance, such as Class Plaintiffs Laurie Eckman, Mason Lake and Hugo Rios. (L. Eckman Decl. ¶ 14-18; Lake Decl. ¶ 10-11, 15, 18, 24; Rios Decl. ¶ 7-9.)  Moreover,

they shot Ms. Eckman in the face (deadly force) and Mr. Lake in the groin, separate violations of their policy. (See also Declaration of Gil Kerlikowske in Support of Motion for TRO (documenting Defendants' violations of their own policies).) Defendants ratified this conduct by failing to discipline any of their officers. (Borden Decl. Ex. 17.)

### 3. Common Questions of Law Permeate the Class's Claims

Taken as a whole, the evidence presents significant proof of a general pattern or practice that establishes commonality. *See Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1165 (9th Cir. 2014) (holding that whether an employer had an unofficial policy of discouraging reporting overtime was one of the common questions that would "drive the answer to the plaintiffs' claims" of violations of labor law); *id*. at 1166 n.5 (noting that the employer's claim that the informal policy did not exist would be "appropriately made at trial or at the summary judgment stage, as it goes to the merits of the plaintiffs' claim"); *In re Whirlpool Corp. Front–Loading Washer Products Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013) (noting that if a defendant has a strong argument against classwide liability, it 'should welcome class certification" as that allows it the opportunity to resolve claims of all class members at once) This pattern and practice raises at least one common issue of law: whether Defendants' conduct amounts to unlawful retaliation under the First Amendment. This question alone satisfies the commonality requirement, which is "construed permissively." *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 474 (C.D. Cal. 2012)

This common issue of law can be resolved with respect to the Class as a whole. The Proposed Class is defined to include those individuals engaged in constitutionally protected activities, *i.e.* political protests in public forums or "newsgathering and reporting activities." *See Index Newspapers*, 977 F.3d at 830; *Garcia*, 150 F.4th at 1230-32. The test to determine whether Defendants' conduct has chilled this speech is "generic and objective." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016). And Plaintiffs may prove Defendants' retaliatory intent by establishing "widespread practices of evidence of repeated constitutional violations and the absence of evidence that [] officers were discharged or reprimanded," *i.e.* precisely the factual

allegations common to the class described above. *Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005). Resolution of the question of whether Defendants' conduct constitutes unlawful retaliation, and the associated common questions of fact are "apt to drive the resolution of the litigation" because it determines whether Defendants' policy violates Plaintiffs' constitutional rights "and whether an injunction directing Defendants to remedy the constitutional violations is appropriate." *Hernandez*, 305 F.R.D. at 153, 155.

###    E.    Class Plaintiffs Satisfy Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the Class." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (superseded by statute on other grounds). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" (citation omitted) *Ellis*, 657 F.3d at 984. The injuries suffered by named plaintiffs need not be "identical with those of the other class members," only "similar," and resulting "from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 869 (overruled on other grounds by *Johnson*, 543 U.S.; *see also Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Typicality is a "permissive" standard; injuries that are "reasonably coextensive" are sufficient to merit certification. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017); *Lozano v. AT & T Wireless Servs., Inc*., 504 F.3d 718, 734 (9th Cir. 2007) (same).

Class Plaintiffs have the exact same legal injury as other members of the class: their First Amendment freedoms have been chilled by Defendants' use of force. They share the class members' interests, which is the cessation of DHS's unlawful violence so that protesters and observers may again exercise these freedoms at the Portland ICE Building. That Representative Plaintiffs' as well as other class members' may vary in the timing and extent of their physical injuries, or their fortitude to continue exercising their First Amendment rights notwithstanding

the ongoing risk of serious injury, does not make Representative Plaintiffs any less

typical. "While the injury affecting individual plaintiffs may differ by degree," Class Plaintiffs

have "alleged injuries typical to the putative class," namely, an infringement of their First

Amendment rights as a result of violence deployed by DHS officers at the Portland ICE

Building. *Anthony v. Rise Servs. Inc.*, No. CV-22-00268-PHX-GMS, 2023 WL 8828241, at *2

(D. Ariz. Dec. 21, 2023) (certifying class of employees who were deprived of hazard pay where

"length and nature of employment" varied across class members). That Proposed Class members

may have protested at different times or been subject to different forms of violence does not

defeat typicality. *See Ellis*, 657 F.3d at 985 ("Differing factual scenarios resulting in a claim of

the same nature as other class members does not defeat typicality."); *see also Gomez v. USF

Reddaway Inc.*, No. LACV1605572JAKFFMX, 2020 WL 10964592, at *10 (C.D. Cal. Mar. 30,

2020) ("typicality does not turn on whether putative class members may have suffered different

types, or even degrees, of injury"); *Powers v. McDonough*, 163 F.4th 1162 (9th Cir. 2025)

(rejecting VA claim that individual fact differences among homeless veterans should preclude a

finding of commonality).

### F.     Plaintiffs and Counsel Are Adequate

Adequacy requires that the representative parties will "fairly and adequately protect the

interests of the Class." Fed. R. Civ. P. 23(a)(4). This factor has two components. First, the

Representative Plaintiffs must not have conflicts of interest with unnamed members of the First

Amendment Class, and second, the Representative Plaintiffs must be able to prosecute the action

vigorously through qualified counsel. *Lerwill v. Inflight Motion Pictures*, 582 F.2d 507, 512 (9th

Cir. 1978).

