BRETT A. SHUMATE
Assistant Attorney General
Civil Division
JOHN BAILEY
Counsel to the Assistant Attorney General
ANDREW I. WARDEN
Assistant Director
BRAD P. ROSENBERG
Special Counsel
ALEX YUN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.:    (202) 616-5084
Andrew.Warden@usdoj.gov
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| JACK DICKINSON, *et al.*,<br><br>              *Plaintiffs*,<br><br>       v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>              *Defendants*. | Case No. 3:25-cv-2170-SI<br><br>**OPPOSITION TO PLAINTIFFS'<br>MOTION FOR CLASS<br>CERTIFICATION** |

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

      I.      The Court Should Deny Plaintiffs' Motion to Certify a Class Because the Putative Class Representatives Plaintiffs Neither Have Standing Nor Have They Demonstrated that Each Class Member Has Article III Standing ................ 5

      II.     Plaintiffs' Motion is Untimely and Inconsistent with *CASA*, and the Briefing Schedule for the Rule 23 Motion Prejudices Defendants........................ 8

      III.   There is No Authority for the Court to Certify a Provisional Class After *CASA* When Plaintiffs Cannot Meet the Standards of Rule 23 ............................ 10

      IV.   Plaintiffs Fail to Satisfy Rule 23(a)'s Requirements ........................................... 11

            A.     Plaintiffs Cannot Establish Numerosity.................................................... 11

            B.     Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality Requirement.......... 13

            C.     Plaintiffs Cannot Satisfy Rule 23(a)'s Typicality Requirement .............. 22

            D.     Plaintiffs Cannot Establish Adequacy ...................................................... 24

      V.     Plaintiffs' Proposed Classes Are Not Maintainable Under Rule 23(b)(2)............ 25

CONCLUSION.................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Ahanchian v. Xenon Pictures, Inc.*,
  624 F.3d 1253 (9th Cir. 2010) ............................................................................ 9

*Ahmad v. City of St. Louis*,
  995 F.3d 635 (8th Cir. 2021) ............................................................................ 26

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................................... 5, 25

*Anti Police-Terror Project v. City of Oakland*,
  No. 20-cv-03866-JCS, 2021 WL 4846958 (N.D. Cal. Oct. 18, 2021) .................................... 27

*Barney v. City of Eugene*,
  20 F. App'x 683 (9th Cir. 2001) ........................................................................ 20

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007), *cert. denied,* 145 S. Ct. 1051 (2025)......................................... 6

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020).............................................................................. 25

*Black Lives Matter D.C. v. United States*,
  775 F. Supp. 3d 241 (D.D.C. 2025) .................................................................. 21, 22

*Black Lives Matter Los Angeles v. City of Los Angeles*,
  113 F.4th 1249 (9th Cir. 2024) .................................................................... *passim*

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010).............................................................................. 26

*Califano v. Yamasaki*,
  442 U.S. 682 (1979)...................................................................................... 4

*Castaneda v. Burger King Corp.*,
  264 F.R.D. 557 (N.D. Cal. 2009)........................................................................ 19

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)...................................................................................... 7

*C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
  867 F.3d 1093 (9th Cir. 2017) ...................................................................... 18, 19

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .................................................................................................. 7

*Don't Shoot Portland v. City of Portland,*
    No. 3:20-CV-00917-HZ, 2022 WL 2700307 (D. Or. July 12, 2022) ........................... 2, 16, 17

*DZ Rsrv. v. Meta Platforms, Inc.,*
    96 F.4th 1223 (9th Cir. 2024) ................................................................................... 6

*Elite Logistics Corp. v. MOL Am., Inc.,*
    No. CV1102952DDPPLAX, 2016 WL 409650 (C.D. Cal. Feb. 2, 2016) ..................... 24

*Gen. Tel. Co. of the Sw. v. Falcon,*
    457 U.S. 147 (1982) ........................................................................................... 4, 9, 13

*Gonzalez v. United States Immigr. & Customs Enf't,*
    975 F.3d 788 (9th Cir. 2020) ................................................................................... 15

*Greater Chautauqua Fed. Credit Union v. Quattrone,*
    No. 22-cv-2753, 2025 WL 869729 ........................................................................... 26

*Healy v. Milliman, Inc.,*
    164 F.4th 701 (9th Cir. 2026) ................................................................................... 6

*Jones v. Rossides,*
    256 F.R.D. 274 (D.D.C. 2009) ................................................................................. 4

*Just Film, Inc. v. Buono,*
    847 F.3d 1108 (9th Cir. 2017) ................................................................................. 22

*Kamar v. RadioShack Corp.,*
    375 F. App'x. 734 (9th Cir. 2010) ........................................................................... 19

*Lacy v. Cook County,*
    897 F.3d 847 (7th Cir. 2018) ................................................................................... 25

*Leifer v. Safeco Ins. Co. of Illinois,*
    No. CV-07-0384-EFS, 2010 WL 11579014 (E.D. Wash. Aug. 10, 2010) .................. 23

*Lith v. Iheartmedia + Ent., Inc.,*
    No. 1:16-CV-066-LJO-SKO, 2016 WL 4000356 (E.D. Cal. July 25, 2016) ............... 19

*Los Angeles Press Club v. Noem,*
    799 F. Supp. 3d 1036 (C.D. Cal. 2025) ................................................................... 7

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983).................................................................................................. 6, 7

*Mattson v. Rocket Mortg., LLC*,
  No. 3:18-CV-00989-YY, 2024 WL 4794710 (D. Or. Sept. 16, 2024), *report and
  recommendation adopted*, No. 3:18-CV-00989-YY, 2024 WL 4794639
  (D. Or. Nov. 14, 2024)............................................................................................. 24

*Mei Chai Ye v. U.S. Dep't of Justice*,
  489 F.3d 517 (2d Cir. 2007)..................................................................................... 25

*Menotti v. City of Seattle*,
  409 F.3d 1113 (9th Cir. 2005) ............................................................................... 7, 8

*Meyer v. Portfolio Recovery Assocs., LLC*,
  707 F.3d 1036 (9th Cir. 2012) ................................................................................. 10

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) ..................................................................................... 6

*Nguyen Da Yen v. Kissinger*,
  70 F.R.D. 656 (N.D. Cal. 1976)................................................................................ 12

*Nieves v. Bartlett*,
  587 U.S. 391 (2019)................................................................................................... 22

*Noem v. Vasquez Perdomo*,
  146 S. Ct. 1 (Sep. 8, 2025)......................................................................................... 6

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)..................................................................................................... 7

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ................................................................................... 15

*Puente v. City of Phoenix*,
  123 F.4th 1035 (9th Cir. 2024) ......................................................................... 21, 22

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
  646 F.3d 347 (6th Cir. 2011) ................................................................................... 19

*Saravia v. Sessions*,
  280 F. Supp. 3d 1168 (N.D. Cal. 2017) ................................................................... 12

*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (S.D. Cal. 1999) ....................................................................... 12, 18

iv

*Takeda v. Turbodyne Technologies, Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................................................. 23

*Tincher v. Noem*,
  164 F.4th 1097 (8th Cir. 2026) ................................................................. 1, 11, 14

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................................................ 6

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ................................................................................ 5, 10, 11, 12

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................................ 6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ *passim*

## INTRODUCTION

There are regular protests at the Portland ICE facility located at 4310 South Macadam Avenue; some are peaceful, and some are not.  During some protests, access to the building doors and driveway has been blocked, so no one can enter or exit.  The building's guard booth has been attacked, and fireworks and other objects have been thrown.  In response, DHS has utilized a variety of different crowd-control devices to address the unique circumstances officers confronted during those particular events to disperse crowds that have become violent or disruptive.

