**Kelly Simon**, OSB No. 154213
ksimon@aclu-or.org
**Eri Andriola**, OSB No. 246500
eandriola@aclu-or.org
ACLU FOUNDATION OF OREGON
PO Box 40585
Portland, OR 97240

**J. Ashlee Albies**, OSB No. 051846
ashlee@albiesstark.com
ALBIES & STARK LLC
1500 SW First Ave., Ste. 1000
Portland OR 97201
Facsimile: 503.427.9292

**Jane L Moisan**, OSB No. 181864
jane@pdxplp.com
PEOPLE'S LAW PROJECT
1500 SW First Ave., Ste. 1000
Portland OR 97201
Facsimile: 503.558.2025

**Matthew Borden**
borden@braunhagey.com
**Hadley Rood**
hrood@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

**Kimberly S. Hutchison**
khutchison@singletonschreiber.com
**Liam Barrett**
lbarrett@singletonschreiber.com
**Taylor Marrinan**
tmarrinan@singletonschreiber.com
SINGLETON SCHREIBER LLP
591 Camino de la Reina, Suite 1025

PAGE 1 – PLAINTIFFS REPLY ISO MOTION FOR PROVISIONAL CLASS CERTIFICATION

San Diego, CA 92108
Telephone: (619) 771-3473
Facsimile: (619) 255-1515

**Zach Pangares**
zpangares@singletonschreiber.com
SINGLETON SCHREIBER LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Telephone: (619) 486-1608
Facsimile: (619) 255-1515

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(PORTLAND DIVISION)

| | |
|---|---|
| Jack Dickinson, a.k.a. "the Portland Chicken," Laurie Eckman, Richard Eckman, Mason Lake, and Hugo Rios, *on behalf of themselves and those similarly situated,*<br>        Plaintiffs,<br>v.<br>DONALD J. TRUMP, President of the United States, in his official capacity; KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; U.S. Department of Homeland Security.<br>        Defendants. | Civil No. 3:25-cv-02170-SI<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PROVISIONAL CLASS CERTIFICATION** |

## **INTRODUCTION**

      In both their moving papers and at the evidentiary hearing where Defendants have

declined to put on any witnesses, Plaintiffs have provided an expansive and largely unrebutted

PAGE 2 – PLAINTIFFS REPLY ISO MOTION FOR PROVISIONAL CLASS
CERTIFICATION

record of Defendants' retaliation against Plaintiffs and the putative class. Defendants' opposition mainly comprises incorrect legal arguments that do not militate against provisionally certifying a class under Rule 23(b)(2).

Defendants argue that they used different crowd control devices under different circumstances (Opp. at 1), but this does refute why a class should be certified. Like the plaintiffs in Parsons, each of whom faced a risk of mistreatment due to the defendants' unconstitutional pattern, practice and policy of deliberate indifference, class members here all face a similar risk—that if they exercise their First Amendment rights, they will be subjected to chilling law enforcement tactics.

The legal arguments Defendants make also fail.

First, Defendants repeat the same standing arguments that this Court has already rejected multiple times. (Opp. at 5-8.) They still fail for the same reasons as before.

Second, Defendants argue that *Dukes* and a five-page stay order from the Eighth Circuit in *Tincher v. Noem* means that a class cannot be certified. (Opp. at 13-14.) But in that case, the putative class as potentially as broad as the entire State of Minnesota. Here, the relief is limited to the Portland ICE Building, run under a unified command structure, unless the balkanized management of Walmart that prevented class certification in *Dukes*.

Third, Defendants argue that *Black Lives Matter L.A.*, somehow controls (Opp. at 2-3), but that case was remanded for findings on the question of commonality.

Fourth, Defendants argue that *Don't Shoot Portland* militates against class certification. (Opp. at 3.) But that case, too, is also inapposite. In that case, the putative class included individuals who had engaged in wrongful acts. The class here does not include such individuals. The court also found difficulties due to many agencies being involved. But as noted above, this case involves a unified command structure.

