BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOHN BAILEY
Counsel to the Assistant Attorney General
ANDREW I. WARDEN
Assistant Director, Federal Programs Branch
BRAD P. ROSENBERG
Special Counsel
ALEXANDER J. YUN (D.C. Bar No. 90028923)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.: (202) 674-0255
Email: alex.yun@usdoj.gov
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| JACK DICKINSON, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Case No. 3:25-cv-2170-SI<br><br>**NOTICE OF FILING OF CLOSING ARGUMENT DEMONSTRATIVE** |

Please take notice that Defendants hereby file their demonstrative from closing arguments held on March 4, 2026.

Dated: March 4, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC HAMILTON
Deputy Assistant Attorney General

JOHN BAILEY
Counsel to the Assistant Attorney General

ANDREW I. WARDEN
Assistant Director

BRAD P. ROSENBERG
Special Counsel

*/s/ Alexander J. Yun*
ALEXANDER J. YUN (D.C. Bar No. 90028923)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.: (202) 674-0255
Email: alex.yun@usdoj.gov

*Attorneys for Defendants*

# *Dickinson v. Trump*



Case No. 3:25-cv-02170-SI

*Portland's "evolving experience on how much and when we coordinate with the federal government."*

Source: Mar. 2 Hr'g Tr. 36:6-7 (Rough)



**Portland doesn't participate in immigration enforcement, which means:**

- *The city won't set up a traffic perimeter, including at the ICE Building itself*
- *"Without intervention by the federal officers," ICE vehicles have not been able to access or leave the building*
- *That has been "fairly common" since June of 2025*

Source: Mar. 2 Hr'g Tr. 65:4-5; 65:10-14 (Rough)



# Protesters Cannot Block a Public Street in Portland—*Unless it Involves Defendants*

- *Q: So if there was an ICE vehicle that was attempting to leave the building pursuant to – for whatever reason it may be and it was being blocked by protesters on City streets, the Portland Police Bureau would not take any steps to clear its own streets to allow that vehicle to exit the facility?*
- *A: No*

Source: Mar. 2 Hr'g Tr. 66:5-10 (Rough)



**Defendants requested assistance from Portland:**

"We, on the regular, would contact Portland Police Bureau to advise them that – that people were blocking streets and that there were local crimes occurring. Again, that's not something that we were enforcing, but yes, we would regularly let them know that . . . through our dispatch mostly."

**Portland ignored Defendants' requests:**

"We do keep people out of city streets and we have largely kept people off Bancroft on a nightly basis mostly through voluntary compliance with but we have gone down here and made arrests for people who are standing in the street blocking general vehicular traffic when it's appropriate. When it comes to federal vehicles specifically coming and going from the immigration and customs enforcement building, it does become challenging to determine whether or not they're engaged in immigration related activities. *And so our position has not been to remove people from federal vehicles [sic] when they are coming and going.*"



Sources: WT Dep. Tr. 46:24-47:6; Mar. 2 Hr'g Tr. 66:20-67:5 (Rough) (emphasis added)

**DHS Does Not Maintain a Policy or Custom of Responding to Protest Activity with Unconstitutional Retaliation:**
- Rios and Dickinson both testified that, on vast majority of days, less than lethal tools were not deployed
- Cantu Declaration—Numerous days of protests without law enforcement response
- But sometimes it was necessary
    - June 14—PPB declared a riot due to high level of criminal activity
    - Officers injured, objects thrown at officers and ICE Building, ICE Building damaged
    - Protesters have used "shields and what we would call 'impact' or 'slugging' devices, and as I read the report a couple of minutes ago, because it was reported to us from agents, I believe that there were sticks and things like that in hand."
    - Officers have been assaulted, and persons have been charged with assault

Sources: Cantu Decl. ¶ 6, ECF No. 116-1; Mar. 2 Hr'g Tr. 150:25-151:25 (Rough); WT Dep. Tr. 38:6-10; HM Dep. Tr. 43:11-24;



# The Driveway and the Sloth

- The crowd is large and doesn't move that much
- "[P]art of the tactics that we were using."
- Breaking the law by trespassing and blocking the driveway, preventing access to the ICE Building

Source: Mar. 3 Hr'g Tr. 33:8, 34:11-17 (Rough)



# Respect for First Amendment Rights:

- Witnesses understand that burning the American flag is protected First Amendment activity
- Witnesses understand that recording officers is protected First Amendment activity
- Officers receive First Amendment training
- "At no time are officers under my command directed to threaten or assault any member of the public engaged in lawfully exercising their First Amendment rights."

