IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JACK DICKINSON, *also known as "the Portland Chicken"*; LAURIE ECKMAN; RICHARD ECKMAN; MASON LAKE; and HUGO RIOS, *on behalf of themselves and those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, *President of the United States, in his official capacity*; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security (DHS), in her official capacity*; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Case No. 3:25-cv-2170-SI<br><br>**OPINION AND ORDER GRANTING PROVISIONAL CLASS CERTIFICATION** |

Kelly Simon and Eri Andriola, ACLU FOUNDATION OF OREGON, PO Box 40585, Portland, OR 97240; J. Ashlee Albies, ALBIES & STARK LLC, 1500 SW First Avenue, Suite 1000, Portland OR 97201; Jane L. Moisan, PEOPLE'S LAW PROJECT, 1500 SW First Avenue, Suite 1000, Portland OR 97201; Matthew Borden and Hadley Rood, BRAUNHAGEY & BORDEN LLP, 747 Front Street, Fourth Floor, San Francisco, CA 94111; Marissa R. Benavides, BRAUNHAGEY & BORDEN LLP, 200 Madison Avenue, 23rd Floor, New York, NY 10016; Kimberly S. Hutchison, Liam Barrett, Taylor Marrinan, Mark F. Fleming, and Diana Lucy Hallet, SINGLETON SCHREIBER LLP, 591 Camino de la Reina, Suite 1025, San Diego, CA 92108; and Zachary Pangares, SINGLETON SCHREIBER LLP, 1050 SW Sixth Avenue, Suite 1100, Portland, OR 97204. Of Attorneys for Plaintiffs.

Brett A. Shumate, Assistant Attorney General, Civil Division; Eric Hamilton, Deputy Assistant Attorney General, Civil Division; John Bailey, Counsel to the Assistant Attorney General, Civil Division; Andrew I. Warden, Assistant Director, Federal Programs Branch, Civil Division; Brad P. Rosenberg, Special Counsel, Federal Programs Branch, Civil Division; Michael B. Bruns, Pierce J. Anon, and Alexander J. Yun, Trial Attorneys, Federal Programs Branch, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, 950 Pennsylvania Avenue, NW, Washington, DC 20530. Of Attorneys for Defendants.

Dan Rayfield, Oregon Attorney General; Scott Kennedy, Jacob Reisberg, Samuel Kubernick, and Leanne Hartmann, Senior Assistant Attorneys General; and Derek Olson, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 100 SW Market Street, Portland, OR 97201. Of Attorneys for *Amicus Curiae* State of Oregon.

Naomi Sheffield, Chief Deputy City Attorney; and Elizabeth C. Woodard, Caroline Turco, and Denis M. Vannier, Senior Deputy City Attorneys, PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for *Amicus Curiae* City of Portland, Oregon.

**Michael H. Simon, District Judge.**

Pending before the Court are two motions filed by Plaintiffs. The first is Plaintiffs' Motion for Preliminary Injunction. ECF 94 (redacted); ECF 106 (unredacted and under seal). The second, filed in connection with and support of the first, is Plaintiffs' Motion for Provisional Class Certification. ECF 130 (unredacted and under seal); ECF 131 (redacted). In a separate Opinion and Order concurrently filed with this Opinion and Order, the Court granted Plaintiffs' Motion for Preliminary Injunction. For the reasons stated below, the Court hereby grants Plaintiffs' Motion for Provisional Class Certification.

The background facts relevant to the pending motion are sufficiently stated in the Court's concurrently filed Opinion and Order Granting Plaintiffs' Motion for Preliminary Injunction. The Court refers interested persons to that document. Relevant to this Opinion and Order, Plaintiffs' proposed class definition consists of:

> All people who, since the beginning of Operation Skip Jack, have, desire to, or will nonviolently protest against or report on DHS activities at the Portland ICE Building.

ECF 130 at 13; ECF 131 at 13.

## STANDARDS

### A. Rule 23 Generally

Federal class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. A plaintiff "must be prepared to prove" that each of the applicable requirements of the rule is satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23 sets forth more than a "mere pleading standard." *Id.* Rather, parties seeking certification bear the burden of demonstrating "by a preponderance of the evidence" that Rule 23 is satisfied. *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1192 (9th Cir. 2024).

