BRETT A. SHUMATE
Assistant Attorney General
ERIC HAMILTON
Deputy Assistant Attorney General
JOHN BAILEY
Counsel to the Assistant Attorney General
BRAD P. ROSENBERG
Special Counsel
ANDREW I. WARDEN
Assistant Director
ALEXANDER J. YUN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.: (202) 674-0255
Email: alex.yun@usdoj.gov
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| JACK DICKINSON, *et al.*,<br><br>        *Plaintiffs*,<br><br>        v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>        *Defendants*. | Case No. 3:25-cv-2170-SI<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

**DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)**

Defendants respectfully move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' Amended Complaint. In support of this Motion, Defendants refer the Court to the attached Memorandum. Pursuant to Local Rule 7-1, Defendants certify that their counsel has conferred in good faith with counsel for Plaintiffs but were unable to resolve the issues raised by this motion.

Dated: April 15, 2026

BRETT A. SHUMATE
Assistant Attorney General

ERIC HAMILTON
Deputy Assistant Attorney General

JOHN BAILEY
Counsel to the Assistant Attorney General

BRAD P. ROSENBERG
Special Counsel

ANDREW I. WARDEN
Assistant Director

*/s/ Alexander J. Yun*
ALEXANDER J. YUN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.: (202) 674-0255
Email: alex.yun@usdoj.gov
*Attorneys for Defendants*

ii – DEFENDANTS' MOTION TO DISMISS

BRETT A. SHUMATE
Assistant Attorney General
ERIC HAMILTON
Deputy Assistant Attorney General
JOHN BAILEY
Counsel to the Assistant Attorney General
BRAD P. ROSENBERG
Special Counsel
ANDREW I. WARDEN
Assistant Director
ALEXANDER J. YUN (D.C. Bar No. 90028923)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.: (202) 674-0255
Email: alex.yun@usdoj.gov
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| JACK DICKINSON, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Case No. 3:25-cv-2170-SI |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6)**

iii – DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I.      Plaintiffs lack standing .......................................................................................... 4

    II.     Plaintiffs' Claim of First Amendment Retaliation Fails (Count I). ........................ 6

    III.    Plaintiffs' Claim of Viewpoint Discrimination Fails (Count II) ............................. 9

    IV.    Plaintiffs' Claim of a Violation of the First Amendment Right of Access
           Fails (Count III). ................................................................................................... 11

    V.     Plaintiffs' Claim of Fourth Amendment Excessive Force Fails (Count IV). ....... 12

    VI.    Plaintiffs' Claim of a Fifth Amendment Due Process Violation Fails
           (Count V). ............................................................................................................ 13

    VII.   Plaintiffs' Administrative Procedure Act Claim Fails (Count VI). ...................... 15

    VIII.  Plaintiffs' Claim for 28 U.S.C. § 2201 Declaration of Rights Fails (Count
           VII). .................................................................................................................... 20

    IX.    The Court Should Dismiss the President as a Defendant. ................................... 21

CONCLUSION .................................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Haworth,*
300 U.S. 227 (1937) .................................................................................................................. 21

*Al Otro Lado, Inc. v. McAleenan,*
394 F. Supp. 3d 1168 (S.D. Cal. 2019) .................................................................................... 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................................... 3

*Austin v. Univ. of Or.,*
925 F.3d 1133 (9th Cir. 2019) .................................................................................................... 3

*Babbitt v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1979) .................................................................................................................... 5

*Bark v. U.S. Forest Serv.,*
37 F. Supp. 3d 41 (D.D.C. 2014) ............................................................................................. 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................................. 3, 9

*Bennett v. Spear,*
520 U.S. 154 (1997) .................................................................................................................. 18

*Biden v. Texas,*
597 U.S. 785 (2022) ............................................................................................................. 15, 16

*Black Lives Matter D.C. v. Trump,*
544 F. Supp. 3d 15 (D.D.C. 2021), *aff'd sub nom. Buchanan v. Barr,* 71 F.4th 1003 (D.C. Cir.
2023) .......................................................................................................................................... 13

*Capp v. County of San Diego,*
940 F.3d 1046 (9th Cir. 2019) .................................................................................................... 7

*Castillo v. McFadden,*
399 F.3d 993 (9th Cir. 2005) .................................................................................................... 14

*Cervantes v. City of San Diego,*
5 F.3d 1273 (9th Cir.1993) ..................................................................................................... 3-4

*Chiles v. Salazar,*
607 U.S. ----, No. 24-539, 2026 WL 872307 (Mar. 31, 2026) ................................................ 10

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..................................................................................................... 4, 5

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).................................................................................................... 4

*Cobell v. Kempthorne*,
    455 F.3d 301 (D.C. Cir. 2006) ................................................................................... 19

*Connecticut v. Gabbert*,
    526 U.S. 286 (1999).................................................................................................. 13

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998).............................................................................................. 13, 14

*Daines v. IRS*,
    No. 24-cv-1057, 2025 WL 2694788 (E.D. Wis. Sept. 22, 2025) ............................... 17

*Fiedler v. Clark*,
    714 F.2d 77 (9th Cir. 1983) ....................................................................................... 21

*Franklin v. Massachusetts*,
    505 U.S. 788 ............................................................................................................. 21

*Free Speech Coal., Inc. v. Paxton*,
    606 U.S. 461, (2025)................................................................................................. 10

*Galbraith v. County of Santa Clara*,
    307 F.3d 1119 (9th Cir. 2002) ................................................................................... 13

*Graham v. Connor*,
    490 U.S. 386 (1989).................................................................................................. 13

*Grayned v. City of Rockford*,
    408 U.S. 114 (1972)........................................................................................ 7, 10, 11

*Hawaii v. Trump*,
    859 F.3d 741 (9th Cir.), *vacated & remanded*, 583 U.S. 941 (2017) ...................... 21

*Herra v. Collins*,
    506 U.S. 390 (1993).................................................................................................. 14

*Indep. Equip. Dealers Ass'n v. EPA*,
    372 F.3d 420 (D.C. Cir. 2004)................................................................................... 15