The Class Plaintiffs have all sworn that they will fairly and adequately represent the class,

and that their interests are aligned with the class. (Dickinson Decl. ¶ 49; L. Eckman Decl. ¶ 36;

R. Eckman Decl. ¶ 29; Lake Decl. ¶ 34; Rios Decl. ¶ 13.) Additionally, because there is no

potential for monetary relief on the First Amendment class's retaliation claim, there is no actual

or potential conflict of interest between the Class Plaintiffs and other class members. "The

named Plaintiffs do not request any relief particular to themselves; they assert only interests that are consistent with those of the subclass." *M-J-M-A and Victor C.G. v. Hermosillo et al.*, No. 6:25-cv-02011-MTK at \*35 (D. Or. Feb. 27, 2026).

Proposed class counsel can fairly and adequately represent the class. *See* Fed. R. Civ. P. 23(a)(4). Proposed class counsel is "qualified, experienced, and capable." Newberg on Class Actions § 3:12. Plaintiffs' proposed class counsel includes a well-established public interest organization with a long history of defending the rights of people exercising their First Amendment rights, the American Civil Liberties Union Foundation of Oregon and four law firms with substantial experience representing classes and bringing civil rights claims. BraunHagey & Borden, Singleton Schreiber LLP, Albies & Stark, and the People's Law Project. Counsel of record have several decades of combined experience in constitutional litigation, class actions, and complex litigation, as described in the contemporaneously filed declarations. *See* Decl. of Matthew Borden; Decl. of Kim Hutchison; Decl. of Kelly Simon; Decl. of Ashlee Albies; Decl. of Jane Moisan. Proposed class counsel also have committed substantial resources to prosecuting this case thus far and will continue to do so in the future. Rule 23(a)(4)'s adequacy requirement is therefore met.

## III.     THE CLASS PLAINTIFFS SATISFY RULE 23(B)(2)

Rule 23(b)(2) provides that claims for injunctive and corresponding declaratory relief should be certified where a Defendant "has acted or refused to act on grounds generally applicable to the class" so that relief is appropriate for the class as a whole. Fed. R. Civ. P. 23(b)(2).  To certify a class under Rule 23(b)(2), the Court need not find "that all members of the class have suffered identical injuries." *Parsons*, 754 F.3d at 688. Rather, "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). That is because the fundamental focus of a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted." *Dukes*, 564 U.S. at 360 (citation omitted). Accordingly, actions "alleging systemic administrative failures of government entities," as here, "are frequently granted class action status under Rule

23(b)(2)." *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp. 2d 602, 628 (S.D.N.Y. 2010) (collecting cases), *aff'd in part, vacated in part on other grounds sub nom. Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012).

The Proposed Class suffers from a generally applicable pattern and practice and seeks indivisible injunctive relief. As described above, DHS has engaged in a persistent and consistent practice of retaliatory violence against protesters at the Portland ICE Building; all Proposed Class members are subject to this same unlawful practice. This unlawful practice gives rise to Proposed Class members constitutional injuries; as the Representative Plaintiffs have described above, the DHS violence that is a hallmark of ███████ has affected all manner of people who have exercised their First Amendment rights nonviolently at the ICE building. Accordingly, "Plaintiffs do not seek individualized relief for each class member, but rather ask for systemic changes consistent with a single overarching constitutional standard that will be applicable to all class members." *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015). Class-wide relief is the only way any single member of the class could enjoy relief from the chilling effects of Defendants' practices, and doing so would serve judicial economy. Certifying a Rule 23(b)(2) class here would be consistent with the Rule's original purpose as a vehicle "for civil rights cases…seeking primarily injunctive or corresponding relief." *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 632 (C.D. Cal. 2007) ("*MIWON*") (citing Newberg on Class Actions, § 4.11 (4th ed.2002)).

## IV. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL UNDER RULE 23(G)

Class counsel must be appointed at the time the class is certified. Fed R. Civ. P. 23(g). In doing so, the Court must consider the work done by counsel in identifying or investigating potential claims in the action; counsel's class action, complex litigation, and subject matter experience, counsel's knowledge of the applicable law, and the resources counsel will commit to represent the class. *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Here the undersigned counsel have expended significant resources in investigating and identifying claims; counsel have filed a detailed Class Action Complaint, submitted numerous evidentiary declarations by the Plaintiffs and class members, secured expert witness testimony, conducted depositions and engaged in discovery disputes, and secured a Temporary Restraining Order.

As detailed in the Declarations of Matthew Borden, Kelly Simon, J. Ashlee Albies, and Jane Moisan filed contemporaneously in support of this Motion, putative class counsel serve as class counsel in other matters now, have extensive relevant experience and are knowledgeable in the applicable law. Undersigned counsel have already demonstrated that they are diligently prosecuting this matter with the urgency it warrants on behalf of the Representative Plaintiffs and respectfully request that they be appointed class counsel on behalf of the Proposed Class.

**V.** █████████████████████████████████████████



## **CONCLUSION**

For the reasons stated above, the court should grant the Representative Plaintiffs Motion to Provisionally Certify the First Amendment Class for the pending Motion for a Preliminary Injunction.

Dated:  February 28, 2026                    By:  ___/s/ Matthew Borden___
                                                        Matthew Borden