The plaintiffs in this case—five individuals, three protestors and two freelance journalists—assert claims based on the First and Fourth Amendments on behalf of a proposed class to observe and report on government activity at the building.  The Eighth Circuit recently held that an almost identical proposed putative class—composed of "[s]ix individuals who have 'observed' and protested Operation Metro Surge, the ongoing immigration-enforcement effort in the Twin Cities" who "sued on behalf of all persons who do or will in the future record, observe, and/or protest against it"—"ha[d] *no* chance of getting certified." *Tincher v. Noem*, 164 F.4th 1097, 1098-99 (8th Cir. 2026) (per curiam) (citation modified). The evidence showed "observers and protestors engaging in a wide range of conduct, some of it peaceful but much of it not" and "federal agents responding in various ways." *Id.* at 1099. "Even the named plaintiffs' claims involve different conduct, by different officers, at different times, in different places, in response to different behavior." *Id.* Such differences precluded certification under Rule 23, because there were no "'questions of law or fact common to the class' that would allow the court to decide all their claims in 'one stroke,'" *Id.* (quoting Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

1

This Court should reach the same result here and reject Plaintiffs' motion for class certification. First, Plaintiffs' class definitions are inconsistent. In their Motion for Class Certification (ECF No. 131) at 11, they define the class differently in different places as "[a]ll people who have or will nonviolently protest against, or report on DHS activities at the Portland ICE Building," *id.* at 11; "[a]ll people who, since the beginning of Operation Skip Jack, have, *desire to*, or will nonviolently protest against, or report on DHS activities at the Portland ICE Building," *id.* at 13 (emphasis added), and persons who "engage[] in constitutionally protected activities, *i.e.* political protests in public forums or newsgathering and reporting activities." *Id.* at 36.

Second, even if those inconsistencies did not exist, such a class cannot exist under the stringent requirements necessary to certify such a class under Federal Rule of Civil Procedure 23 and the standards set out *Wal-Mart Stores, Inc. v. Dukes*. Plaintiffs' claims relate to specific incidents on specific days when federal officers assessed the specific circumstances to determine the appropriate response—each incident in this case is fact-intensive and incident- and plaintiff-specific and turn on several inquiries, including: Was a given dispersal order justified by security concerns? Was the use of certain crowd-control measures at a certain time and place warranted by imminent threats to the safety of federal agents? Were persons trespassing on government property and did they refuse to leave when ordered to do so? All of these inquiries are relevant to Plaintiffs' claims, and the pertinent facts involve not only the named Plaintiffs' individual conduct, but the actions of other persons present at the Portland ICE facility at the same time. Given the individualized evidence necessary to prove Plaintiffs' retaliation and excessive force claims, Plaintiffs cannot overcome the "uphill challenge" necessary for class certification. *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1260 (9th Cir. 2024). Indeed, another

Judge of this Court denied a similar motion for class certification in a First Amendment protest case for these reasons. *See Don't Shoot Portland v. City of Portland*, No. 3:20-CV-00917-HZ, 2022 WL 2700307 (D. Or. July 12, 2022).

Plaintiffs' proposed classes do not come close to meeting the rigorous requirements for class certification. The class definitions Plaintiffs propose are so sweeping and vague that it would be near-impossible to ascertain class membership at any given time. The disparate claims Plaintiffs assert—which implicate a medley of allegedly unlawful conduct by different federal agents from different federal agencies on different occasions on different dates against different people—lack any semblance of commonality and are thus unsuitable for class-wide resolution. The relief Plaintiffs seek is likewise incompatible with both class certification requirements and statute.

## BACKGROUND

The background for this case is provided in Defendants' (the U.S. Department of Homeland Security ("DHS"), President Donald J. Trump, and Secretary of Homeland Security Kristi Noem, collectively, "Defendants") Opposition to Plaintiffs' Motion for Preliminary Injunction. *See generally* ECF No. 116 at 3-16.

Despite initiating this case on November 21, 2025, Plaintiffs waited until the early morning of Sunday, March 1, 2026, to file a motion for class certification, less than one business day before the preliminary injunction hearing was set to occur. *See* ECF No. 130. This was after Plaintiffs told the Court at a conference on February 27 that they would file their motion "promptly." Transcript of Feb. 27, 2026 Status Conference at 7. Over Defendants' objection, the Court gave Defendants one business day to respond to the motion.

The Motion seeks to certify a class of "[a]ll people who, since the beginning of Operation Skip Jack, have, desire to, or will nonviolently protest against, or report on DHS activities at the

3

Portland ICE Building." Motion at 13.[1] The factual background summarized in that Motion is virtually the same as what Plaintiffs rely on for their motion for preliminary injunction.

## LEGAL STANDARD

The class action "'is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "Class certification is thus not to be granted lightly." *Black Lives Matter*, 113 F.4th at 1258.

To fall within this narrow exception, Plaintiffs must "affirmatively demonstrate" their compliance with each element of Rule 23—"that is, [they] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350; *see also Black Lives Matter*, 113 F.4th at 1258 ("[P]laintiffs must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." (citation omitted)). This is not just a "mere pleading standard." *Id.* "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982), and certification is proper only when the Court is satisfied "after a rigorous analysis" that the plaintiffs have demonstrated that each requirement has been met. *Wal-Mart*, 564 U.S. at 350-51; *see Black Lives Matter*, 113 F.4th at 1258. In determining whether class certification is appropriate, courts may consider evidence outside of the pleadings to determine whether claims or defenses are prone to resolution on a class-wide basis. *See Jones v. Rossides*, 256 F.R.D. 274, 276 (D.D.C. 2009).

---

[1] This proposed class differs from the Amended Complaint, which proposed a class of "all persons who do or will in the future report on, document, observe, or protest against Defendants outside the Portland ICE building" as well as a subclass of persons "reporting on, documenting, or recording Defendants and their official conduct at protests at the Portland ICE Building." Am. Compl. ¶¶ 135-36 (ECF No. 5).