Fifth, Defendants argue the motion is untimely because Plaintiffs delayed in bringing it. (Opp. at 8-10.) This argument fails for many reasons. Most significantly, any delay was caused

PAGE 3 – PLAINTIFFS REPLY ISO MOTION FOR PROVISIONAL CLASS CERTIFICATION

by Defendants' refusal to produce documents and to produce the supervisors who controlled and ratified the policy, pattern and practice of conduct at issue until just a few days ago. Plaintiffs only got transcripts for individuals whose depositions they have been asking for the last 28 days just today. Further the evidence to support the pattern of retaliation that merits certifying a class is the same evidence that supports a finding of retaliatory animus for Plaintiffs' underlying claims. Defendants have had a chance to marshal evidence in response, bring witness (which they did not do) and cross-examine the witnesses testifying against them. The Court granted them the ability to take more time if they would stipulate to extend the TRO, but they elected not to avail themselves of the opportunity.

Finally, the remainder of Defendants' arguments are makeweight. Their own evidence shows that numerosity is met. And Plaintiffs and their counsel have more than amply proven that they will adequately represent the class.

## **ARGUMENT**

**I.      DEFENDANTS' STANDING ARGUMENTS HAVE ALREADY BEEN LITIGATED AND DECIDED IN PLAINTIFFS' FAVOR**

Defendants raise the same standing arguments that this Court already has rejected. They fail for the same reasons. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *DZ Resrve v. Meta Platforms, Inc*., 96 F.4th 1223, 1239 (9th Cir. 2024) (quoting *Bates v. United Parcel Serv., Inc*., 511 F.3d 974, 985 (9th Cir. 2007)), cert. denied, 145 S. Ct. 1051 (2025). As the Court decided in its Opinion and Order Granting Temporary Restraining Order, Plaintiffs have standing to pursue their claims. Dkt. No. 68 at 8 (citing *Garcia v. Cnty. Of Alameda*, 150 F.4th 1224, 1229 (9th Cir. 2025)). As Plaintiffs have already argued in their Motion for a Preliminary Injunction, Plaintiffs need not continually reprove their standing while the controversy remains. *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1139 (D. Or. 2020), *aff'd Index Newspapers v. United States Marshal Srvs*., 977 F.3d 817, 825–27 (9th Cir. 2020). Regardless, Defendants' conduct still forces Plaintiffs to change their behavior and stifle their constitutionally protected speech, as discussed throughout.

## II. DEFENDANTS CAUSED THEIR OWN TIMELINESS PROBLEMS

Defendants caused any issue regarding timing by delaying discovery. To date, Defendants have refused to produce the bulk of the documents Plaintiffs requested. For example, they have not produced any communications from their line agents, nothing from their internal chat groups, no communications up the chain of command, and nothing about the false video their leadership posted and approved on the official DHS social media account. On January 29, 2026, Plaintiffs made clear that they needed to conduct discovery in order to support their ability to file a Motion for Class Certification. See, e.g., Plaintiffs' Motion for Expedited Discovery, Dkt. 41 at 7 ("Plaintiffs should be given the opportunity to access evidence that would support a showing that Plaintiffs will be able to succeed on a Motion for Class Certification to refute any arguments Defendants may make about the scope of relief."); accord Transcripts from Feb. 2, 2026 at p. 9, lines 13 – 18 ("[I]f we could get responses to [interrogatories] within five days, I think that would give us enough time to get answers and have materials that we can use both in our TRO and in our class cert. motion, which we intend to file as soon as we get some limited discovery."). As such, Defendants have had ample notice that this motion was coming and have had access to the relevant facts for a longer period of time than Plaintiffs. For example, Plaintiffs were not able to complete the deposition testimony of Operation Skip Jack's leadership until Friday, February 27, 2026 (and received the transcript just today). Defendants had two days to file their opposition, and Plaintiffs have had less than a day to reply. That is hardly prejudicial to Defendants who do not carry the burden of proof on this motion.