Sources: Cantu Dep. Tr. 104:5-9; MB Dep. Tr. 35:14-21; Cantu Dep. Tr. 106:18-107:13; FC Dep. Tr. 25:24-26:5, 26:13-27:5; KK Dep. Tr. 37:8-15; QR Dep. Tr. 13:12-22; Sullivan Dep. Tr. 25:3-17; Cantu Decl. ¶ 6.



## Plaintiffs' Own Expert Testimony Undercuts Plaintiffs' Claim!

Court: And so that conclusion one of the people are drawing that there was some purpose other than simply wanting to have the crowd dispersed or leave.

Mr. Kerlikowske: You know, Your Honor, I don't think I would go that far and put that in there.

Source: Mar. 3 Hr'g Tr. 130:2-6 (Rough)



**Training on Crowd Control:**

- "Three months [of training] down in [the Federal Law Enforcement Training Center]. They cover a broad topic of use of force, whether it's clash in time scenarios, and then three months worth of the FPS side of that, and then yearly annual training regarding use of force. And every time you go on deployment, I believe you have a use of force class to be taken."
- Testimony regarding a week of public order training for "riots, line formation, and also some less-lethal utilization."
- "There is in-person training in Portland for my officers."



Sources: MB Dep. Tr. 13:8-14:12; HM Dep. Tr. 14:7-15; Cantu Dep. Tr. 42:22-23; *see also* KK. Dep. Tr. 52:14-21

**Warnings:**

- Ms. Eckman: "[i]t is certainly possible I didn't hear" warnings
- Mr. Rios: Testified that "every single time" he heard announcements from the ICE building to clear the facility.
  - His recollection was that the announcements also contained warnings that gas may be used
- Mr. Dickinson: most of the time there are announcements to clear the driveway

Sources: Mar. 2 Hr'g Tr. 175:21, 233:4-22 (Rough); Mar. 3 Hr'g Tr. 20:21-23 (Rough)



# Counter-Protesters: Did Not Block ICE Driveway

- "We didn't really see them much in front of the blue line, unlike the anti-ICE demonstrators. But there were a few times where both groups would be in front of the blue line, and that would mostly be because they are in conversation or arguments."

Sources: MB Dep. Tr. 30:20-25



# Counter-Protesters: When They Blocked the Driveway, They Were Subject to Less than Lethal Tools:

- Q: Did you see any pro-government protestors have any of the same types of munitions deployed against them, in your personal experience there?
- A: I can remember maybe one time where we had to push out – and there was a crowd – and the people deployed with the 303 pepper ball would area saturate the line, and both sides were there.

Sources: MB Dep. Tr. 32:21-33:2



**Numerous officers testified that the motivating purpose for the use of crowd control devices was to remove trespassers from federal property and prevent damage to the ICE facility**

- "they were blocking the driveway"
- "people are blocking the driveway and "persons inside the building were trapped"
- "[T]hey were refusing to leave property. They were in the driveway."
- "people were throwing rocks" and "we pushed the crowd away from the driveway"

Sources: MB Dep. Tr. 33:7-16; FC Dep. Tr. 41:25-42:3; KK Dep. Tr. 73:13-74:20; HM Dep. Tr. 52:3-11, 54:22-55:6, 82:14-83:1; TR Dep. Tr. 52:5-53:8; WT Dep. Tr. 31:14-34:23



# The Injunction Is Not Workable:

- Cantu testified that waiting for an "imminent" threat removes the ability to de-escalate early and forces hands-on engagement.
- Sullivan explained this as well: less than lethal tools are used before a crowd becomes physically dangerous
- Schoening: proposed injunction is overly broad with respect to OC spray
- Kerlikowske: proposed injunction is overly broad on pepper spray

Sources: Cantu Decl. ¶¶ 26-28; Sullivan Decl. ¶¶ 29-31, ECF No. 116-2; March 2 Hr'g Tr. 58:15-23 (Rough); Mar. 3 Hr'g Tr. 159:22-161:16 (Rough)