A party seeking class certification must satisfy each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Under Rule 23(a), a district court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In other words, a proposed class must meet the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

In addition to Rule 23(a), a party seeking to maintain a class action also must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Here, Plaintiffs propose a class under Rule 23(b)(2). That rule provides that a class action may proceed if "the party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The analysis required under Rule 23 is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (quotation marks omitted); *Comcast*, 569 U.S. at 33-34. That said, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* A district court, however, "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

## B. "Provisional" Class Certification

"A district court can 'certify a provisional class for purposes of a preliminary injunction.'" *Vasquez Perdomo v. Noem*, 148 F.4th 656, 688 n.15 (9th Cir. 2025) (cleaned up) (quoting *Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1040 (9th Cir. 2012)). As Professors Newberg and Rubenstein explain, the "provisional" label "is meant to reference the duration of the order"—that "the certification will dissolve if the injunction does." 2 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 4:30 (6th ed.). To provisionally certify a class, a district court must undergo the same rigorous Rule 23 analysis that applies to an ordinary class certification. *See id.* ("[C]ourts that label preliminary certification 'provisional' employ that term . . . *not* to suggest they undertook less than a full Rule 23 analysis." (emphasis in original)); *see also Meyer*, 707 F.3d at 1041-43 (conducting a full Rule 23 analysis and holding that "[t]he plain language of FRCP 23(b)(2) . . . only requires that final injunctive relief be appropriate" for a district court to certify; thus, a district court may "provisionally" grant class certification).

PAGE 4 – OPINION AND ORDER GRANTING PROVISIONAL CLASS CERTIFICATION

## DISCUSSION

### A. Rule 23(a) Requirements[1]

#### 1. Numerosity

Numerosity is satisfied if the class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this district, as in many others, there is a "presumption of impracticability of joinder" when a class has 40 or more members. *Hanney v. Epic Aircraft, LLC*, 2024 WL 2106210, at *1 (D. Or. May 10, 2024) (citing 1 William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed.)). "[C]lass size is not the sole determining factor" for numerosity. *Id.* When the class size is smaller than 40, courts also consider: "(1) the geographical diversity of class members; (2) the ability of individual claimants to institute separate suits; (3) whether injunctive or declaratory relief is sought; and (4) the ability to identify and locate class members." *Id.* (citing *A.B. v. Haw. St. Dep't of Educ.*, 30 F.4th 828, 835-36 (9th Cir. 2022)). *See also* 1 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 3:12 (6th ed.) ("Courts considering certification of classes numbering in the gray area between 20 and 40 are guided by a series of impracticality factors," including "judicial economy . . . , geographic dispersion of class members, size of individual claims, financial resources of class members, and the ability of claimants to institute individual suits").

In the pending lawsuit, the proposed class is sufficiently numerous because there were hundreds, if not thousands, of peaceful, nonviolent protestors in the vicinity of the Portland ICE Building when the named Plaintiffs suffered their claimed First Amendment injuries. Defendants argue that Plaintiffs cannot prove that all protestors at the Portland ICE Building are part of the

---

[1] Ascertainability is not required when considering class action certification solely in the context of injunctive relief. *See, e.g., Doe #1 v. Trump*, 335 F.R.D. 416, 435-36 (D. Or. 2020). Defendants do not argue that ascertainability is required here.

PAGE 5 – OPINION AND ORDER GRANTING PROVISIONAL CLASS CERTIFICATION

proposed class and thus cannot prove numerosity. There are, however, five named Plaintiffs and approximately 57 other declarants who appear to meet the proposed class definition.[2] Thus, without even considering the hundreds or more of peaceful, nonviolent protestors present alongside these declarants, numerosity is satisfied. In addition, the impracticability factors discussed in *Hanney* further support a finding of numerosity.

### 2. Commonality

To show commonality, a plaintiff must show that the putative class members suffered the "same injury," *i.e.*, that their claims depend on a "common contention." *Wal-Mart*, 564 U.S. at 350 (quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* But class members need not have *every* issue in common: Commonality requires only "a single significant question of law or fact" in common. *Mazza*, 666 F.3d at 589; *see also Wal-Mart*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (alterations and quotation marks omitted)).

"[C]ommon questions may center on 'shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies.'" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (second alteration in original) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds as recognized in DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024)); *see also Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) ("Where the

---

[2] *See* ECF 12 through 33, ECF 36, ECF 52, ECF 54, ECF 59, ECF 64, ECF 94-7 through ECF 94-14, ECF 94-16, ECF 118, ECF 126-1 through 126-22, and ECF 126-43.

circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." (quotation omitted)); *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification. What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice."). Thus, the Ninth Circuit has rejected arguments that factual variations preclude a finding of commonality, particularly in civil rights cases, explaining: "We have previously held, in a civil-rights suit, that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005); *see also Parsons v. Ryan*, 754 F.3d 657, 682 (9th Cir. 2014) ("In a civil rights suit such as this one . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. Under such circumstances, individual factual differences among class members pose no obstacle to commonality." (quoting *Rosas v. Baca*, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012) (Pregerson, J.)).