*Juliana v. United States*,
    339 F. Supp. 3d 1062 (D. Or. 2018), *rev'd & remanded*, 947 F.3d 1159 (9th Cir. 2020)........ 21

vi – DEFENDANTS' MOTION TO DISMISS

*L.A. Press Club v. Noem*,
--- F. Supp. 3d ----, No. 2:25-cv-05563-HDV-E, 2026 WL 103972 (C.D. Cal. Jan. 8,
2026) .......................................................................................................................... 17, 18

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ........................................................................................ 3, 4

*Leigh v. Salazar*,
677 F.3d 892 (9th Cir. 2012) ............................................................................................ 11

*Lewis v. Casey*,
518 U.S. 343 (1996).......................................................................................................... 6

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)..................................................................................... 15, 16, 18, 19

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) ............................................................................................ 4

*Mary Ferrell Found., Inc. v. Biden*,
No. 22-cv-06176-RS, 2023 WL 4551066 (N.D. Cal. July 14, 2023) ................................. 17-18

*Michigan v. EPA*,
576 U.S. 743 (2015)........................................................................................................ 16

*Mississippi v. Johnson*,
71 U.S. (4 Wall.) 475 (1866) .......................................................................................... 21

*Nadell v. L.V. Metro Police Dep't*,
268 F.3d 924 (9th Cir. 2001) ............................................................................................ 9

*Noem v. Vasquez Perdomo*,
146 S. Ct. 1 (2025)............................................................................................................ 4

*Norton v. S. Utah Wilderness All.* ("*SUWA*"),
542 U.S. 55 (2004)..................................................................................................... 19, 20

*Nw. Ctr. for Alternatives to Pesticides v. DHS*,
552 F. Supp. 3d 1078 (D. Or. 2021) ............................................................................... 20

*Ochoa v. City of Mesa*,
26 F.4th 1050 (9th Cir. 2022) .................................................................................... 14, 15

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
303 F. App'x 517 (9th Cir. 2008) ................................................................................... 17

*O'Shea v. Littleton*,
414 U.S. 488 (1974)........................................................................................................... 4

*People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*,
   60 F. Supp. 3d 14 (D.D.C. 2014) ........................................................................... 17

*Pinard v. Clatskanie Sch. Dist. 6J*,
   467 F.3d 755 (9th Cir. 2006) ................................................................................... 7

*Porteous v. Cap. One Servs. II, LLC*,
   809 F. App'x 354 (9th Cir. 2020) ............................................................................ 4

*Porter v. Osborn*,
   546 F.3d 1131 (9th Cir. 2008) ......................................................................... 14, 15

*Press-Enterprise Co. v. Superior Ct. of Cal.*,
   478 U.S. 1 (1986) ................................................................................................... 11

*Puente v. City of Phoenix*,
   123 F.4th 1035 (9th Cir. 2024) ........................................................................ *passim*

*Ramirez v. Butte-Silver Bow County*,
   298 F.3d 1022 (9th Cir. 2002) ............................................................................... 13

*Rattlesnake Coal. v. U.S. Env't Prot. Agency*,
   509 F.3d 1095 (9th Cir. 2007) ................................................................................. 3

*Reach Cmty. Dev. v. DHS*,
   No. 3:25-CV-2257-AB, 2026 WL 632695 (D. Or. Mar. 6, 2026), *appeal filed*, No. 26-1575
   (9th Cir. Mar. 16, 2026) ........................................................................................ 12

*Rizzo v. Goode*,
   423 U.S. 362 (1976) ................................................................................................. 6

*Rochin v. California*,
   342 U.S. 165 (1952) ............................................................................................... 14

*Rodriguez v. U.S. Dep't of the Air Force*,
   387 F. Supp. 3d 130 (D.D.C. 2019) ...................................................................... 17

*Rosenblum v. Does 1–10*,
   474 F. Supp. 3d 1128 (D. Or. 2020) ........................................................................ 5

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................................. 3

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950) ............................................................................................... 21

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ................................................................................................... 5

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
   873 F.2d 1221 (9th Cir. 1989) ........................................................................... 20

*Swan v. Clinton*,
   100 F.3d 973 (D.C. Cir. 1996) ........................................................................... 21

*Tafoya v. County of Fresno*,
   13 F. App'x 715 (9th Cir. 2001) .......................................................................... 7

*Torres v. Madrid*,
   592 U.S. 306 (2021) ........................................................................................... 12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ........................................................................................ 3, 5

*Ulrich v. City & County of San Francisco*,
   308 F.3d 968 (9th Cir. 2002) ............................................................................... 7

*United States v. Lanier*,
   520 U.S. 259 (1997) ........................................................................................... 13

*Updike v. Multnomah County*,
   870 F.3d 939 (9th Cir. 2017) ............................................................................ 4, 5

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ........................................................................................... 10

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ......................................................................................... 4, 5

**Statutes**

5 U.S.C. § 551 ................................................................................................. 15, 18

5 U.S.C. § 706(2) ................................................................................................. 15

28 U.S.C. § 2201 .................................................................................................. 20

**Other Authorities**

CBP, Use of Force Policy (January 2021),
   https://www.cbp.gov/sites/default/files/assets/documents/2021-Jul/cbp-use-of-force-
   policy_4500-002A.pdf ........................................................................................ 17

DHS, Update to the Department Policy on the Use of Force (Feb. 6, 2023),
   https://www.dhs.gov/sites/default/files/2023-04/23_0206_s1_use-of-force-policy-update.pdf
   ........................................................................................................................... 17

**INTRODUCTION**

Beginning in 2025, the Department of Homeland Security (DHS) has endured a significant increase in violent, disruptive, or otherwise unlawful protests targeting its immigration-enforcement operations and specifically targeting the Immigration and Customs Enforcement (ICE) facility in Portland, Oregon. DHS officers sometimes responded by lawfully deploying nonlethal crowd-control devices such as pepper spray and tear gas. Plaintiffs are journalists and protesters who attended protests at the ICE facility and allege that their constitutional rights were violated by DHS's effort to protect federal employees, federal property, and the public from these violent and dangerous protests.