To demonstrate that the Court should certify a class, a plaintiff must *both* satisfy the requirements set out in Rule 23(a) and demonstrate that the class fits within one of the types set out in Rule 23(b). *First*, Plaintiffs must demonstrate that each element of Rule 23(a) is met: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named Plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named Plaintiffs and counsel will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). *Second*, in addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under one of the subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

## ARGUMENT

Plaintiffs' Motion should be denied. To start, Plaintiffs do not have Article III standing themselves to pursue injunctive relief, much less have they demonstrated that every class member has standing. The untimely nature of this Motion and the rushed schedule also independently provide a basis for denial. Further, the fact that the proposed class is a "putative" one does not matter—any class certified must fall within Rule 23's confines, and any attempt to avoid *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), through a relaxed reading of Rule 23 is impermissible. And even if the Court addresses the merits, Plaintiffs cannot demonstrate that they meet any of the four required criteria to certify a class under Rule 23(a), nor have they demonstrated that the class is certifiable under Rule 23(b)(2) even if all other requirements were met.

I.  **The Court Should Deny Plaintiffs' Motion to Certify a Class Because the Putative Class Representatives Plaintiffs Neither Have Standing Nor Have They Demonstrated that Each Class Member Has Article III Standing**

The putative class representatives have not demonstrated standing for injunctive relief. Plaintiffs are five individuals—three protestors and two freelance journalists—who attended

5

protests at the Portland ICE facility at various points since June 2025. Am. Compl. ¶¶ 9-16. Although they assert injuries based on sporadic past incidents dating back to June 2025, standing for prospective relief "does not exist merely because plaintiffs experienced past harm and fear its recurrence." *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 2 (2025) (mem.) (Kavanaugh, J., concurring in the grant of the application for stay). The Supreme Court has consistently held that individual plaintiffs lack standing to seek forward-looking and programmatic relief based on isolated incidents of alleged unlawful behavior by law enforcement. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Here, for the reasons explained in the Opposition to the Motion for Preliminary Injunction, Plaintiffs have failed to demonstrate standing for the injunctive relief that they seek. *See* ECF No. 116 at 17-21.

Plaintiffs have also failed to demonstrate standing in a second way: Plaintiffs have not demonstrated that "[e]very class member [has] Article III standing" as they must because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts C.J., concurring)). "[B]oth named and unnamed members of [proposed] class[es]" must demonstrate standing with the requisite level of proof required at the stage of the litigation. *Healy v. Milliman, Inc.*, 164 F.4th 701, 709 (9th Cir. 2026).[2]

---

[2] Defendants recognize that after *TransUnion*, the Ninth Circuit quoted a pre-*TransUnion* case saying that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *DZ Resrve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239 (9th Cir. 2024) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)), *cert. denied,* 145 S. Ct. 1051 (2025). However, Defendants respectfully maintain that holding is incompatible with *TransUnion*'s clear command that all class members must demonstrate standing, and although the Ninth Circuit did not say specifically that *DZ Reserve* was incompatible with *TransUnion*, the court did separately recognize that *Bates*—the case quoted by *DZ Reserve*—has been "abrogated to the extent they would have permitted unnamed class members to go without demonstrating standing at trial or in any later claims process." *Healy*, 164 F.4th at 709; *see Miller v. Gammie*,

The proposed class indiscriminately sweeps in individuals who lack Article III standing. A class action cannot proceed when many putative members face no actual or imminent injury traceable to Defendants and redressable by judicial relief. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Plaintiffs attempt to define a class encompassing people that are not readily discernable— a class of "[a]ll people who, since the beginning of Operation Skip Jack, have, desire to, or will nonviolently protest against, or report on DHS activities at the Portland ICE Building." Motion at 13. They do not explain how all these proposed class members have standing, especially because there are many people who have attended these protests who cannot argue they were injured because no crowd control munitions were used as well as those who have impeded lawful law enforcement operations or are threats to safety. Isolated anecdotes and speculative fears do not suffice. *See Lyons*, 461 U.S. at 111; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). And absent proof of a concrete, ongoing policy of crowd control measures based purely on permissible conduct—which the Court has not found (ECF No. 68 at 14-15, citing agency policies), and Defendants' evidence refutes—the named Plaintiffs cannot establish standing for themselves, let alone for an undefined population.[3]  *See Los Angeles Press Club v. Noem*, 799 F. Supp. 3d 1036,

---

335 F.3d 889, 893 (9th Cir. 2003) (en banc) (holding that circuit precedent is no longer good law when it is "clearly irreconcilable with the reasoning or theory of intervening higher authority").

[3] In its TRO opinion, the Court concluded there were instances of excessive force for which the relevant agents had not been disciplined; such actions were, as the Court acknowledged, at odds with the relevant government policies. *See* ECF No. 68 at 15 (finding inaction "allows [these officers] and others to continue to use excessive force without correction" and noting that "a policy or custom of retaliation "may be inferred [from] 'widespread practices of evidence of repeated constitutional violations' and the absence of evidence that [] officers were discharged or reprimanded" for retaliatory actions") (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005)). In *Menotti*, the Ninth Circuit was reviewing summary judgment motions, not a TRO granted a week after it was filed. And the subset of the *Menotti* plaintiffs for whom the Ninth Circuit found had alleged sufficient disputed material facts to justify a trial involved explicit evidence of viewpoint discrimination, namely, that Seattle "police refused to allow them to enter

1067 (C.D. Cal. 2025), *granting partial stay pending appeal*, No. 25-5975 (9th Cir. Dec. 18, 2025) (stating that DHS's policies "correctly set out the bounds for the use of less lethal munitions and crowd control weapons").

These cases foreclose Plaintiffs' standing. In granting Plaintiffs' TRO motion, the Court held Plaintiffs had established standing because they had shown a "specific present constitutional injury and a threat of specific future harm" and "continuing, present adverse effects." ECF No. 64 at 8, 9. Defendants respectfully disagree, and Plaintiffs' failure to demonstrate standing as to themselves or their proposed class members precludes certifying a class in this case. Moreover, the relief sought will not necessarily provide relief to each class member because Plaintiffs have not proved that the proposed class members are even injured. The prerequisites of Rule 23 cannot be satisfied by a class containing members who lack Article III injuries.