## III. DEFENDANTS ARGUMENTS THAT PLAINTIFFS CANNOT SATISFY ALL FOUR OF RULE 23(A)'S REQUIREMENTS ARE UNAVAILING

Contrary to Defendants' arguments, Plaintiffs have not argued that provisional class certification has a lowered standard, notwithstanding Defendants' refusal to produce evidence.[1]

---

[1] Defendants argue that provisional class certification is no longer available after *CASA v. Trump*, insofar as it circumvents Rule 23. Defs' Opp'n at Nobody has suggested that Rule 23 should be circumvented. To the contrary, Plaintiffs argue that Rule 23's requirements are met.

PAGE 5 – PLAINTIFFS REPLY ISO MOTION FOR PROVISIONAL CLASS CERTIFICATION

Given the evidence now in the record, however, Plaintiffs satisfy the rigorous analysis that requires a showing that Rule 23's requirements are met by a preponderance of the evidence. (Mot. at 21) ("A party seeking class certification must show compliance with Rule 23 by a preponderance of the evidence."). Defendants' arguments as to each of the elements is incorrect.

### A.     Numerosity

Defendants argue Plaintiffs cannot establish numerosity and are attempting to circumvent *CASA* v. *Trump*. (Opp. at 11.) That is not the case. Numerosity is satisfied where the class description sufficiently "identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself as having a right to recover based on that description." *Id*. (internal citations omitted). The standard Plaintiffs must meet is that a putative class may be certified only if it "is so numerous that joinder of all members is impracticable,: Fed. R. Civ. P. For Rule 23(a)(1), "impracticability does not mean impossibility," but rather "only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964) (quotation omitted). It would be impractical for every individual with a First Amendment retaliation claim to find counsel, amass the same pile of evidence that Plaintiffs have done here, and present it to a court many times over to prove the same pattern of conduct that is "exceptionally strong" evidence of Defendants retaliatory motive. This is precisely the type of case that Rule 23 was designed to address.

### B.     Commonality

Defendants largely ignore the cases cited in the moving papers, and claim that they do not apply because Plaintiffs have not shown a policy or pattern of retaliation. (Opp. at 15.) The evidence now in the record, which Defendants make no effort to address in their opposition, tells a different story. Defendants cite no evidence in opposition to Plaintiffs' motion. The Court has now heard most of the evidence supporting Plaintiffs' motion and will be able to judge these issues, and make findings based on what is actually now in the record.

PAGE 6 – PLAINTIFFS REPLY ISO MOTION FOR PROVISIONAL CLASS CERTIFICATION

The cases Defendants rely on also do not prevent class certification. Defendants rely on four main cases in their opposition *Dukes*, *Tincher*, *Black Lives Matter*, and *Don't Shoot Portland*. Defendants' overread these cases, and they are inapposite in light of what the evidence has shown. In particular, Plaintiffs' have shown a unified command structure, at one facility, that is directing the same pattern of events, infected by the same animus, and that predictably results in chilling the rights of peaceful protesters.

In *Dukes*, the Supreme Court found a lack of commonality in a nationwide gender discrimination class because employment decisions were made by a large number of different managers across the country. That reasoning does not apply here to a command structure, where the "buck stops" with one individual. The same is true for *Tincher*, where the district court issued an injunction affecting all DHS operations in the State of Minnesota. The Eighth Circuit's stay order is not even persuasive for the same reason—it did not involve the facts here where there is unified command over policing one discrete building.