Here, Plaintiffs' lawsuit challenges a system-wide policy of DHS operations at and in the vicinity of the Portland ICE Building that affects all putative class members. Plaintiffs have shown by a preponderance of evidence that, under unified FPS command, Defendants have an unwritten policy and have engaged in a pattern and practice of using excessive force directed at nonviolent, peaceful protestors at the Portland ICE Building for the purpose, at least in part, of chilling the exercise of constitutional rights to free speech and free press. As the Ninth Circuit has explained in a different context, "although a presently existing risk may ultimately result in

PAGE 7 – OPINION AND ORDER GRANTING PROVISIONAL CLASS CERTIFICATION

different future harm for different [protestors]—ranging from no harm at all to death—every [protestor] suffers exactly the same constitutional injury when he is exposed to a single [ ] policy or practice" chilling protected First Amendment activity. *See Parsons*, 754 F.3d at 678. That potential policy therefore raises questions of law or fact that are common to the class.

Although Defendants argue that there is no written or "official" policy authorizing First Amendment retaliation, Plaintiffs need not allege a written or official policy to satisfy commonality. Rather, in *Wal-Mart*, the Supreme Court explained that the plaintiffs there could have established commonality to challenge an unwritten policy with "significant proof" that the organization "operated under a general policy of discrimination." 564 U.S. at 353 (cleaned up). The Supreme Court noted that there was no significant proof in that case because, on top of Wal-Mart's formal policy forbidding sex discrimination, there was uniform evidence that Wal-Mart's written policy was enforced. *Id.* ("[T]he District Court recognized the company imposes penalties for denials of equal employment opportunity."). In that case, the "only evidence of a general policy of discrimination" was the testimony of the plaintiffs' expert that there was a "culture . . . vulnerable to gender bias," but the plaintiffs' expert did not testify that any such bias actually was present. *Id.* at 353-54 (quotation marks omitted).

Here, by contrast, Plaintiffs have shown persuasive evidence that DHS officers at the Portland ICE Building violated DHS and FPS use-of-force written policies. For example, DHS officers deployed pepper-balls, OC Spray, tear gas, and other forms of less lethal munitions on nonviolent protestors, including those who were engaged in passive resistance. Additionally, the federal officers who testified by deposition demonstrated that they were inadequately trained and did not understand the general contours of Defendants' written use-of-force policies. Further, the evidence revealed that no federal officer has yet been reprimanded or received any corrective

PAGE 8 – OPINION AND ORDER GRANTING PROVISIONAL CLASS CERTIFICATION

treatment or guidance after violating a use-of-force policy at the Portland ICE Building. Although Defendants presented evidence that four internal investigations are pending, Plaintiffs showed that even these investigations are not being conducted in a manner consistent with DHS's written policies (*e.g.*, the investigations were not opened promptly after the incident reports were reviewed but only after public complaints were received). Accordingly, ample evidence shows the existence of an unwritten policy to encourage excessive use of force intended, at least in part, to chill First Amendment rights of peaceful protest and journalism. *See Menotti v. City of Seattle*, 409 F. 3d 1113, 1148 (9th Cir. 2005) (recognizing that a policy or custom of retaliation "may be inferred [from] widespread practices of evidence of repeated constitutional violations and the absence of evidence that [ ] officers were discharged or reprimanded" (quoting *Nadell v. L.V. Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001), *abrogated on other grounds as recognized in Beck v. City of Upland*, 527 F.3d 853, 862 n.8 (9th Cir. 2008)).