Plaintiffs' Amended Complaint, however, does not plausibly allege a violation of any of Plaintiffs' constitutional rights or the Administrative Procedure Act. Although this Court found that the post-Amended Complaint preliminary injunction record supported a preliminary injunction—that order was soon stayed by the Court of Appeals—the allegations in the Amended Complaint are factually and legally insufficient to state a claim. Nor does the Amended Complaint plausibly allege an imminently certain risk of future harm, which is necessary to pursue prospective relief—the only type of relief Plaintiffs could hope to pursue. That Plaintiffs may have been subject to force in the past is not sufficient to establish that the same Plaintiffs will be subject to force again in the future. The Court should therefore dismiss the Amended Complaint for lack of standing and for failure to state a claim.

**BACKGROUND**

Plaintiffs are five individuals—three protesters and two freelance journalists—who have attended protests at the Portland ICE facility at various points since June 2025. Am. Compl. ¶¶ 9-16, ECF No. 5. Plaintiffs allege that during certain protests, DHS officers targeted them with less-

1 – DEFENDANTS' MOTION TO DISMISS

than-lethal crowd-control devices in a manner that violated the First Amendment, Fourth Amendment, Fifth Amendment, and the Administrative Procedure Act. *Id.* ¶¶ 149-92. Plaintiffs initiated this action in November 2025, Compl., ECF No. 1, and they filed the operative Amended Complaint in December 2025, ECF No. 5. In accordance with the most recent scheduling order entered by the Court, Defendants' deadline to respond to the Amended Complaint is April 15, 2026.

On February 3, the Court entered a temporary restraining order restricting DHS officers' ability to use crowd-control devices at the ICE facility. Op. & Order Granting TRO, ECF No. 68. On February 17, the Court extended the temporary restraining order by two weeks. Order Extending TRO, ECF No. 105. Subsequently, Plaintiffs moved for a preliminary injunction, Pls.' Mot. for a Prelim. Inj., ECF No. 94, and the Court held a three-day evidentiary hearing before issuing the requested relief on March 9, 2026. Op. & Order Granting Prelim Inj. ("PI Order"), ECF No. 155. The same day that the injunction issued, the Court also certified a class (which the court called "provisional") of "[a]ll people who, since [June 2025], have, desire to, or will nonviolently protest against or report on DHS activities at the Portland ICE Building." Op. & Order Granting Provisional Class Cert. at 14, ECF No. 154.

Defendants filed a timely notice of appeal and moved for a stay of the injunction pending appeal, an administrative stay, and a stay of district court proceedings in the Ninth Circuit. A divided panel entered an administrative stay. *See* Order, *Dickinson v. Trump*, No. 26-1609 (9th Cir. Mar. 25, 2026), Dkt. No. 13. The government's stay motion, which was argued on April 7, 2026, remains pending.

2 – DEFENDANTS' MOTION TO DISMISS

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(1) tests the Court's jurisdiction over the case and allows a court to dismiss a complaint upon finding that it lacks subject matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A jurisdictional attack may be facial or factual. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Once challenged, the plaintiff "asserting subject matter jurisdiction has the burden of proving its existence." *Rattlesnake Coal. v. U.S. Env't Prot. Agency*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007). To invoke the jurisdiction of the federal courts under Article III of the Constitution, a plaintiff must establish that he or she has standing to sue. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Under Rule 12(b)(6), courts must dismiss complaints that do not allege sufficient facts to demonstrate a plausible entitlement to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility showing "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and it "asks for more than a sheer possibility that the defendant has acted unlawfully." *Id.*; *see Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

Plaintiffs cannot defend against a Rule 12(b)(6) motion by relying on the declarations they submitted after their amended complaint. When evaluating a motion to dismiss under Rule 12(b)(6), "[r]eview is limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (alteration in original) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th

Cir.1993)). The declarations that Plaintiffs have produced throughout the TRO and PI proceedings are not appropriate for consideration as part of this motion, because the Amended Complaint does not "necessarily rel[y]" on those declarations—it does not refer to any of the declarations, and the declarations are not "central to the [Plaintiffs'] claim." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Porteous v. Cap. One Servs. II, LLC*, 809 F. App'x 354, 356 (9th Cir. 2020) (holding that a Complaint necessarily cannot reference or rely on declarations that "postdate the complaint"). Nor would those declarations be appropriate for judicial notice. A court can take judicial notice of the *existence* of publicly filed documents, but a court cannot take "judicial notice of *disputed* facts stated in public records." *Lee*, 250 F.3d at 690. So, although this Court must accept as true "all factual allegations set forth in the complaint," *id.* at 679, this Court cannot accept as true—or otherwise rely on—factual allegations made in other public filings.

## ARGUMENT

### I.    Plaintiffs lack standing.

Plaintiffs lack standing to pursue injunctive and declaratory relief because the Amended Complaint does not plausibly allege that the "threatened injury" of future harms is "*certainly impending*" and not merely "*possible.*" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Standing "does not exist merely because plaintiffs experienced past harm and fear its recurrence." *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 2 (2025) (Kavanaugh, J., concurring in grant of stay application) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Plaintiffs must demonstrate a "real and immediate threat of repeated injury." *Updike v. Multnomah County*, 870 F.3d 939, 947 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Plaintiffs may not rely on a "speculative chain of possibilities." *Clapper*, 568 U.S. at 410.

Where, as here, a party seeks prospective equitable relief, they must make "allegations of future injury [that are] particular and concrete." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998). While allegations of past injury might support a remedy at law, prospective equitable relief requires a claim of imminent future harm. *Lyons*, 461 U.S. at 105. As the Supreme Court held in *Whitmore*, allegations of possible future injury do not satisfy the requirements of Article III. A threatened injury must be "certainly impending" to constitute injury in fact. *Whitmore*, 495 U.S. at 158 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). And the injury must be "concrete" and "'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 101–02. Even if a plaintiff establishes that his rights were violated in past incidents, he nonetheless lacks standing to obtain prospective injunctive relief absent a "real and immediate threat" that he will suffer the same injury in the future. *Id.* at 105.