## II.    Plaintiffs' Motion is Untimely and Inconsistent with *CASA*, and the Briefing Schedule for the Rule 23 Motion Prejudices Defendants

Plaintiffs filed their Complaint three months ago, as a class action. *See* ECF No. 1 (filed November 21, 2025). But their 42-page Rule 23 motion was not filed until the Sunday before the Court began its evidentiary hearing on Plaintiffs' motion for a preliminary injunction on a Monday. *See* ECF No. 131 (filed at 12:15 AM PST on March 1, 2026). Per the Court's order, following a status conference on February 27, 2026, Defendants' opposition is due after the day after Plaintiffs filed their motion on the first day of the Court's preliminary injunction hearing. *See* Transcript of Feb. 27, 2026 Status Conference. Under this schedule, Defendants will not even have opposed the Rule 23 motion before the Court begins its hearing on Plaintiffs' preliminary injunction motion and assesses whether to award non-party specific relief. This schedule is inefficient, inequitable,

---

the restricted zone, even though they came within one of the exceptions to Order No. 3, *unless they removed anti-[World Trade Organization] buttons or sticker*." 409 F.3d at 1147-48 (emphasis added).

and inconsistent with how the Supreme Court has said district courts should approach class actions; "certification is proper only if 'the trial court is satisfied, after a *rigorous* analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*, 564 U.S. at 350-51 (quoting *Falcon*, 457 U.S. at 161) (emphasis added). And the Supreme Court recently highlighted that district courts could not escape the holding in *CASA*—that district courts may not enter "injunctions [that] are broader than necessary to provide complete relief to each plaintiff with standing to sue," 606 U.S. at 861—"circumvent[ing] Rule 23's procedural protections," *id.* at 849; (2025); *see also id.* at 868 (Alito, J., concurring) (emphasizing that district courts cannot escape the Court's holding by certifying classes outside the "discrete scenarios" permitted by Rule 23 and by not "scrupulous[ly] adher[ing] to the rigors of Rule 23."); *see also id.* ("Lax enforcement of the requirements for third-party standing and class certification would create a potentially significant loophole to today's decision. Federal courts should thus be vigilant against such potential abuses of these tools.").

Asked about the difficulties this schedule presents, the Court suggested that Defendants could remedy the problem by agreeing voluntarily to extend its TRO. *See* Transcript of Feb, 27, 2026 at 32 ("And you can have as many additional days as you want, provided that there is a corresponding stipulation to extend the TRO, and so I leave that in your hands."). But per Rule 65(b)(2), a TRO can only apply for 28 days. The Court required Defendants to oppose class certification in one day despite the delay in resolving the question of class certification falling squarely on Plaintiffs, who could have filed such a motion weeks earlier but chose not to move for class certification until more than 36 hours after the last status conference, and less than 36 hours before the start of the preliminary injunction hearing. *Cf. Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 (9th Cir. 2010) (reversing a district court that "effectively doom[ed] [a plaintiff's] case on the impermissible ground that he had violated a local rule" related to timing after the court

refused to extend a deadline to file an opposition to a motion for summary judgment or to move a hearing so the plaintiff would not be prejudiced). The Court should deny the motion on this basis alone because Defendants have not had time to help the Court conduct its rigorous analysis of Rule 23's requirements,[4] and Defendants should not be forced to bear the cost of Plaintiffs' unreasonable delay in moving for class certification.

### III.    There is No Authority for the Court to Certify a Provisional Class After *CASA* When Plaintiffs Cannot Meet the Standards of Rule 23

Class certification cannot be justified as a provisional measure, especially with Plaintiffs' proposed amorphous class here. Instead, any class must be certified through the mechanism established by Congress in Rule 23.

The Court has suggested that there is a lesser standard applicable when a party seeks "provisional" class certification, citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012). The distinction does not matter here, because whether Plaintiffs seek a provisional class or a regular class, it must meet Rule 23's standards, and this one does not. Class-wide preliminary remedies without a judicial finding that the "rigorous" requirements of Rule 23 are satisfied is just another form of impermissible non-party injunctive relief under *CASA*. *See CASA*, 606 U.S. at 849-50. *CASA* precludes universal relief without rigorous adherence to the Rule's requirements, 606 U.S. at 849-50 (emphasizing that district courts should not grant relief to a putative class that has not "satisfied Rule 23's requirements" because such relief is "a class-action workaround"), and a provisional Rule 23 certification cannot fill the gap. *See Wal-Mart*, 564 U.S. at 350-51; *see also CASA*, 606 U.S. at 868 (Alito, J. concurring) ("[D]istrict courts should not view

---

[4]  The Court's willingness to accept supplemental filings from Defendants (Transcript of Feb. 27, 2026 at 28), on the issue of class certification in the form of supplemental briefs does not allay this concern, given the tight timing already required by the Court's consideration of the preliminary injunction motion.

[*CASA*] as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23. Otherwise, the universal injunction will return from the grave under the guise of 'nationwide class relief.'").

Plaintiffs have failed to demonstrate that their proposed class is entitled to the sort of single, indivisible remedy that is necessary for maintaining a class under Rule 23(b)(2). Rule 23 is not a pleading standard; it makes no exception for interim classes justifying interim relief. But it imposes a burden on Plaintiffs to "'affirmatively demonstrate' by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites." *Black Lives Matter*, 113 F.4th at 1258 (quoting *Wal-Mart*, 564 U.S. at 350). If that means preliminary relief may only be party specific until Plaintiffs can meet Rule 23's requirements, so be it; that is the result demanded by *CASA*'s emphasis that complete relief is a ceiling not a floor. *CASA*, 606 U.S. at 853-54. Plaintiffs' assertions that Rule 23's requirements are satisfied here are insufficient.

And in all events, this proposed class—whoever it includes—could never be certified and could never be a proper "provisional" class because "the named plaintiffs' claims involve different conduct, by different officers, at different times, in different places, in response to different behavior." *Tincher*, 164 F.4th at 1099.

## IV. Plaintiffs Fail to Satisfy Rule 23(a)'s Requirements

### A. Plaintiffs Cannot Establish Numerosity

Plaintiffs concede that the precise class size is unknown and cite reports of the number of people reportedly attending protests at the Portland ICE facility. Motion at 24. Given that some persons who were present on these days were not merely engaged in "nonviolently protest[ing] [] or report[ing]", but instead engaged in blocking building access and trespassing, Plaintiffs cannot demonstrate that all of the people attending protests are part of the class. Showing that any

11

proposed class members merit relief, beyond those who have already submitted declarations or are named plaintiffs, would require fact-intensive inquiries into whether or not Defendants' use of crowd control devices that was allegedly unsupported was in fact unsupported. Plaintiffs suggest a class size ranging anywhere from the named representatives to "thousands" to "200" to "forty." Motion at 24. Such speculation cannot satisfy Rule 23(a)(1). *Nguyen v. Kissinger*, 70 F.R.D. 656, 661 (N.D. Cal. 1976). Courts require "some evidence of or reasonably estimate the number of class members" with specificity. *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 680-81 (S.D. Cal. 1999). That indeterminacy underscores Plaintiffs' failure to satisfy their burden of proof.