*Black Lives Matter L.A.* is inapposite for different reasons. The Court there made no decision about commonality, other than remanding the case for the district court to make a finding about whether the requirement had been satisfied. The portions of the opinion cited by Defendants pertained to 23(b)(3) classes. The Court's citation to district court decisions denying class certification in cases arising out of the 2020 George Floyd protests does not counsel against class certification here. *See Black Lives Matter L.A.*, 113 F.4th at 1266 (citing *Anti-Police Terror Project v. City of Oakland*, No. 20-cv-03866-JCS, 2021 WL 4846958, at *8 (N.D. Cal. Oct. 18, 2021) and *Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917-HZ, 2022 WL 2700307, at *11 (D. Or. July 12, 2022). Both of those cases are inapposite because the class definition in both *Anti-Police Terror Project* and *Don't Shoot Portland*, broadly swept in protesters who participated both nonviolently or otherwise. Plaintiffs' proposed class only applies to people who "nonviolently" exercise their First Amendment rights. Further, *Don't Shoot Portland* involved multiple agencies.

PAGE 7 – PLAINTIFFS REPLY ISO MOTION FOR PROVISIONAL CLASS CERTIFICATION

In contrast, Operation Skip Jack is a single response at a single location for ongoing protests against Defendants where the hallmark being challenged is a single policy, a policy of retaliation aimed at chilling disfavored speech. That Plaintiffs have shown how DHS's de facto policies diverge from their written ones in several ways is evidence of, not a detraction from, the singular nature of Defendants' conduct that is chilling the First Amendment activity of people in Portland. This type of proof for any single class member, if brought in individual cases, would still require every class member to discover and present the cumulative evidence of events that describe the pattern. This is the very type of inefficiency that Rule 23 was designed to address. As one FPS inspector has described, Operation Skip Jack is "a bit of groundhog's day." *See* Plaintiffs' Exhibit 6 at 16:7-16:16. That is very different than the facts described in the 2020 protest cases challenging police conduct under the Fourth Amendment.

### C.  Typicality

Defendants discuss Plaintiffs' and putative class members' physical injuries while ignoring their identical legal one: a chilling of the First Amendment activities. However, at no point in their Response to Plaintiffs' Motion for a Preliminary injunction do Defendants dispute that their challenged conduct would chill a person of ordinary firmness or that it did in fact chill Plaintiffs' First Amendment activities. This means that Plaintiffs and class members share the same interest in ending Defendants' pattern and policy of retaliation so as to alleviate the chilling effect impacting them all. *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (superseded by statute on other grounds) ("The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the Class."). While the Plaintiffs and class members' injuries "need not be substantially identical," here, they are. *See, e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

### D.  Adequacy

Defendants assert that Plaintiffs do not understand their role simply because they all made the same sworn representation to the court that they understand their role. (Opp. at 24-25.)

PAGE 8 – PLAINTIFFS REPLY ISO MOTION FOR PROVISIONAL CLASS CERTIFICATION

Mr. Dickinson also made additional representations under oath while giving live testimony to the court on March 3 explaining his understanding of the role. The court can dismiss such reaching arguments.

### IV.  THE COURT CAN CERTIFY THE CLASS UNDER RULE 23(B)(2)

Defendants argue that Plaintiffs are attempting to aggregate disparate individual claims into a single super claim. (Opp. at 26.) Defendants lose the plot. As Plaintiffs have described, the DHS violence that is a hallmark of Operation Skip Jack has affected all manner of people who have exercised their First Amendment rights nonviolently at the ICE building. Plaintiffs do not offer the evidence of individual harms in order to litigate the legality of each act of force. Rather, it is the repeated nature of this violence that animates Plaintiffs' claim that Defendants, through Operation Skip Jack, are repeatedly harming people exercising their First Amendment rights pursuant to an unwritten policy of retaliation. Class wide relief is both appropriate and the only practical way to offer relief to people who are having their First Amendment rights chilled.

### CONCLUSION

For the reasons stated above, the court should grant the Representative Plaintiffs Motion to provisionally certify the First Amendment Class for the pending Motion for a Preliminary Injunction.

DATED: March 3, 2026.

ACLU FOUNDATION OF OREGON

*s/ Kelly Simon*

Kelly Simon, OSB No. 154213
Email: ksimon@aclu-or.org

*Of Counsel for Plaintiffs*

PAGE 9 – PLAINTIFFS REPLY ISO MOTION FOR PROVISIONAL CLASS CERTIFICATION