Defendants also argue that the Ninth Circuit's *Black Lives Matter* decision forecloses a finding of commonality. *See Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249 (9th Cir. 2024). Defendants emphasize that in that case, which also dealt with protestors' First and Fourth Amendment claims, the Ninth Circuit vacated the district court's class certification for failure to adhere to the commonality analysis under Rule 23. Defendants argue:

> The court emphasized that the merits of plaintiffs' claims "depends on what force was used, what a particular class member was doing, what other protestors may have been doing, what the officers objectively observed, and a host of other factors." *Id.* at 1260. The court concluded the plaintiffs had not "shown the existence of common evidence that can resolve in 'one stroke' the class members' claims that hinge on a wide array of facts and circumstances." *Id.* (quoting *Wal-Mart*, 564 U.S. at 350). And although the Ninth Circuit remanded the case to the district court, it noted that "[g]iven the extensive individualized evidence

PAGE 9 – OPINION AND ORDER GRANTING PROVISIONAL CLASS CERTIFICATION

> necessary to prove the [plaintiff's] claims, the plaintiffs will face an uphill challenge in showing that common questions exist, let alone predominate over individual ones." *Id.*

ECF 144 at 21-22 (Defendants' Opposition at internal pages 15-16).

"The Government's assertions . . . conspicuously conflate Rule 23(b)(3)'s predominance requirement with commonality under Rule 23(a)(2)." *See Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 808 (9th Cir. 2020). In *Gonzalez*, the Ninth Circuit explained that the predominance requirement of Rule 23(b)(3) is inapposite to the commonality question posed under Rule 23(a)(2). *See id.* at 808-09 ("We can find no abuse of discretion pursuant to a standard that does not actually apply here."). Thus, the Ninth Circuit rejected the Government's invocation of *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), "to suggest that the range of individual circumstances" that may exist "preclude commonality," because that case "did not involve a challenge to a single policy or practice of a single defendant," and Rule 23(a)(2)'s commonality requirement is "less demanding" than Rule 23(b)(3)'s predominance requirement. *See Gonzalez*, 975 F.3d at 808 (quotation omitted). *See also Amchem*, 521 U.S. at 623-24 ("Even if Rule 23(a)'s commonality requirement may be satisfied . . . , the predominance criterion [of Rule 23(b)(3)] is far more demanding.")

So too is Defendants' invocation of *Black Lives Matter*—a Rule 23(b)(3) case— inapposite here. "[T]he district court did not address Rule 23(b)(3)'s predominance requirement" in *Black Lives Matter*, so the Ninth Circuit vacated its class certification and remanded so the district court could consider predominance. *See* 113 F.4th at 1262, 1266. Here, however, there is no predominance requirement because Plaintiffs seek certification only under Rule 23(b)(2). Commonality is satisfied because Plaintiffs have shown common questions of fact and law: namely, whether Defendants have an unwritten policy to engage in a pattern or practice of retaliation against nonviolent, peaceful protestors and journalists at the Portland ICE Building;

PAGE 10 – OPINION AND ORDER GRANTING PROVISIONAL CLASS CERTIFICATION

whether Defendants' uses of force at the Portland ICE Building are narrowly tailored to purported legitimate ends; and whether Defendants' repeated uses of force against nonviolent, peaceful protestors and journalists objectively would chill a person of ordinary firmness from exercising First Amendment rights.

### 3. Typicality

To show typicality, a plaintiff must show that his or her claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), a "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *DZ Reserve*, 96 F.4th at 1238 (quoting *Hanlon*, 150 F.3d at 1020). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To determine typicality, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation marks omitted).

Here, the proposed Class Representatives have claim typical of the proposed class because each suffered and continues to suffer from First Amendment chill. Defendants reprise their commonality arguments to oppose typicality, arguing that there is no typicality because each named Plaintiff alleges they were subjected to different uses of force under different circumstances. Defendants also argue that typicality is not satisfied because many putative class members have not been subjected to any allegedly unlawful conduct. But Defendants' policy is felt beyond the reach of their tear gas. Defendants' erratic, indiscriminate, and unpredictable uses of force at the Portland ICE Building objectively chills First Amendment rights by discouraging nonviolent, peaceful protestors and journalists from attending protests at the Portland ICE

PAGE 11 – OPINION AND ORDER GRANTING PROVISIONAL CLASS CERTIFICATION

Building. Thus, every class member and proposed Class Representative appears to have experienced First Amendment chill, even if some class members have not yet been subjected to tear gas, OC Spray, or pepper-ball munitions.

### 4. Adequacy

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. The adequacy requirement is based on principles of constitutional due process, and so a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Hanlon*, 150 F.3d at 1020.

Defendants argue that the proposed Class Representatives are not adequate representatives because their declarations include boilerplate language about the declarant's responsibilities. The Court has no concerns about the Class Plaintiffs' respective abilities to represent the class. Plaintiff Dickinson also testified eloquently about what being a class representative means to him. The Court also has no concern about counsel's ability to prosecute the action vigorously and with professional excellence and expertise.