Moreover, the plaintiff seeking injunctive relief must show not just that the predicted *injury* will reoccur, but also that the plaintiff himself will suffer it. *See, e.g.*, *Updike*, 870 F.3d at 948 (holding that the plaintiff lacked standing for injunctive relief because his evidence was "insufficient to establish that any such wrongful behavior is likely to recur against him"); *Rosenblum v. Does 1–10*, 474 F. Supp. 3d 1128, 1136 (D. Or. 2020) (plaintiff seeking injunctive relief must show "real or immediate threat that [he] will be wronged again" (alteration in original) (quoting *Lyons*, 461 U.S. at 106)). That other individuals might suffer future harm does nothing for a plaintiff's own standing. *See TransUnion LLC*, 594 U.S. at 431 (stating that "standing is not dispensed in gross").

Plaintiffs here have failed to allege a "real and immediate threat of repeated injury," *Updike*, 870 F.3d at 947 (citation omitted). Plaintiffs Laurie and Richard Eckman only allege that they attended one protest at the Portland ICE facility in October 2025 and do not allege that they

5 – DEFENDANTS' MOTION TO DISMISS

will ever protest there again. Am. Compl. ¶¶ 10-11, 68-82. Plaintiff Lake explicitly states that he does not intend to return to the Portland ICE facility, Am. Compl. ¶ 110, and Plaintiff Rios, despite his general "desire[]" to return to the facility at some unspecified point in the future, has not alleged that he returned since September 1, 2025. Am. Compl. ¶¶ 121, 122. Finally, although Plaintiff Dickinson states that he "intends" to continue protesting and "fears" future harm, Am. Compl. ¶ 67, he has not plausibly alleged that such harm will occur. Indeed, his allegation that he has protested at the facility "multiple days per week" since June 2025 while only identifying seven instances of less-than-lethal munitions use underscores this reality. Am. Compl. ¶¶ 57–67. Article III's "actual-injury requirement would hardly serve [its] purpose" if a handful of allegations of past injury could permit "imposition of systemwide relief." *Lewis v. Casey*, 518 U.S. 343, 357, 359 (1996); *accord Rizzo v. Goode*, 423 U.S. 362, 373 (1976) (denying injunctive relief where the district court found twenty constitutional violations by police officers "occurring at large in a city of three million inhabitants"). Accordingly, Plaintiffs' allegations of past harm that occurred months ago provide no plausible basis to infer that any named Plaintiff is at imminent risk of being subjected to excessive or retaliatory force in the future. To deem those allegations sufficient would require setting aside *Lyons*.

## II.    Plaintiffs' Claim of First Amendment Retaliation Fails (Count I).

Although Defendants recognize that this Court has treated Plaintiffs' post-Amended Complaint evidentiary submissions in support of the motion for preliminary injunction as adequately supporting their First Amendment retaliation claim, Defendants briefly reassert their arguments that Plaintiffs' claim must fail, especially in light of the facial inadequacy of the Amended Complaint.

To establish a claim of First Amendment Retaliation, Plaintiffs must allege three elements: (1) that "[they were] engaged in constitutionally protected activity, (2) that the defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006).

Plaintiffs have failed to establish at least one of these elements. As an initial matter, if Plaintiffs were harmed while participating, or aiding the crowd, in assaulting or obstructing federal officers or destroying federal property, they were not engaged in protected First Amendment activity. *See Grayned v. City of Rockford*, 408 U.S. 114, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment."). But even if Plaintiffs were engaged in protected conduct when exposed to less-than-lethal munitions, they fail to plausibly allege that the actions taken by officers were intended to deter Plaintiffs from protesting rather than "motivated primarily by their legal obligation" to protect others, themselves, and federal property. *Capp v. County of San Diego*, 940 F.3d 1046, 1057 (9th Cir. 2019).

Motive in the First Amendment context may be established by either direct or circumstantial evidence. *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002). Plaintiffs have alleged neither. Plaintiffs allege no direct evidence because they have none. Circumstantially, Plaintiffs' attempt to cobble together various facts to "prove" Defendants' motivation falls flat. Plaintiffs maintain that Defendants' supposed animosity toward Plaintiffs' message, coupled with the use of less-than-lethal munitions, equals retaliation. Yet those allegations, even when taken together, do not lead to the conclusion. Something happening after another event does not mean that it occurred *because of* that event. *See Tafoya v. County of Fresno*, 13 F. App'x 715, 717 (9th Cir. 2001) (holding that "a retaliation case cannot be supported solely

7 – DEFENDANTS' MOTION TO DISMISS

on the basis of the logical fallacy of '*post hoc, ergo propter hoc,* literally, "after this, therefore because of this."'" (citation omitted)). Plaintiffs paint a picture of a presidential administration at odds with Plaintiffs' message and then describe instances in which Plaintiffs were injured by Defendants. Their conclusion, that the latter happened because of the former, does not necessarily follow. Even when considering the handful of instances where Plaintiffs allege they themselves were directly targeted, such targeting, if true, says nothing about whether their speech was the motivation for Defendants' actions.

Indeed, the Ninth Circuit has cautioned that the retaliation "framework, with its focus on subjective causation, is a poor fit for the crowd-dispersal context," in part because applying the framework "will often raise 'particularly difficult' causation questions," *Puente v. City of Phoenix*, 123 F.4th 1035, 1042, 1063 (9th Cir. 2024) (citation omitted) (recognizing "strong arguments that a conventional First Amendment retaliation framework" should not apply). This case throws that mismatch into sharp relief. The Court should reject Plaintiffs' suggestion that a "retaliation claim may properly be asserted in the crowd-dispersal context *in addition* to a clear-and-present-danger claim." *Id*.

The Court cannot simply assume that, because Plaintiffs allege that DHS officers employed crowd-control devices in an allegedly excessive manner, the officers must have intended to retaliate. This Ninth Circuit's decision in *Puente* illustrates the point. *Puente* reaffirms that, under the First Amendment, law-enforcement officers may disperse a protest if it "presents a clear and present danger of imminent lawlessness." 123 F.4th at 1062. This inquiry "must be evaluated under an objective standard." *Id.* Thus, a court might conclude that an officer used too much force to disperse a protest because, notwithstanding his "subjective apprehensions," the circumstances did not objectively "present[] a clear and present danger." *Id.* A court might also conclude that the

8 – DEFENDANTS' MOTION TO DISMISS

officer used too much force because he misperceived "the tenor of [a] demonstration" as being more "infected with violence or obstruction" than it was. *Id.* (citation omitted). But neither would support, much less compel, the conclusion that, for purposes of a First Amendment retaliation claim, the officer acted due to subjective antipathy to the First Amendment activity at issue.