Further, Plaintiffs are incorrect that the Court can "relax" the numerosity requirement because Plaintiffs seek injunctive relief. Motion at 23-24. The only case cited is a district court opinion, which provides no explanation for why Rule 23(a)(1) can be ignored because a plaintiff seeks to certify a class under Rule 23(b)(2) rather than a separate provision, *see id.* (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017)), and that argument does not align with the text of Rule 23(a) which says a class may be certified "only if" the numerosity requirements is met. Similarly, this appears to be a way to try to use Rule 23(b)(2) to evade the holding of *CASA* that universal injunctions are impermissible when they do more than provide complete relief to the named plaintiffs. *See CASA*, 606 U.S. at 849-50 (holding that courts lack authority to grant injunctive relief that "circumvent[s] Rule 23's procedural protections"); *see id.* at 868 (Alito, J., concurring) ("Lax enforcement of the requirements for third-party standing and class certification would create a potentially significant loophole to today's decision."). The Court should reject Plaintiffs' invitation to ignore this requirement.

**B.  Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality Requirement**

Plaintiffs' proposed class also fails to satisfy Rule 23(a)'s commonality requirement. Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) requires that the putative class's claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. It is *not* enough to show that a complaint "raises common 'questions,'" or that putative class members "have all suffered a violation of the same provision of law." *Id.* at 349-50 (citation omitted). Instead, a party seeking class certification must "affirmatively demonstrate" that *every* class member "suffered the same injury." *Id.* at 350. "What matters to class certification is not the raising of common 'questions'—even in droves— but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (cleaned up) (citation omitted). And "[d]issimilarities within the proposed class" can "impede the generation of common answers." *Id.* (citation omitted). Plaintiffs must provide "significant proof" that a defendant "operated under a general policy of [retaliation]." *Id.* at 353. The facts of *Wal-Mart* demonstrate that proving commonality is a significant burden, as the plaintiffs there "filed some 120 affidavits reporting experiences of discrimination—about 1 for every 12,500 class members," and the Court said that "[e]ven if every single one of these accounts is true, that would not demonstrate that the entire company 'operate[s] under a general policy of discrimination,' which is what respondents must show to certify a companywide class." *Id.* at 358 (*Falcon*, 457 U.S., at 159 n.15).

Plaintiffs fall far short of meeting commonality's demanding standard. To start, the Eighth Circuit recently held that an almost identical proposed putative class—composed of "[s]ix individuals who have 'observed' and protested Operation Metro Surge, the ongoing immigration-enforcement effort in the Twin Cities" who "sued on behalf of all persons who do or will in the

future record, observe, and/or protest against it"—"ha[d] *no* chance of getting certified." *Tincher*, 164 F.4th at 1098-99 (citation modified). The evidence showed "observers and protestors engaging in a wide range of conduct, some of it peaceful but much of it not" and "federal agents responding in various ways." *Id.* at 1099. "Even the named plaintiffs' claims involve different conduct, by different officers, at different times, in different places, in response to different behavior." *Id.* Such differences precluded certification under Rule 23, because there were no "'questions of law or fact common to the class' that would allow the court to decide all their claims in 'one stroke,'" *Id.* (quoting Fed. R. Civ. P. 23(a)(2); *Wal-Mart,* 564 U.S. at 350). Plaintiffs make essentially the same arguments here, asserting that the five proposed class representatives may sue on behalf of "persons who nonviolently protest and news gather about Defendants outside the Portland ICE Building." Motion at 26. And the Court should deny them for the same reason—Plaintiffs' claims cannot be decided in "one stroke" without evaluating the facts of each of their experiences as well as each proposed class member's experiences. *See Black Lives Matter*, 113 F.4th at 1259-61, 1265.

Defendants have also demonstrated they there is no official policy authorizing retaliation in response to purely protected First Amendment activity. *See* ECF Nos. 116-1 (Declaration of Roberto Cantu, Deputy Director in the Federal Protective Service or "FPS") and 116-2 (Declaration of Timothy Sullivan, Chief Patrol Agent in the Special Operations Group, U.S. Customs and Border Protection or "CBP"); *see also* ECF No. 68 at 14-15 (TRO order discussion of agency policies). And Plaintiffs' arguments otherwise are nothing but *ipse dixit* as there is no evidence demonstrating that such a policy exists. Indeed, DHS policies expressly forbid such retaliation and the evidence shows obvious nonretaliatory explanations for Plaintiffs' alleged injuries: namely, that the injuries were the results of officers' efforts to control trespassing on federal property and control disruptive protests.

That pushes Plaintiffs' proposed class action outside the authorities they cite, such as *Gonzalez v. ICE*, because Plaintiffs do not challenge the adequacy of a clear "government polic[y], practice[] or procedure[]" that is suitable for classwide resolution, *see* 975 F.3d 788, 809 (9th Cir. 2020); *see also Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (stating there was commonality because "all members of the putative class and subclass are allegedly exposed to a substantial risk of serious harm by a specified set of centralized [governmental] policies and practices of uniform and statewide application"). "Even if every single one of [Plaintiffs'] accounts is true," those do not demonstrate that there is a "general policy of [excessive force], which is what [Plaintiffs] must show to certify a companywide class." *Wal-Mart*, 564 U.S. at 358.

Plaintiffs notably fail to cite *Black Lives Matter*, the most recent Ninth Circuit case addressing class certification in the context of protesters raising First and Fourth Amendment claims. There, the plaintiffs alleged that the Los Angeles Police Department used excessive force against protesters and restricted their First Amendment rights in the wake of George Floyd's death in 2020. The Ninth Circuit vacated the district court's class certification for failure to adhere to the rigorous commonality analysis under Rule 23, emphasizing the plaintiffs' "fact-specific constitutional claims." 113 F.4th at 1254. The fact that the LAPD "made a command[] decision to employ less-lethal munitions" in response to protests was not sufficient basis to certify a class. *Id.* at 1258 (citation omitted). The court emphasized that the merits of plaintiffs' claims "depends on what force was used, what a particular class member was doing, what other protestors may have been doing, what the officers objectively observed, and a host of other factors." *Id.* at 1260. The court concluded the plaintiffs had not "shown the existence of common evidence that can resolve in 'one stroke' the class members' claims that hinge on a wide array of facts and circumstances." *Id.* (quoting *Wal-Mart*, 564 U.S. at 350). And although the Ninth Circuit remanded the case to the

district court, it noted that "[g]iven the extensive individualized evidence necessary to prove the [plaintiff's] claims, the plaintiffs will face an uphill challenge in showing that common questions exist, let alone predominate over individual ones." *Id.* The same problems permeate this case and warrant denial of Plaintiffs' motion on commonality grounds. *See id.* at 1264 ("Simply put, the plaintiffs have not explained what common evidence can prove the claims of the hundreds, if not thousands, of the members in all the classes who had diverging experiences.").