### B. Rule 23(b)(2) Requirements

Rule 23(b)(2) permits class treatment when "the party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of

Rule 23(b)(2)." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010), *abrogated on other grounds as recognized in Nat'l TPS All. v. Noem*, 166 F.4th 739, 770 (9th Cir. 2026). The requirements of Rule 23(b)(3) of predominance and superiority do not apply to a class under Rule 23(b)(2). *See Wal-Mart*, 564 U.S. at 362. There also is no requirement of notice or that class members be allowed to opt-out. *See id.*

The primary relief sought must also be injunctive or declaratory. *Wang*, 737 F.3d at 544 (citing *Wal-Mart*, 564 U.S. at 360). The principle undergirding this requirement is that the "indivisible nature of the injunctive or declaratory remedy" justifies certification because the "conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (April 2009)). Subdivision (b)(2) was intended to reach situations when the final relief settles the "legality of the behavior with respect to the class as a whole." Advisory Committee Notes to 1966 amendments to Rule 23(b)(2). Rule 23(b)(2) does not authorize certification "when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 360 (emphasis in original); *see also Ellis*, 657 F.3d at 987 (same).

Here, classwide relief is the most practical and efficient way to offer relief to large numbers of people who are having their First Amendment rights unconstitutionally chilled. The reason that Defendants' uses of force are chilling speech is because of their indiscriminate, unpredictable, and blanket nature. Even when responding to a perceived threat,[3] Defendants'

---

[3] Mr. Kerlikowske testified that a "threat" is different from a "risk," which is a danger that is expected as part of the duties of a law enforcement officer.

Rule 23(b)(2)." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010), *abrogated on other grounds as recognized in Nat'l TPS All. v. Noem*, 166 F.4th 739, 770 (9th Cir. 2026). The requirements of Rule 23(b)(3) of predominance and superiority do not apply to a class under Rule 23(b)(2). *See Wal-Mart*, 564 U.S. at 362. There also is no requirement of notice or that class members be allowed to opt-out. *See id.*

The primary relief sought must also be injunctive or declaratory. *Wang*, 737 F.3d at 544 (citing *Wal-Mart*, 564 U.S. at 360). The principle undergirding this requirement is that the "indivisible nature of the injunctive or declaratory remedy" justifies certification because the "conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (April 2009)). Subdivision (b)(2) was intended to reach situations when the final relief settles the "legality of the behavior with respect to the class as a whole." Advisory Committee Notes to 1966 amendments to Rule 23(b)(2). Rule 23(b)(2) does not authorize certification "when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 360 (emphasis in original); *see also Ellis*, 657 F.3d at 987 (same).

Here, classwide relief is the most practical and efficient way to offer relief to large numbers of people who are having their First Amendment rights unconstitutionally chilled. The reason that Defendants' uses of force are chilling speech is because of their indiscriminate, unpredictable, and blanket nature. Even when responding to a perceived threat,[3] Defendants'

---

[3] Mr. Kerlikowske testified that a "threat" is different from a "risk," which is a danger that is expected as part of the duties of a law enforcement officer.

officers regularly apply pepper-ball, tear gas, and OC Spray munitions to broader crowds of people that include peaceful, nonviolent putative class members—for example, by launching canisters of tear gas behind groups of peaceful protesters attempting to leave without first issuing dispersal warnings and thus not giving them any practical way to avoid these chemical irritant munitions. This practice, Mr. Kerlikowske testified, gives officers no legitimate tactical benefit. Quite the contrary, it can trap and further aggravate a crowd and make it more difficult for officers (federal, state, and local) to identify individuals within crowds who may be violating the law and target them for arrest. Moreover, it is the repeated and unpredictable nature of these practices that chill Plaintiffs' First Amendment rights. Classwide treatment is therefore the most efficient and reasonable way to proceed.

## CONCLUSION

The Court GRANTS Plaintiffs' Motion for Provisional Class Certification. ECF 130. The Court APPOINTS Jack Dickinson, Laurie Eckman, Richard Eckman, Mason Lake, and Hugo Rios as Class Representatives and FURTHER APPOINTS their counsel as Class Counsel to represent a class consisting of: "All people who, since the beginning of Operation Skip Jack, have, desire to, or will nonviolently protest against or report on DHS activities at the Portland ICE Building."

**IT IS SO ORDERED**.

DATED this 9th day of March, 2026.

Michael H. Simon
United States District Judge