Moreover, Plaintiffs leave out crucial factors from the equation. Plaintiffs' Amended Complaint identifies only a handful of instances in which protesters were exposed to less-than-lethal munitions, but Plaintiff Dickinson admits to regularly attending protests since June 2025. Am. Compl. ¶ 57. Plaintiffs' Amended Complaint also glosses over the reality that protesters at the Portland ICE facility have made a habit of flouting the law. As this Court has recognized, protesters regularly trespass on federal property, *see* PI Order at 7, 10, "may have engaged in criminal or non-criminal violations," *id.* at 21, and were "mostly" peaceful, *id.* at 7. Those facts suggest an "obvious alternative explanation," *Twombly*, 550 U.S. at 567, for Defendants' conduct: Individuals protested regularly, but Defendants only used less-than-lethal munitions when such devices became necessary to curb violent or disruptive behavior, not as retaliation for disfavored speech. Even if Plaintiffs did allege potential retaliatory actions by individual officials, they fail to allege that DHS, as an institution, targeted Plaintiffs for their First Amendment activities. *Cf. Nadell v. L.V. Metro Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) ("Municipal liability is only appropriate where a plaintiff has shown a constitutional deprivation was directly caused by a municipal policy."). That law enforcement had to resort to crowd-control devices on several occasions does not demonstrate a collective intent by DHS to discriminate against protesters' due exercise of First Amendment rights but rather an intent to prevent protesters from trespassing at the ICE facility or otherwise engaging in violent, disruptive, and unlawful activity.

III.    **Plaintiffs' Claim of Viewpoint Discrimination Fails (Count II).**

Plaintiffs next plead that Defendants' actions amounted to content-based, viewpoint-based, restrictions on their First Amendment activities. They claim Defendants' conduct while protecting the facility somehow equate to "laws regulating speech based on its subject matter or 'communicative content.'" *Chiles v. Salazar*, 607 U.S. ----, No. 24-539, 2026 WL 872307, at *7 (Mar. 31, 2026) (citation omitted). However, "where demonstrations turn violent, they lose their protected quality as expression under the First Amendment." *Grayned,* 408 U.S. at 116. No heightened scrutiny applies to law enforcement personnel reasonably dispersing unlawful demonstrations. *See Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 471, (2025) (finding that rational basis applies to unprotected speech). Thus, demonstrations can be curtailed and dispersed consistent with the First Amendment when they either become violent, become obstructive, pose a clear and present danger of imminent violence, or are violating some other law in the process. *See Puente*, 123 F.4th at 1062–63.

When determining whether the government is restricting speech based on content, "[t]he government's purpose is the controlling consideration." *Ward v. Rock Against Racism*, 491 U.S. 781, 791–92 (1989). A government action that "serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* In other words, whether government action is based on viewpoint does not depend on whether it happens to affect a speaker with a particular viewpoint. *Id.* For example, in *Ward*, the Supreme Court held that a city's noise regulation reflected a legitimate goal of preventing excess noise in residential areas—not restricting music with a particular viewpoint. *Id.* at 792-93.

That rationale controls here. Plaintiffs claim that Defendants' actions were motivated purely by the content of their speech and that strict scrutiny therefore applies. They make much of the alleged difference in treatment between protesters who support the current administration's

10 – DEFENDANTS' MOTION TO DISMISS

policies and those who do not. But that distinction fails to acknowledge the conduct of the crowds Plaintiffs were intertwined with. Again, Plaintiffs' conclusory allegations of disparate treatment miss the "obvious alternative explanation": officers taking action to disperse unlawful crowds while permitting lawful ones to remain. Put differently, Plaintiffs' have failed plausibly to allege that Defendants' actions had anything to do with protesters' viewpoint rather than their actions. Thus, the alleged speech at issue is unprotected, *see Grayned*, 408 U.S. at 116, and rational basis review therefore applies. Plaintiffs' allegations do not support an inference that Defendants' actions lacked a rational basis.

## IV.    Plaintiffs' Claim of a Violation of the First Amendment Right of Access Fails (Count III).

Plaintiffs similarly fail to allege a First Amendment Right of Access claim. The Amended Complaint does not allege that Defendants denied any named Plaintiff access to any space, let alone access to a government proceeding, which is the focus of the right-of-access inquiry. Under *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1 (1986), and *Leigh v. Salazar*, 677 F.3d 892 (9th Cir. 2012), Plaintiffs must show they have been denied access to a government process to which they have a right of access, which they can show only by establishing that "the place and process have historically been open to the press and general public," and that "public access plays a significant positive role in the functioning of the particular process in question." *Leigh,* 677 F.3d at 898 (citation omitted). Plaintiffs have not plausibly alleged such a violation, nor have they shown a history and tradition of open access to the Portland ICE building.

Moreover, a protest—which the government did not organize—is not a government proceeding to which a right of access could attach. Even if protests are governmental proceedings, such a right would still not attach here. Protests have not "historically been open to the press and general public" nor do they play "a significant positive role in the functioning of the particular

11 – DEFENDANTS' MOTION TO DISMISS

process in question." *Press Enterprise Co.*, 478 U.S. at 8. Plaintiffs do not allege, beyond conclusory allegations, that there is a tradition of public access to such protests. Because no right of access attaches to protests, the Court should dismiss this claim.

**V.    Plaintiffs' Claim of Fourth Amendment Excessive Force Fails (Count IV).**

Plaintiffs fail to adequately plead a claim under the Fourth Amendment because they have not plausibly alleged a "seizure" within the meaning of the Fourth Amendment. Plaintiffs do not plausibly allege that Defendants "objectively manifest[ed] an intent to restrain" any Plaintiff by using less-lethal-munitions to disperse protesters near the ICE facility. *See Torres v. Madrid*, 592 U.S. 306, 317 (2021) (emphasis omitted). Nor have they alleged that any Plaintiff was, in fact, actually seized by law enforcement officers.