Plaintiffs also ignore a decision by another Judge of this Court denying class certification in a remarkably similar protest case. *See Don't Shoot Portland v. City of Portland*, No. 3:20-CV-00917-HZ, 2022 WL 2700307 (D. Or. July 12, 2022). The plaintiffs alleged that the City of Portland "has a pattern, practice, and custom of retaliating against protestors because of the content of their speech by using force against crowds indiscriminately, without individualized justification, and when a number of protestors in the crowd were engaged in only passive resistance." Further, the plaintiffs contended that the city "deployed tear gas and other 'less lethal' weapons indiscriminately on large crowds of passively resisting protestors and protestors who were complying with police instructions." The Court concluded that "class certification is not appropriate in this case" because the proposed classes "lack commonality." *Id.* at *10. The court found that resolution of "the First and Fourth Amendment claims are highly fact intensive" because the proposed classes include "thousands of protestors engaged in a range of behaviors who have been subject to both indiscriminate and targeted force by different individuals over more than 100 nights of protests." *Id.* The court's analysis of the commonality problems as to similar First and Fourt Amendment claims in an analogous context to this case demonstrates why Plaintiffs' motion should be denied. *Id.* at *10-18.

Even if there were a common policy, whether and to what extent that policy was followed during the numerous days covered by the allegations would necessarily involve a fact specific inquiry, which also defeats commonality. Plaintiffs' proposed class fails to demonstrate commonality because it does not use objective criteria to establish membership with definite boundaries. The proposed definition is too vague and indefinite because it would, at a minimum, require individual inquiries regarding the conduct of class members and the conduct of others in their vicinity. While Plaintiffs contend their putative class members are on private property only to report on, document, observe, or protest against Defendants outside the Portland ICE building, the evidence shows that some of the persons also located in these areas engaged in trespass, attacked law enforcement officers, and disrupted undisputedly lawful law enforcement activities. *See, e.g.*, Cantu Decl. ¶¶ 6-22 (ECF No. 116-1); ¶ 11 (persons blocking ICE facility driveway and exits); ¶ 12 (persons throwing fireworks and blocking street); ¶ 13 (persons pushing federal officers); ¶ 14 (persons blocking entrances and exits); ¶ 15 (persons blocking ICE facility and pushing officers); ¶¶ 16, 17 (persons trespassing); ¶ 18 (persons blocking ICE facility entrance); ¶ 19 (persons blocking ICE facility driveway); ¶ 20 (persons attacking FPS guard shack and throwing objects); ¶ 21 (persons blocking ICE facility driveway, doors, and attacking facility front gate). To determine the members of the proposed class, a fact finding hearing would be necessary for every single proposed class member to establish whether they were in fact merely observing and recording activity, as opposed to, as the Cantu Declaration demonstrates, engaging in conduct that threatens federal officers and property. So too would Defendants need to know the class members' state of mind (as Plaintiffs class definition suggests), *i.e.*, do they only "desire" to observe and report?  Or to trespass or block access to and from the ICE facility? Or are they in the vicinity of a person who plans to engage in such conduct? A class definition which depends on

this kind of subjective factor is inconsistent with Rule 23, and Plaintiffs' plainly does. *See* Motion at 11 (defining class as "[a]ll people who, since the beginning of Operation Skip Jack, have, desire to, or will nonviolently protest against, or report on DHS activities at the Portland ICE Building"). If class membership "is contingent on the prospective member's state of mind," the class cannot be certified. *See Schwartz*, 183 F.R.D. at 679-80 (citation omitted); *C.F. v. Lashway*, 2017 WL 2574010 (W.D. Wash. June 14, 2017) (noting the word "'desire' does not allow the Court to determine, based on objective criteria, who is included in the proposed class"). Such individualized fact-finding analysis is inappropriate in the class context, especially in the case of a Rule 23(b) class, which requires common answers that can apply to the class as a whole.

Plaintiffs fail to demonstrate that the factual differences among putative members—involving different days with different crowd activity accompanied by different responses based on the facts at the time—are immaterial. *See Black Lives Matter*, 113 F.4th at 1259-60.  In these circumstances, class certification must be denied because Plaintiffs have not demonstrated a "common offending policy" and proving liability for each class member would require separate mini-trials. *See C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1104 (9th Cir. 2017) (upholding denial of class certification where, the district court found a lack of commonality where defendant did not have a "'common offending policy,' and 'proving that each of the 142 hotels violated the ADA would require 142 trials within a trial'"). As described above, the putative class is based on allegations about different days, different situations, and different conduct both by those protesting at the Portland ICE facility and those charged with its security. In this context, commonality does not exist, and the class certification should be denied.

And even though the Motion makes clear Plaintiffs did not experience the same harm, as each Plaintiff describes different harm that occurred on different occasions in different ways, *see*

Motion at 14-15, even making allegations that all proposed class members experienced the same harm does not suffice. *C.R. Educ.*, 867 F.3d at 1104 ("While commonality may be established based on a pattern of officially sanctioned illegal behavior, merely pointing to a pattern of harm, untethered to the defendant's conduct, is insufficient." (citation modified)). When factual differences are material, certification should be denied. *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 568 (N.D. Cal. 2009) (denying class certification where Plaintiffs' commonality theory required "proving that each of the 92 stores were (and are) in violation of the disability laws in the first place," which would require "92 trials within a trial" about each specific location).

Narrowing Plaintiffs' proposed classes to those who have allegedly suffered *a* constitutional violation (versus none at all), or to those who have allegedly suffered the same type of violation (*e.g.*, First Amendment retaliation) would similarly not fix Plaintiffs' commonality problem. *See Wal-Mart*, 564 U.S. at 350 (explaining that commonality requires more than class members "hav[ing] all suffered a violation of the same provision of law"); *Kamar v. RadioShack Corp.*, 375 F. App'x. 734, 736 (9th Cir. 2010) (certification unwarranted where "class itself is defined in a way that precludes membership unless the liability of the defendant is established" And referring to such class definitions as a "fail-safe class"). "Under a fail-safe class definition 'either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment.'" *Lith v. Iheartmedia + Ent., Inc.*, No. 1:16-CV-066-LJO-SKO, 2016 WL 4000356, at *4 (E.D. Cal. July 25, 2016) (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)). The Ninth Circuit has described fail-safe classes as "palpably unfair" to defendants and "unmanageable." *Kamar*, 375 F. App'x. at 736.