The "seizure" of a "person" follows from either some physical force or show of authority that "in some way restrains the liberty of the person." *Torres*, 592 U.S. at 311 (citation modified). By contrast, the entire purpose of dispersing an unlawful crowd is to encourage them to leave the area, not to restrain or confine them under government control. For that reason, another judge of this Court recently found that a similar Fourth Amendment challenge to DHS's crowd control response at the Portland ICE facility has no likelihood of success. *See Reach Cmty. Dev. v. DHS*, No. 3:25-CV-2257-AB, 2026 WL 632695, at *12 (D. Or. Mar. 6, 2026) ("Plaintiffs have failed to establish they are likely to succeed on the merits with respect to their Fourth Amendment claim."), *appeal filed*, No. 26-1575 (9th Cir. Mar. 16, 2026).

Further, *Puente* is instructive. There, the Ninth Circuit held that the Phoenix police's dispersal of an uncompliant crowd by airborne chemical irritants (e.g., tear gas and pepper spray) and auditory or visual irritants was not a "seizure" within the meaning of the Fourth Amendment. *Puente,* 123 F.4th at 1051-54. The court explained that "an application of force with an objective

12 – DEFENDANTS' MOTION TO DISMISS

intent merely to *disperse* or *exclude* persons from an area—and *without* any measures objectively aimed at detaining or confining them in the process—does not involve the necessary 'intent to *restrain*' that might give rise to a 'seizure.'" *Id*. at 1052 (emphasis in original).

The same analysis applies here. Plaintiffs do not plausibly allege that DHS officers used crowd control devices with an objective intent to detain, rather than to disperse or exclude persons from the ICE facility. Plaintiffs thus fail to allege that a Fourth Amendment seizure occurred.

**VI.    Plaintiffs' Claim of a Fifth Amendment Due Process Violation Fails (Count V).**

Plaintiffs also fail to adequately plead a violation of their Fifth Amendment Substantive Due Process rights. The Supreme Court held in *Graham v. Connor,* 490 U.S. 386 (1989), that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998) (alteration in original) (citation omitted). *Graham* therefore "requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)  (citing *Graham*, 490 U.S. at 394). "And a claim need not be certain to succeed under the more specific amendment to foreclose substantive due process analysis." *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 50 (D.D.C. 2021), *aff'd sub nom. Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023). Here, Plaintiffs' Fifth Amendment due process claim is subsumed by the Fourth Amendment and fails for the same reason. *See Connecticut v. Gabbert*, 526 U.S. 286, 293 (1999) (rejecting substantive due process claim alleging unreasonable search where challenge properly falls under Fourth Amendment); *Galbraith v. County of Santa Clara*,

13 – DEFENDANTS' MOTION TO DISMISS

307 F.3d 1119, 1127 (9th Cir. 2002) (dismissing Fourth Amendment claim because "Fourth Amendment principles, and not those of due process, govern this case"); *see also Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1029 (9th Cir. 2002) (stating that "the Supreme Court has held that plaintiffs cannot 'double up' constitutional claims in this way").

Even assuming Plaintiffs could pursue a due process claim in this context, it nonetheless fails. "[W]hen presented with a claim of injuries resulting from alleged excessive force applied 'outside the context of a seizure,' [courts] apply a Fourteenth Amendment substantive due process standard that asks whether the police behavior 'shocks the conscience.'" *Puente,* 123 F.4th at 1050 (citing *Lewis*, 523 U.S. at 844). In cases against the Federal Government, the Fifth Amendment's due process standard applies. *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005).

"'[S]ubstantive due process prevents the government from engaging in conduct that 'shocks the conscience.'" *Herra v. Collins*, 506 U.S. 390, 435-36 (1993) (Blackmun, J. dissenting) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). The Ninth Circuit evaluates a shocks-the-conscience claim under 2 tests: (1) deliberate indifference or (2) purpose-to-harm. *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022). "[T]he deliberate-indifference test applies if the situation at issue 'evolve[d] in a time frame that permits the officer to deliberate before acting.'" *Id.* (second alteration in original) (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). In situations such as the ones at issue in this case, where the situation "escalate[d] so quickly that the officer [had to] make a snap judgment," the officer's use of force shocks the conscience only if he meets a "more demanding standard" of "act[ing] with a *purpose to harm* [an individual] for reasons unrelated to legitimate law enforcement objectives." *Porter*, 546 F.3d at 1133; *see Puente*, 123 F.4th at 1055.

14 – DEFENDANTS' MOTION TO DISMISS

Plaintiffs have failed to plausibly allege that Defendants' conduct shocks the conscience. Plaintiffs' conclusory allegation that Defendants' conduct "shocks the conscience" is a legal conclusion and should not be given any weight. Am. Compl. ¶ 179. The purpose-to-harm test is satisfied in only "rare situations where the nature of an officer's deliberate physical contact is such that a reasonable factfinder would conclude the officer intended to harm, terrorize, or kill." *Porter,* 546 F.3d at 1141 (citation omitted). Where an officer pursues other objectives such as an "arrest, self-protection, [or] protection of the public," there is no purpose to harm. *Ochoa*, 26 F.4th at 1056 (citation omitted). The Amended Complaint does not satisfy this demanding standard.

Plaintiffs' allegations also gloss over the unique nature of the "protests" at issue in this case. Plaintiffs' insistence that Defendants only encountered "peaceful protests" outside the facility contradict this Court's prior factual findings. *See supra*, p. 9. In instances where protests were not peaceful, officers had a legitimate law enforcement objective of protecting federal personnel and property. Such actions do not rise to the "demanding standard" of shocking the conscience.

## VII.   Plaintiffs' Administrative Procedure Act Claim Fails (Count VI).

Plaintiffs fail to state a claim under the Administrative Procedure Act. 5 U.S.C. § 706(2) allows a plaintiff to seek review of final agency action, but only "specific agency action, as defined in the APA," is subject to judicial review. *Biden v. Texas*, 597 U.S. 785, 809 (2022). The APA defines the term "agency action" to include a specific "rule, order, license, sanction, relief, or the equivalent[.]" 5 U.S.C. § 551(13). The Act further defines each of these terms. *Id.* § 551(4), (6), (8), (10), (11). The APA does not allow a court to "exercise judicial review over everything done by an administrative agency." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.) (citation modified).