Determining, for instance, whether a particular plaintiff was retaliated against for First Amendment protected activities, as opposed to unlawful behavior or being in the proximity of

other persons who are engaged in unlawful behavior, is inextricably fact-intensive and requires consideration of a defendant's intentions and a plaintiff's conduct. *See, e.g.*, *Barney v. City of Eugene*, 20 F. App'x 683, 685 (9th Cir. 2001) ("[T]o establish a constitutional violation, [a plaintiff] must demonstrate that the defendants intended to interfere with her First Amendment rights."). Here, Plaintiffs allege that Defendants have employed various crowd-control measures in retaliation for Plaintiffs having engaged in certain First Amendment activity. *See* Motion at 27 (alleging "every class member, 'solely by virtue of' seeking to protest at the Portland ICE facility, is 'at substantial risk of future harm'"). Yet, the Court has acknowledged that the use of crowd control measures is not categorically unlawful. *See* TRO Order at 68 (permitting various crowd control devices when "the *specific* target of such a weapon or device poses an imminent threat of physical harm to a law enforcement officer or other person" (emphasis added)). Thus, whether a particular use of tear gas was retaliatory (and therefore possibly violative of the First Amendment) or was instead prompted by justifiable safety concerns (and therefore lawful) necessarily depends on the unique circumstances of a given incident. So too for allegations of unlawful trespass or refusal to obey a dispersal order. *See Barney*, 20 F. App'x at 685 (upholding district court's grant of summary judgment where evidence showed that police used tear gas in circumstances where "protesters were allowed to conduct their activities peacefully for several hours before the crowd refused to move back when ordered to do so for their safety. . . [and] protesters were warned repeatedly to clear the street or tear gas would be deployed, and there is no dispute that a small group of the crowd became violent.").

Finally, Plaintiffs' invocation of an alleged "policy of repression" rooted in alleged "exhibited animus toward protesters" is a red herring. *See* Motion at 29-31. That does nothing to explain how there are common answers to address all class members alleged harm and how that

harm can be remedied in "one stroke." *See Wal-Mart*, 564 U.S. at 350. Even if such animus existed (it does not), officers' different responses on different days cannot be explained by a general label that Defendants acted with "animus." Even the selected snippets cited by Plaintiffs from different reports written by different officers demonstrates that officers responded differently to different factual situations. *See* Motion at 30. Thus, there would still need to be a mini-trial for each instance where this alleged "policy of repression" was invoked to determine whether a class member's rights were violated. Besides, the Motion is self-contradictory on this subject, as Plaintiffs simultaneously argue that there was a "policy of repression against protesters," *id.* at 29, while simultaneously arguing that one specific officer failed to comply with Defendants' policies and perhaps was not adequately trained even if no "explicit instruction" existed. *See id.* at 32, 34-35. This cherry-picking of the evidence demonstrates that no common answers can be found—instead, the Court will have to engage in mini-trials about each day of activity and each specific proposed class member just to determine whether any harm exists in the first place. *Cf. Black Lives Matter D.C. v. United States*, 775 F. Supp. 3d 241, 271 (D.D.C. 2025) (denying class certification as to the commonality requirement because the Plaintiffs' "First Amendment retaliation claims will require an analysis of the injuring officer's subjective motive with respect to each class member").

*    *    *

Plaintiffs' alleged First Amendment claims involve specific and individualized questions of fact and law unique to each incident at issue—all of which undermines commonality. *Cf. Puente v. City of Phoenix*, 123 F.4th 1035, 1063–64 (9th Cir. 2024) (declining to conclude that "later-occurring conduct by individual officers, even if distasteful or immature," when evaluated "*in* . .

21

. *all of the circumstances of this case*," were actions "undertaken because of hostility to the protesters' views.) (emphasis added).[5]

## C.  Plaintiffs Cannot Satisfy Rule 23(a)'s Typicality Requirement

The lack of commonality amongst the disparate members of Plaintiffs' proposed classes similarly prevents those classes from satisfying Rule 23(a)'s typicality requirement. *See Black Lives Matter D.C.*, 775 F. Supp. 3d at 268 (noting that "[c]ommonality and typicality often overlap because both serve as guideposts to determine whether a class action is practical and whether the representative plaintiffs' claims are sufficiently interrelated with the class claims to protect absent class members" (citation omitted)). Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that the claims of the named plaintiffs be "reasonably coextensive with those of absent class members." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). Typicality involves "an inquiry whether the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class

---

[5] The Ninth Circuit recently noted the difficulties in applying the First Amendment retaliation standard to these fluid crowd control situations. *See Puente*, 123 F.4th at 1063 ("There are strong arguments that a conventional First Amendment retaliation framework, with its focus on subjective causation, is a poor fit for the crowd-dispersal context, because it adds little to the objective clear-and-present-danger analysis and will often raise "particularly difficult" causation questions."). The *Puente* court also cited *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) (relying upon similar concerns in holding that First Amendment retaliatory arrest claims require a showing of a lack of objective probable cause). *Puente*, 123 F.4th at 1063. Here, this Court's single-sentence distinction that *Puente* is irrelevant to the present case because it involved a single interaction with protesters and police in Phoenix is erroneous. The number and frequency of protests at the Portland ICE building only reinforce the reasonableness of Defendants' actions. There are near-constant protests at the Portland ICE facility, some of which have become violent, and involved trespassing and refusals to obey lawful dispersal orders. But Defendants have only employed crowd control devices on some occasions, when their use was warranted. None of the named Plaintiffs says it has happened every time they have been at the Portland ICE facility.

members will perforce be based." *Takeda v. Turbodyne Technologies, Inc.*, 67 F. Supp. 2d 1129, 1136-37 (C.D. Cal. 1999). The typicality requirement is not met merely because a named plaintiff experienced the alleged unlawful conduct—instead, there must be evidence to infer that the alleged unlawful act is "typical" of the defendant's practices and not subject to discretionary decisions. *See Wal-Mart*, 564 U.S. at 357.

Here, Plaintiffs cannot demonstrate that their claims are "typical" of proposed class members. Each named Plaintiff alleges they were subjected to different uses of force under different circumstances. *Compare, e.g.*, ECF No. 26 ¶¶ 10-11, 22-31 (Plaintiff Dickinson declaring that he was "shoved" after standing on the public sidewalk near the driveway one day in August 2025, subjected to pepper balls, and arrested later in January 2026 after sitting on the side of the driveway), *with* ECF No. 30 ¶ 24 (Plaintiff Mason declaring that he was sprayed with mace, which damaged his equipment). Plaintiffs discount these differences by saying broadly that they and other members of the class "have the exact same legal injury . . . : their First Amendment freedoms have been chilled by Defendants' use of force." Motion at 37. But that puts the cart before the horse— the different factual scenarios demonstrate that the Court will first have to determine whether any of Defendants' responses violated the First Amendment and then determine whether those factual scenarios are typical of what *every* member of the class experienced.