15 – DEFENDANTS' MOTION TO DISMISS

A plaintiff seeking judicial review under the APA must therefore challenge a "specific" agency action falling within one of these discrete categories, rather than attempt to challenge an "abstract" policy or decision divorced from a concrete action, *Biden*, 597 U.S. at 809, or challenge "at a high[] level of generality" an agency "operation" or "program," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990). In that way, the APA constrains courts to their constitutionally limited role, permitting them to review discrete, concrete acts but precluding them from reviewing "sweeping actions" that seek "systemic" or "programmatic improvements" of agency operations or "wholesale correction" of agency conduct, which would impermissibly enmesh courts into pervasive oversight of an agency's "day-to-day operations," *Id.* at 891, 893, 894, 899.

Agency actions are judged by courts on whether they are supported by "reasoned decision making." *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (citation omitted). Because a central goal of APA review is to determine whether a specific agency action rests on an adequate rationale, challenges to agency action under the APA do not separate out for review an agency's disembodied substantive "decision" from the vehicle through which the decision is conveyed and explained. *Biden*, 597 U.S. at 809. In fact, the opposite is true: § 706(2) review necessarily focuses simultaneously on the vehicle in which an agency decision is delivered and the reasoning expressed in that vehicle. *Id*.

Plaintiffs' Amended Complaint seeks § 706(2) review of precisely the type of "abstract decision apart from specific agency action, as defined in the APA," that § 706(2) does not permit. *Biden*, 597 U.S. at 809. Specifically, the Amended Complaint seeks judicial review of alleged "policies and/or directives" that allegedly allow the use of less-than-lethal munitions and target peaceful protesters. Am. Compl. ¶ 183. But the Amended Complaint fails to allege facts that such

policies or directives exist, much less that they are embodied in discrete agency actions of the type listed in § 551(13) and capable of judicial review.

Merely stating that Defendants have taken such actions does not plausibly allege that they had policies in place permitting such actions, much less that any such policy constitutes final agency action. Plaintiffs point to no document, order, regulation, statement, or any other concrete expression indicating that these purported policies exist. And while Defendants have policies in place regarding use-of force, Plaintiffs do not purport to challenge such policies. *See* DHS, Update to the Department Policy on the Use of Force (Feb. 6, 2023)[1]; CBP, Use of Force Policy (January 2021)[2]; FPS Use of Force Policy, ECF No. 116-6; ICE Use of Force Policy, ECF No. 116-7. Short of challenging those policies, Plaintiffs' "nebulous assertion of the existence of a 'policy,'" supported by "no facts," cannot plausibly establish that the policy actually exists. *Rodriguez v. U.S. Dep't of the Air Force*, 387 F. Supp. 3d 130, 135 (D.D.C. 2019) (citation omitted); *accord, e.g.*, *L.A. Press Club v. Noem*, --- F. Supp. 3d ----, No. 2:25-cv-05563-HDV-E, 2026 WL 103972, at *9 (C.D. Cal. Jan. 8, 2026) ("conclusory" allegations cannot "plausibly establish the existence of . . . a policy"); *Daines v. IRS*, No. 24-cv-1057, 2025 WL 2694788, at *4 (E.D. Wis. Sept. 22, 2025) ("speculation and conjecture" cannot "plausibly alleg[e] the existence of" a policy, much less "the existence of a rule," "under the APA"). Nor can Plaintiffs "nakedly assert" that Defendants have adopted a "policy … to go on a fishing expedition for evidence to support" their speculations. *See People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, 60 F. Supp. 3d 14, 20 (D.D.C. 2014).

---

[1] Available at https://www.dhs.gov/sites/default/files/2023-04/23_0206_s1_use-of-force-policy-update.pdf

[2] Available at https://www.cbp.gov/sites/default/files/assets/documents/2021-Jul/cbp-use-of-force-policy_4500-002A.pdf

Here, Plaintiffs contend that Defendants have "pattern and practice" of violating Plaintiffs' rights," Am. Compl. ¶ 1, but such pattern-and-practice claims are—almost by definition—not discrete agency action. Accordingly, courts have routinely dismissed such claims brought under the APA. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 303 F. App'x 517, 519 (9th Cir. 2008) ("These claims are not reviewable because, even if [plaintiff]'s allegations are true, any pattern, practice, or policy of the Forest Service that is inconsistent with the NFMA is not itself a final agency action within the meaning of the APA."); *Mary Ferrell Found., Inc. v. Biden*, No. 22-cv-06176-RS, 2023 WL 4551066, at *6 (N.D. Cal. July 14, 2023) ("averring a pattern and practice is generally insufficient to state a claim under the APA").

Moreover, Plaintiffs' reliance on allegations regarding the purported conduct of some DHS agents is misplaced. The day-to-day conduct of agency officers or employees is not itself discrete agency action. *See* 5 U.S.C. § 551(13) ("rule," "order," "license," etc.); *see also Lujan*, 497 U.S. at 899 (the APA does not permit review of an agency's "day-to-day operations"). Nor can one reasonably infer from Plaintiffs' allegations regarding disparate incidents involving DHS agents that any of Plaintiffs' imagined policies exist, much less that they are reflected in discrete, reviewable actions. *See Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014) (the APA "requires more" than merely "attach[ing] a 'policy' label to" and agency's "practices" to plead "final agency action"); *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1207 (S.D. Cal. 2019) ("A plaintiff may not simply attach a policy label to disparate agency practices or conduct."); *L.A. Press Club*, 2026 WL 103972, at *8 (refusing to infer a policy's existence based on allegations about a "pattern" of conduct).

The Amended Complaint also fails to allege *final* agency action. Two conditions must be met for finality under the APA. First, the challenged action must mark the "consummation" of the

agency's decision making process. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). Second, it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id*. at 178 (citation modified). Plaintiffs make no allegations, beyond bare, conclusory ones, that any such decision making process ever occurred, let alone that it resulted in a final agency action cognizable under the APA.