And Plaintiffs cannot avoid the fact that many people have been able to protest, observe, and record activities at the Portland ICE facility without issue. The class representatives here—all of whom claim that *their* rights have been violated by Defendants' conduct in some manner, *see id.* at 13-14—are thus seeking to bring claims on behalf of many putative class members who have not been subjected to any allegedly unlawful conduct at all and likely never will be. *See Leifer v. Safeco Ins. Co. of Illinois,* No. CV-07-0384-EFS, 2010 WL 11579014, at *6 (E.D. Wash. Aug. 10,

2010*)* (no typicality where "Plaintiffs' reliance and resulting injury are not typical with the proposed class members' reliance and injury"). Plaintiffs cannot establish a policy, or even a pattern or practice, so the fact that some putative class members may have suffered no injury or different injuries defeats their claim for typicality. *See Elite Logistics Corp. v. MOL Am., Inc.*, No. CV1102952DDPPLAX, 2016 WL 409650, at *4 (C.D. Cal. Feb. 2, 2016) ("particularities of [class representative's] interactions with defendant and [others]" render class representative's "claims, and the defenses to them, atypical of those of the class. Class certification should not be granted if there is a danger that defenses unique to the putative class representative will become a focus of the litigation."); *Mattson v. Rocket Mortg., LLC*, No. 3:18-CV-00989-YY, 2024 WL 4794710, at *3 (D. Or. Sept. 16, 2024) (no typicality or commonality where "individual questions concerning whether [the plaintiff] is a residential subscriber subject to the TCPA's protections still risk becoming a focus of this litigation and thus class certification is inappropriate"), *report and recommendation adopted*, No. 3:18-CV-00989-YY, 2024 WL 4794639 (D. Or. Nov. 14, 2024).

### D.  Plaintiffs Cannot Establish Adequacy

Plaintiffs also cannot demonstrate that they are adequate representatives for the class. Each declaration recites, in nearly identical language and formatting, the same boilerplate statement: that the declarant "understand[s]" that he or she is a plaintiff in a class action and that he or she will not "take any actions as a class representative that are for my sole benefit." *See* Decl. of Laurie Eckman, ECF No. 13 ¶ 36; Decl. of Richard Eckman, ECF No. 14 ¶ 29; Decl. of Hugo Rios, ECF No. 20 ¶ 13; Dickinson Decl. ¶ 49; Lake Decl. ¶ 34. Yet none explains what a class representative's responsibilities actually entail. Separately, the uniformity of these submissions calls into question whether the declarants themselves comprehend their asserted obligations. In such circumstances, the reliability of the declarations cannot be adequately assessed. *Cf. Mei Chai Ye v.*

*U.S. Dep't of Justice*, 489 F.3d 517, 524 (2d Cir. 2007) (noting that "striking similarities between affidavits are an indication that the statements are 'canned'"). Courts have rejected adequacy where representatives do not comprehend their role. *Amchem Prods.*, 521 U.S. at 626-27.

## V.     Plaintiffs' Proposed Classes Are Not Maintainable Under Rule 23(b)(2)

Even if Plaintiffs could demonstrate they met all of Rule 23(a)'s requirements, the Motion can be independently denied because Plaintiffs' proposed class is not maintainable under Rule 23(b)(2). *See Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2018) ("[T]he plaintiffs must demonstrate that one of the conditions of Rule 23(b) is met."). Rule 23(b)(2) permits a court to certify a case for class-action treatment if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S at 360 (citation omitted). Rule 23(b)(2) thus "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.*

Where, as here, the proposed class includes individuals who have not been subjected to the challenged conduct and face no imminent risk of it, the structural requirement of indivisible relief is not met. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020); *Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 22-cv-2753, 2025 WL 869729, at*12 (S.D.N.Y. Mar. 20, 2025); *Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010).

That presents an impenetrable obstacle for Plaintiffs here because their proposed class would encompass (1) putative class members who assert a variety of First Amendment injuries caused by a wide array of allegedly unlawful conduct; (2) members who assert only some of those injuries, or who were exposed to only a subset of that allegedly unlawful conduct; and (3) members who protested, observed, recorded, or reported on the Portland ICE Facility without any basis to allege injury. In other words, Plaintiffs "attempt to aggregate a plethora of discrete claims" of constitutional injury "into one super-claim" against Defendants "without demonstrating that the class members have been harmed in essentially the same way." *Ahmad v. City of St. Louis*, 995 F.3d 635, 644 (8th Cir. 2021) (cleaned up) (explaining that such an assorted class is "deficient" under Rule 23(b)(2)). Consequently, because the individual class members within each group were harmed differently (or not at all), each class member "would be entitled to a *different* injunction or declaratory judgment against" Defendants (or no relief whatsoever). *Wal-Mart*, 564 U.S. at 360; *see Ahmad*, 995 F.3d at 644 ("When liability does not apply uniformly to the entire class, the relief sought becomes highly individualized, and the cohesiveness necessary to proceed as a class under Rule 23(b)(2) is lacking."). And the fact that no single, indivisible injunction could properly provide relief to Plaintiffs' proposed classes "as a whole" is enough to preclude certification under Rule 23(b)(2).

The Ninth Circuit's decision in *Black Lives Matter* further supports denial of the Rule 23(b)(2) class here. The court vacated a similarly broad protester class seeking injunctive relief because it was "unclear" whether plaintiffs could "identify what questions are common to the class and how the plaintiffs will present evidence about those questions on a class-wide basis." 113 F. 4th at 1265. The Ninth Circuit distinguished other situations where district courts have certified protest classes, explaining that those cases "involved single protests where all class members

26

brought identical claims." *Id.* at 1263, 1265 (emphasizing that those protests occurred "at a single location on a single night"). By contrast, the court warned against certifying classes involving "sprawling classes" who allege "a broad range of injuries" based on "different protests, at different times." *Id.* at 1263. That describes this case to a tee. Indeed, the Ninth Circuit favorably cited several district court opinions, including *Don't Shoot Portland*, that denied certification of Rule 23(b)(2) First Amendment protest classes for these same reasons. *See id.* at 1266 (citing *Don't Shoot Portland* and *Anti Police-Terror Project v. City of Oakland*, No. 20-cv-03866-JCS, 2021 WL 4846958 (N.D. Cal. Oct. 18, 2021).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for class certification.

Date:  March 2, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOHN BAILEY
Counsel to the Assistant Attorney General

*/s/ Andrew I. Warden*
ANDREW I. WARDEN (IN Bar 23840-49)
Assistant Director
BRAD P. ROSENBERG
Special Counsel
ALEX YUN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.:    (202) 616-5084
Andrew.warden@usdoj.gov

*Attorneys for Defendants*