Instead of challenging discrete final agency action, Plaintiffs effectively bring a broad programmatic challenge to every aspect of DHS's law enforcement response to violent and disruptive protests in Portland. *See* Am. Compl. ¶ 183. Such challenges are impermissible under the APA. The Supreme Court's decision in *Lujan v. National Wildlife Federation*, 497 U.S. 871, 875 (1990), squarely forecloses Plaintiffs' request for judicial review of these alleged "policies" or "programs." In that case, the National Wildlife Federation brought a challenge to what it called the Bureau of Land Management's "land withdrawal review program." *Lujan*, 497 U.S. at 875. That "program" consisted of thousands of various actions, such as public land status determinations, that BLM undertook pursuant to the directives of the Federal Land Policy and Management Act *Id.* at 877, 890. The Supreme Court held that the "so-called 'land withdrawal review program'" was "not an 'agency action' within the meaning of § 702" because it did "not refer to a single BLM order or regulation, or even to a completed universe of particular BLM orders and regulations." *Id*. at 890. What the plaintiffs alleged was a "program" that was "no more an identifiable 'agency action' . . . than a 'weapons procurement program' of the Department of Defense or a 'drug interdiction program' of the Drug Enforcement Administration." *Id.* Plaintiffs' Amended Complaint suffers from the same flaw, as they attempt to aggregate disparate interactions between federal law enforcement officers and protesters into a purported policy. The APA does not permit such a lawsuit. *See Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir.

19 – DEFENDANTS' MOTION TO DISMISS

2006) ("[A]n on-going program or policy is not, in itself, a 'final agency action' under the APA," and a court's "jurisdiction does not extend to reviewing generalized complaints about agency behavior." (citation omitted)).

A unanimous Supreme Court reaffirmed this view in *Norton v. Southern Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 62 (2004), in which the plaintiffs sought to compel the Secretary of Interior to take additional actions with respect to off-road vehicle use, arguing that the failure to take such action amounted to "agency action unlawfully withheld or unreasonably delayed" under § 706 of the APA. *SUWA*, 542 U.S. at 57 (citation omitted). In rejecting APA review in that case, the Court analyzed the definition of "agency action" in the APA and stressed that the five specific actions listed ("rule, order, license, sanction [and] relief") all "involve circumscribed, discrete agency actions," *id.* at 62 (citation omitted), and consequently, "agency action" does not include a broad challenge to the manner in which an agency implements its programs, *id.* at 63-64. Moreover, citing the Attorney General's Manual on the APA, the Court noted that the APA "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'" *Id.* (emphasis omitted) (citation omitted). Consequently, the Court concluded that challenges to "[g]eneral deficiencies in [agency] compliance . . . lack the specificity requisite for agency action." *Id.* at 66.

Applying these precedents, another Judge of this Court dismissed a similar APA claim challenging DHS's use of crowd control devices during the protests that occurred in Portland in 2020. *See Nw. Ctr. for Alternatives to Pesticides v. DHS*, 552 F. Supp. 3d 1078, 1089 (D. Or. 2021) (finding that "DHS's implementation of Operation Diligent Valor in Portland" was not final agency action). As was the case there and in *Lujan* and *SUWA*, Plaintiffs here are not challenging a discrete

20 – DEFENDANTS' MOTION TO DISMISS

"agency action" subject to review under the APA. Therefore, the APA claim should be dismissed pursuant to Rule 12(b)(6) for failing to plausibly allege a reviewable agency action.

### VIII. Plaintiffs' Claim for 28 U.S.C. § 2201 Declaration of Rights Fails (Count VII).

Plaintiffs improperly list their request for a declaration of rights as a claim rather than a demand for relief. Declaratory relief is not a cause of action in and of itself, but instead a type of relief. *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court; it only permits the district court to adopt a specific remedy when jurisdiction exists. *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-74 (1950)). As the Supreme Court has held, "[t]he operation of the Declaratory Judgment Act is procedural only"; specifically, it "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co.*, 339 U.S. at 671 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Regardless of whether Plaintiffs' other claims survive, the standalone claim for declaratory relief should be dismissed.

### IX. The Court Should Dismiss the President as a Defendant.

This case does not involve a challenge to any Presidential action, yet Plaintiffs have inexplicably named the President as a defendant and improperly seek injunctive and declaratory relief against him. Am. Compl. Prayer for Relief. Federal courts have "no jurisdiction of a bill to enjoin the President in the performance of his official duties." *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866)). And many courts, including this one, have held that declaratory relief against the President is equally inappropriate. *See Juliana v. United States*, 339 F. Supp. 3d 1062, 1079 (D. Or. 2018) ("[W]hen effective relief is available against lower administration officials, the Court concludes that

21 – DEFENDANTS' MOTION TO DISMISS

dismissal of the President is the correct decision for either [injunctive or declaratory] relief."), *rev'd & remanded*, 947 F.3d 1159 (9th Cir. 2020); *see also Franklin*, 505 U.S. at 827 (Scalia, J. concurring in part & concurring in the judgment) ("[W]e cannot issue a declaratory judgment against the President."); *Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) ("[S]imilar considerations regarding a court's power to issue relief against the President himself apply to [a] request for a declaratory judgment."). Because Plaintiffs' alleged injuries can be redressed fully by injunctive and declaratory relief against the remaining agency Defendants, "the extraordinary remedy of enjoining the President is not appropriate here." *See Hawaii v. Trump*, 859 F.3d 741, 788 (9th Cir. 2017), *vacated & remanded*, 583 U.S. 941 (2017). With no remedy against the President available, Plaintiffs' claims against him are not redressable. Accordingly, the Court must dismiss the President as a defendant.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and dismiss Plaintiffs' action.

22 – DEFENDANTS' MOTION TO DISMISS

Dated: April 15, 2026

BRETT A. SHUMATE
Assistant Attorney General

ERIC HAMILTON
Deputy Assistant Attorney General

JOHN BAILEY
Counsel to the Assistant Attorney General

BRAD P. ROSENBERG
Special Counsel

ANDREW I. WARDEN
Assistant Director

*/s/ Alexander J. Yun*
ALEXANDER J. YUN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.: (202) 674-0255
Email: alex.yun@usdoj.gov
*Attorneys for Defendants*

23 – DEFENDANTS' MOTION TO DISMISS